## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Pack Liquidating, LLC, *et al.*,[1] | Case No. 22-10797 (CTG) |
| Debtor. | (Jointly Administered) |
| Pack Liquidating, LLC, *et al.*, | |
| Plaintiffs, | Adv. Proc. No. 23-50434 (CTG) |
| v. | |
| Quality King Distributors, Inc., | **Re: Adv. Docket No. 4** |
| Defendant. | |

## DECLARATION OF BRIAN TEETS IN SUPPORT OF DEBTORS' MOTION FOR TEMPORARY INJUNCTIVE RELIEF

I, Brian Teets, hereby declare, pursuant to 28 U.S.C. § 1746, as follows:[2]

1.      I am a Managing Director at Alvarez and Marsal North America, LLC ("A&M") within its commercial restructuring group.  In addition, I am the Chief Restructuring Officer of Pack Liquidating, LLC (f/k/ a Packable Holdings, LLC) ("Pack Liquidating") and its affiliated debtors, debtors in possession, and affiliated non-debtors (collectively, the "Debtors") and have served in this role since August 28, 2022.  Prior to that, I was the Interim Chief Financial Officer for the Debtors, a role I held beginning on May 19, 2022.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include:  Pack Liquidating, LLC (6932); GV Liquidating LLC (1513); PM Liquidating, LLC (6006); PP Liquidating, LLC (6676); PV Liquidating, LLC (1172); and AB Liquidating, LLC (8582).  The location of the Debtors' service address in these chapter 11 cases is c/o Cooley LLP, 55 Hudson Yards, New York, NY 10001.

[2] Capitalized terms used in this Declarations but not otherwise defined herein shall have the meanings ascribed to them in the *Complaint for Temporary Injunctive Relief* [Adv. D.I. 1].

2.     As Interim Chief Financial Officer, I was responsible for the overall financial management of the Debtors.  As Chief Restructuring Officer, I am responsible for the coordination of the management team and the Company's retained professionals in the execution of the Company's wind-down plans.  As a result of my tenure with the Debtors, my review of public and non-public documents, and my discussions with other members of the Debtors' management team, I am generally familiar with the Debtors' businesses, financial condition, day-to-day operations, and books and records.

3.     I am over the age of 18 and am authorized submit this declaration (the "Declaration") in support of the *Debtors' Motion for Temporary Injunctive Relief* (the "Motion") on behalf of the Debtors.  If requested, I am able to testify competently to the facts set forth in this Declaration.

4.     Except as otherwise indicated herein, all statements set forth in this Declaration are based on (a) my personal knowledge of and familiarity with the Debtors' operations, finances, and restructuring efforts; (b) my review of relevant documents and information provided to me by employees of or advisors to the Debtors or professionals retained by the Debtors; (c) my opinion based on my experience and knowledge of the Debtors' operations and financial and business affairs, including my general knowledge of the industry in which the Debtors operate; (d) information supplied to me by and consultation with other members of the Debtors' management and the Debtors' professional advisors; and (e) my opinion based on my experience, knowledge, and information concerning the Debtors' operations and financial condition.  I have obtained this information in the course of my tenure working with the Debtors and their professionals, including the Debtors' outside corporate and restructuring counsel.  In making this Declaration, I also have relied on information and materials that the Debtors'

274947987 v6
IMPAC 10893999v.4

personnel and advisors have gathered, prepared, verified and provided to me, in each case under my ultimate supervision, at my direction and/or for my benefit in preparing this Declaration.

5.      As Interim Chief Financial Officer and now, as Chief Restructuring Officer, I have been deeply involved in the Debtors' liquidation efforts.  For example, my team and I have been heavily involved in analyzing the Debtors' pre- and post-petition liabilities, preparing the Debtors' schedules of assets and liabilities and wind-down budget, and overseeing the development of a strategy for the efficient and expeditious liquidation of the Debtors' assets. My responsibilities also include addressing requests from the Debtors' various creditor constituencies, as well as assisting the Debtors in meeting certain reporting requirements as part of the bankruptcy process.

6.      The Debtors are beneficiaries under certain director and officer liability insurance policies (the "D&O Policies").  Collectively, the D&O Policies provide coverage of up to $15 million.

7.      In April 2022, the Debtors were addressing a variety of issues stemming from liquidity constraints, including trying to restock dwindling inventory levels.  I understand that Quality King Distributors, Inc. ("Quality King"), which was a key vendor and insider of the Debtors, has asserted that Adam J. Berkowitz ("Berkowitz") personally guaranteed certain prepetition Debtor obligations owed to Quality King (the "Purported Personal Guarantee") for an order placed by the Debtors during that period.  Quality King held a seat on Pack Liquidating's board of managers at the time the Purported Personal Guarantee was allegedly made, and continues to hold that seat.

8.      I further understand that Quality King commenced a civil suit against Berkowitz in the New York Supreme Court for the County of Suffolk on May 17, 2023 (the

"Personal Guarantee Action") to enforce the Purported Personal Guarantee. I also understand that Berkowitz, who was the Debtors' Chief Commercial Officer at the time, contends that the claims asserted against him in the Personal Guarantee Action arose in connection with actions he took in his former capacity as an officer and employee of the Debtors and are therefore covered by the D&O Policies. Accordingly, Berkowitz has requested that his defense costs be advanced from proceeds of the D&O Policies.

9.     If allowed to proceed, the Personal Guarantee Action could erode the coverage available under the D&O Policies. Moreover, various other obligations of the Debtors have been personally guaranteed by several former officers of the Debtors. The continuation of the Personal Guarantee Action may encourage other creditors to commence additional actions to enforce those guarantees against the former officers, thus prompting additional claims against the D&O Policies.

10.     The Debtors' advisors have determined that the estates hold potential claims against certain former officers and managers that may be covered by the D&O Policies and could provide a valuable source of recovery for the estates' creditors (the "Insider Claims"). Indeed, the vast majority of the Debtors' operational assets have been liquidated, and the proceeds have been applied to fund the administration of the Chapter 11 Cases and pay down (but not yet satisfy) the Debtors' prepetition ABL facility. Litigation claims are one of the few material estate assets that have not yet been liquidated and could provide a potential source of recovery for creditors.

11.     The Debtors' advisors, including myself, are presently engaged in discussions with certain key stakeholders of the Debtors, including the Debtors' senior secured lenders and the Official Committee of Unsecured Creditors, regarding potential exits from these Chapter 11 Cases, including the feasibility of a liquidating chapter 11 plan and the terms on which

4

those would support such a plan. I expect that a key feature of any such plan would be the implementation of a post-confirmation trust to pursue litigation claims, including the Insider Claims, for the benefit of the estates' creditors. Accordingly, I believe that preserving available coverage under the D&O Policies for the benefit of the Debtors' non-insider creditors is an important component of the Debtors' strategy for achieving a successful exit from these Chapter 11 Cases.

12. A reduction in available D&O coverage would also negatively impact the willingness of the Debtors' two independent managers—who have been delegated primary responsibility for making decisions on behalf of the Debtors' full board in these Chapter 11 Cases—to continue serving in that role, further hampering the Debtors' liquidation efforts.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated: July 7 2023

By:     _/s/ Brian Teets_
          Brian Teets
Title:  Chief Restructuring Officer
          Pack Liquidating, LLC

5