### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Pack Liquidating, LLC, *et al.*,[1]<br><br>              Debtors. | Chapter 11<br><br>Case No. 22-10797 (CTG)<br><br>(Jointly Administered) |
| Pack Liquidating, LLC, *et al.*,<br><br>              Plaintiffs,<br><br>   v.<br><br>Quality King Distributors, Inc.<br><br>              Defendant. | Adv. Proc. No. 23-50434-CTG<br><br><br>**Hearing Date: 8/21/2023 at 1:00 p.m.**<br>**Re: Adv. Docket Nos. 1 & 4** |

### DEFENDANT QUALITY KING DISTRIBUTORS, INC.'S OBJECTION
### TO MOTION FOR TEMPORARY INJUNCTIVE RELIEF [ADV. D.I. 4]

Defendant Quality King Distributors, Inc. ("Quality King") hereby objects to the *Debtors' Motion for Temporary Injunctive Relief* [Adv. D.I. 4] (the "Motion").[2] In support of its objection (the "Objection"), Quality King states as follows:

### STATEMENT OF FACTS

1.　　On May 17, 2023, Quality King commenced a civil action against non-debtor Adam J. Berkowitz ("Berkowitz") in the Supreme Court of the State of New York, County of Suffolk, Index No. 612548/2023 (the "New York State Court Action").

---

[1]　　The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' federal tax identification number include: Pack Liquidating, LLC (6932); GV Liquidating LLC (1513); PM Liquidating, LLC (6006); PP Liquidating, LLC (6676); PV Liquidating, LLC (1172); and AB Liquidating, LLC (8582). The location of the Debtors' service address in these chapter 11 cases is c/o Cooley LLP, 55 Hudson Yards, New York, NY 10001.

[2]　　Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Debtors' *Complaint for Temporary Injunctive Relief* [Adv. D.I. 1] (the "Injunction Complaint").

2.	Quality King's claims in the New York State Court Action arise out of Berkowitz's breach of a personal guaranty (the "Personal Guaranty") with respect to payment for certain goods purchased from Quality King by Pharmapacks, LLC (n/k/a PP Liquidating, LLC) ("PP Liquidating"), one of the Debtors in this case.[3]

3.	Before Berkowitz's time to answer, move, or otherwise respond to the New York State Court Complaint expired, the Debtors commenced this adversary proceeding by filing the Injunction Complaint, together with the Motion.

4.	By and through the Injunction Complaint and the Motion, the Debtors seek the entry of a temporary injunction pursuant to 11 U.S.C. § 105 and/or an extension of the automatic stay pursuant to 11 U.S.C. § 362, either of which would effectively enjoin and stay the New York State Court Action until the earliest of: (a) the effective date of a plan of liquidation confirmed in the Chapter 11 Cases; (b) the dismissal of the Chapter 11 Cases; and (c) the conversion of the Chapter 11 Cases to proceedings under chapter 7 of the Bankruptcy Code (the "Requested Injunction"). *See* Adv. D.I. 1 and 4.

5.	In good faith, Quality King has agreed to extend Berkowitz's time to answer, move, or otherwise respond to the New York State Court Complaint until this Court issues a ruling with respect to the Requested Injunction.

6.	For the reasons set forth below, Quality King respectfully submits that this Court should deny the Motion and the Requested Injunction and dismiss the Injunction Complaint, in its entirety, as moot.

---

[3]	A true copy of the Summons and Verified Complaint (the "New York State Court Complaint") filed by Quality King in the New York State Court Action was previously submitted by Debtors as **Exhibit 1** to the *Declaration of Erica Richards, Esq. in Support of Debtors' Motion for Temporary Injunctive Relief*. *See* Adv. D.I. 6 and 6-1.

## THE APPLICABLE LEGAL STANDARDS

7.     As a general matter, "it is universally acknowledged that an automatic stay of proceedings accorded by § 362 may not be invoked by entities such as sureties, guarantors, co-obligors, or others with a similar legal or factual nexus to the . . . debtor." *McCartney v. Integra Nat'l Bank N.*, 106 F.3d 506, 509-10 (3d Cir. 1997) (internal quotations and citations omitted); *see also Allied Dev. of Ala. LLC v. Forever 21, Inc. (In re Forever 21, Inc.)*, 623 B.R. 53, 63 (Bankr. D. Del. 2020) ("The automatic stay only protects debtors, not non-debtor parties."); *In re Aldan Indus. Inc.*, No. 00-10360 (DWS), 2000 WL 357719, at *3 (Bankr. Pa. Apr. 3, 2000) (citations omitted) (recognizing that, "as a general rule, the automatic stay does not affect proceedings against guarantors").

8.     "[A] primary rationale for refusing to extend the automatic stay to nonbankrupt third parties is to insure that creditors obtain 'the protection they sought and received when they required a third party to guaranty the debt.'" *McCartney*, 106 F.3d at 510 (citations omitted).

9.     Nevertheless, the Third Circuit has recognized a "narrow exception" to the general rule, which allows the automatic stay to be extended to non-debtors where "unusual circumstances" exist.  *See id.* at 510 (citations omitted); *Aldan Indus.*, 2000 WL 357719, at *4 (recognizing that there is only a "*narrow exception* to the prohibition against extending the protection of the automatic stay to nondebtor third parties"); *McKillen v. Wallace (In re Irish Bank Resolution Corp. Ltd.)*, No. 18-1797-LPS, 2019 WL 4740249, at *5 (D. Del. Sept. 27, 2019) (citations omitted) (recognizing that "[a]lthough the automatic stay can be extend to situations involving nondebtors, courts are careful to reserve such power to the most extreme and 'unusual circumstances'").

10.     "[C]ourts have found 'unusual circumstances' where 'there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor.'" *McCartney*, 106 F.3d at 510 (citations omitted).

11.     Relatedly, in determining whether to enjoin third party claims against a non-debtor pursuant to the bankruptcy court's equitable powers under 11 U.S.C. § 105(a), courts in the Third Circuit generally consider the following three factors: (i) whether the bankruptcy court has subject matter jurisdiction over the proceedings against the non-debtors; (ii) whether it is appropriate for the bankruptcy court to expand the protections of the automatic stay to the non-debtors; and (iii) whether issuing an injunction is a proper exercise of discretion. *See, e.g.*, *In re Phila. Newspapers, LLC*, 407 B.R. 606, 611 (E.D. Pa. 2009).

12.     In any event, the issuance of "[a] preliminary injunction is an 'extraordinary remedy, which should be granted only in limited circumstances,'" *Kos Pharmaceuticals Inc. v. Andrex Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (citations omitted), and it is the movant's burden to show "a substantial likelihood of success on the merits, irreparable harm to the movant, harm to the movant outweighs harm to the nonmovant, and injunctive relief would not violate public interest." *Allied Dev. of Ala.*, 623 B.R. at 64 (citations omitted).

## ARGUMENT

13.     Quality King does not challenge the Court's subject matter jurisdiction. However, for the reasons set forth below, it contends that no "unusual circumstances" exist that would justify an extension of the automatic stay in favor of Berkowitz, it would not be appropriate for the Court to expand the protections of the automatic stay to Berkowitz under the circumstances, and issuing the Requested Injunction would not be a proper exercise of the Court's discretion.

4

**A.**     **No "Unusual Circumstances" Exist and It Would Not Be**
**Appropriate For the Court to Expand the Protections of**
**the Automatic Stay to Berkowitz**

14.     As noted above, in considering whether "unusual circumstances" justify an extension of the automatic stay to a non-debtor pursuant to Section 362, courts seek to determine whether "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor.'" *McCartney*, 106 F.3d at 510.

15.     Similarly, in determining whether it is appropriate to expand the protections of the automatic stay to a non-debtor pursuant to Section 105(a), courts consider: "(1) whether the nondebtor and debtor share an identity of interest such that a suit against the nondebtor is essentially a suit against the debtor and (2) whether the third-party action will have an adverse impact on the debtor's ability to accomplish reorganization." *In re W.R. Grace & Co.*, 386 B.R. 17, 30 (Bankr. D. Del. 2008).

16.     Although Berkowitz was Chief Commercial Officer for PP Liquidating during the relevant time period, any "identity of interest" between Berkowitz and PP Liquidating is insufficient to justify an extension of the automatic stay to Berkowitz under either Section 362 or Section 105(a), and, in any event, the Debtors have failed to adequately demonstrate that the New York State Court Action will "have an adverse impact" on their ability to accomplish a reorganization or liquidation.

The Debtors Have Failed to Establish that the Proceeds of
the D&O Policies Are Property of the Estate

17.     As a threshold matter, it is impossible to determine, based on the Injunction Complaint and/or the papers submitted by the Debtors in support of their Motion, whether the proceeds of the D&O Policies are "property of the estate" in the first instance.

18.     Indeed, whether the proceeds of the D&O Policies are property of the estate is a fact-intensive inquiry, which cannot be undertaken without reviewing the D&O Policies themselves.  *See*, *e.g.*, *In re Boy Scouts of America and Delaware BSA, LLC*, 642 B.R. 504, 572-73 (Bankr. Del. 2022) (citing *In re Allied Digital Techs. Corp.*, 306 B.R. 505, 509-10 (Bankr. D. Del. 2004) (additional citations omitted) ("It has long been the law in this district that whether the proceeds of D&O Policies are property of the estate turns on the facts and circumstances of both the policies and the claims asserted.").

19.     If the D&O Policies provide direct coverage to the directors and officers, then the proceeds are not property of the estate.  *See Boy Scouts*, 642 B.R. at 572-73.

20.     Similarly, if the D&O Policies provide the Debtors with "indemnification coverage but indemnification has not occurred, is hypothetical, or speculative," then the proceeds are not property of the estate.  *See id.*

21.     The Debtors have not provided copies of the D&O Policies for review.

22.     Nor have the Debtors specifically described the contents of the D&O Policies and/or the type(s) of coverage that they provide.

23.     The Debtors have therefore failed to establish that the proceeds of the D&O Policies are property of the estate, and, for this reason alone, it cannot be said that PP Liquidating (or any of the other Debtors) is the "real party defendant" in the New York State Court Action or that the New York State Court Action "will directly affect the [Debtors] and, more specifically, the [Debtors'] assets or [their] ability to pursue a successful plan of reorganization or liquidation under Chapter 11."  *See In re Midway Games, Inc.*, 428 B.R. 327, 334 (Bankr. D. Del. 2010); *see also Int'l Union of Painters & Allied Trades Dist. Council No. 21 Health & Welfare Fund v. Serv. Painting, Inc.*, No. 18-cv-3480, 2019 WL 2143370, at *6-7 (E.D. Pa. May 16, 2019) (denying

motion to extend stay to a non-debtor where, *inter alia*, the non-debtor failed to show that "a judgment against [him] will in effect be a judgment or finding against the debtor").

<u>The Possibility That the D&O Policies Will Be Eroded is
Both Speculative and Unlikely</u>

24.    Even assuming that the proceeds of the D&O Policies are property of the estate (which the Debtors have failed to establish), the possibility that the D&O Policies will be eroded is purely speculative and, in fact, unlikely.

25.    To be sure, while the Debtors assert that Berkowitz has asserted a claim for coverage and advancement of defense costs under the D&O Policies in connection with the New York State Court Action (*see* Injunction Complaint, Adv. D.I. 1 ¶ 19; Decl. of B. Teets, Adv. D.I. 5 ¶ 8), the Debtors do not allege that D&O Policies necessarily provide coverage for Berkowitz based on the claims alleged by Quality King or that the relevant carrier(s) have made any coverage determination yet.

26.    Although artfully drafted, the Debtors' own pleading and motion papers tacitly concede that erosion of the D&O Policies is *hypothetical* at best. *See* Injunction Complaint, Adv. D.I. 1 ¶ 3 (emphasis added) (alleging that "[a]bsent a stay, the Personal Guarantee Action *could erode the proceeds* available under the [D&O Policies]"; Proposed Order, Adv. D.I. 4-1 ¶ B (emphasis added) (asking the Court to find that the Quality King's prosecution of the "Personal Guarantee Action . . . *would potentially entitle Berkowitz to coverage* under the Debtors' D&O Policies"); Declaration of B. Teets, Adv. D.I. 5 ¶ 9 (emphasis added) (alleging that "[i]f allowed to proceed, the Personal Guarantee Action *could erode the coverage* available under the D&O Policies"); Brief, Adv. D.I. 7 ¶¶ 2 and 25 (emphasis added) (arguing that "expenses incurred by Berkowitz in connection with defending the Personal Guarantee Action *could diminish the amount of coverage* available to the Debtors' estates , "*could* significantly impair the Debtors' ability to

successfully conclude these Chapter 11 Cases," and "*could* significantly affect [the Debtors'] efforts to consummate a chapter 11 plan").

27.    Going a step further, it actually appears *unlikely* that the D&O Policies would provide coverage for the claims that Quality King has alleged against Berkowitz in the New York State Court Action based on the Personal Guaranty.

28.    In point of fact, "the very nature of [a] guaranty indicates that [Berkowitz] was acting in his personal capacity in executing the guaranty," not on behalf of PP Liquidating. *See Sauter ex rel. Sauter v. Houston Cas. Co.*, 168 Wash. App. 348, 356 (Wash. Ct. App. 2012) (affirming trial court's conclusion that D&O policy did not provide coverage for claim against corporate officer under personal guaranty).

29.    "'A contract of guaranty, being a collateral engagement for the performance of an undertaking of another, imports the existence of two different obligations, one being that of the principal debtor and the other that of the guarantor.' . . . Thus, as a matter of law, 'an entity cannot be a guarantor of its own obligations.'" *Id.* (citations omitted).

30.    As Quality King alleged in the New York State Court Complaint, PP Liquidating (then known as Pharmapacks) placed an Order with Quality King on or about April 10, 2022, but Quality King refused to fill that Order without additional assurance from Berkowitz – in the form of the Personal Guaranty – that he would be personally responsible for the payment – *i.e.*, it required *something more* than a mere promise or contractual obligation by the company itself. *See* New York State Court Complaint, Adv. D.I. 6-1 ¶¶ 8-17.

31.    Under these circumstances, even without the benefit of having the D&O Policies to review, it appears *doubtful* that any of the D&O Policies would provide coverage to Berkowitz for the claims alleged in the New York State Court Complaint and, therefore, the continuation of the

New York State Court Action would not erode the proceeds under the D&O Policies at all.

32.    For these additional reasons, the Debtors have failed to demonstrate that PP Liquidating is a "real party defendant" in the New York State Court Action and/or that the New York State Court Action will necessarily impact the Debtors' ability to accomplish liquidation. *See*, *e.g.*, *Midway Games*, 428 B.R. at 334; *Keystone Drill Servs. v. Davey Kent*, No. 3:21-cv-30, 2022 WL 819280, at *7 (W.D. Pa. Feb. 22, 2022) (finding that "failure to show that the [debtor] would *automatically* have to indemnify [a non-debtor officer or director] for any judgment against him" was fatal to the argument that the stay should be extended to the non-debtor); *Forcine Concrete & Constr. Co., Inc. v. Manning Equip. Sales & Serv.*, 426 B.R. 520, 524-25 (E.D. Pa. 2010) (holding that stay should only be applied to non-debtor where debtor's indemnification obligations to the non-debtor were "absolute"); *Jackson v. Trump Entertainment Resorts, Inc.*, No. 13-1605 (JHR/JS), 2015 WL 13637411, at *3 (D.N.J. Feb. 11, 2015) (recognizing the same rule that an indemnification obligation must be "absolute" to justify extension of automatic stay to a non-debtor and further finding that, if all "potentially related litigation" warranted a stay against a non-debtor, "then these stays would become routine and not unusual").

Any Erosion of the D&O Policies Would Be Immaterial

33.    In sum and substance, the Debtors argue that they will suffer "irreparable harm that will threaten the integrity of the underlying bankruptcy proceeding" if the New York State Court Action is not stayed because the potential erosion of coverage available under the D&O Policies would "jeopardize the Debtors' ability to propose a confirmable, much less consensual, plan of liquidation" and, by extension, "jeopardize the Debtors' ability to successfully exit these Chapter 11 Cases." *See, e.g.*, Injunction Complaint, Adv. D.I. 1 ¶¶ 3-4 and 19-20; Brief, Adv. D.I. 7 ¶¶ 2, 3 and 16.

34.     However, the Debtors' purported concern is patently overblown, if not illusory.

35.     To be sure, Quality King's claim against Berkowitz in the New York State Court Action is for only $161,041 (exclusive of interest, attorneys' fees, and costs of suit). *See* New York State Court Complaint, Adv. D.I. 6-1.

36.     As the Debtors admit in their Motion papers, the D&O Policies provide coverage of up to $15 million (*see* Declaration of B. Teets, Adv. D.I. 5 ¶ 6), meaning that the amount claimed by Quality King in the New York State Court Action amounts to only about one percent (1%) of the overall coverage available.

37.     Similarly, according to the Debtors' bankruptcy petitions, the estimated assets and liabilities of the Debtors exceed $100 million, making Quality King's Claim in the New York State Court Action largely *de minimis*.

38.     Under these circumstances, the Debtors cannot plausibly allege (let alone conclusively establish) that the erosion of coverage available under the D&O Policies, *if any*, would "threaten the integrity of [the Debtors'] estate" or "severely hinder" the Debtors' efforts to proceed with a plan of liquidation. *See In re Vistacare Group, LLC*, 678 F.3d 218, 231 n.11 (3d Cir. 2012); *Midway Games*, 428 B.R. at 333.

39.     Accordingly, based on the applicable case law, it would not be appropriate for the Court to expand the protections of the automatic stay to Berkowitz.

**B.     The Court Should Not Exercise its Discretion to Expand the Protections of the Automatic Stay to Berkowitz**

40.     In determining whether the issuance of an injunction is a proper exercise of discretion, courts consider whether the movant has demonstrated: (i) a "substantial likelihood" of success on the merits; (ii) that the movant will suffer irreparable harm in the event the injunction is not granted; (iii) that the harm to the movant would outweigh any harm to the nonmovant if the

injection is issued; and (iv) that the injunction would not violate the "public interest." *See Allied Dev. of Ala.*, 623 B.R. at 64 (citations omitted); *In re Phila. Newspapers*, 407 B.R. at 617.

41.     For largely the same reasons as set forth in Section A. above, the Debtors have failed to demonstrate that they will suffer irreparable harm if the Requested Injunction is denied.

42.     Specifically, as previously stated, the Debtors have failed to even establish that the proceeds of the D&O Policies are property of the estate and, thus, they have also failed to establish that the New York State Court Action "would interfere with, deplete or adversely affect property of [the] estates." *See* Brief, Adv. D.I. 7 ¶ 24 (citing *W.R. Grace*, 386 B.R. at 35).

43.     In addition, the purported "threat" that the coverage available under the D&O Policies will be eroded remains speculative and hypothetical at this point, and, given the amount of Quality King's claims against Berkowitz as compared to the total coverage available under the D&O Policies, even the *potential* erosion of coverage cannot be considered "substantial" as it should have no material impact on whether "key creditor constituents" would consent to or otherwise support a liquidating chapter 11 plan.

44.     The Debtors' argument that they have established a "substantial likelihood" of success also supports the notion that they will be able to confirm a plan of liquidation, whether or not the New York State Court Action is allowed to proceed. *See* Brief, Adv. D.I. 7 ¶ 23 (noting that the Debtors are "'proceeding on track' and 'there is no reason to believe or suspect' at this point that the liquidation will fail to culminate in a chapter 11 plan").

45.     In any event, the equities, interests of justice, and public interest favor allowing the New York State Court Action to proceed expeditiously.

46.     First, the Debtors' suggestion that, if Quality King's claims against Berkowitz are valid, it also holds "direct claims against the Debtors" and "may even receive recoveries on account

of its direct claims against the Debtors if the liquidation of litigation claims held by the estates proves successful" (Brief, Adv. D.I. 7 ¶¶ ) is disingenuous since Quality King did not file a proof of claim in these Chapter 11 Cases and the deadline for doing so has expired.[4]

47.     Second, if the Debtors are truly concerned about their ability to propose a confirmable plan of liquidation, it would seemingly behoove them to determine, as soon as possible, whether the D&O Policies *actually provide coverage* to Berkowitz in connection with the New York State Court Action and whether Berkowitz will ultimately be subject to liability therein.

48.     Indeed, it would benefit all interested parties – *i.e.*, Quality King, Berkowitz, and the Debtors – for the New York State Court Action to be prosecuted to its logical conclusion or otherwise resolved quickly, such that the amount of Quality King's claim will be liquidated or, otherwise, determined to be nothing.

49.     Under the totality of the circumstances, the delay of months (or possibly more than a year) that would necessarily result from the Requested Injunction has not been justified by the Debtors and would be plainly inequitable in that it would eviscerate the "protection [Quality King] sought and received when [it] required [Berkowitz] to guaranty the debt." *McCartney*, 106 F.3d at 510.

## CONCLUSION

50.     For the reasons set forth above, and consistent with Quality King's *Answer To Complaint for Temporary Injunctive Relief* filed herewith, Quality King respectfully submits that

---

[4]     Notably, Quality King cannot reasonably have been expected to file a proof of claim in these Chapter 11 Case by the May 15, 2023, deadline given, *inter alia*, that Berkowitz is a non-debtor, Quality King did not even commence the New York State Court Action until May 17, 2023, and Quality King did not learn that Berkowitz had made a claim for coverage under the D&O Policies until June 28, 2023.

the Court should enter an Order: (i) denying the Motion and Requested Injunction; (ii) dismissing the Injunction Complaint, in its entirety, as moot; (iii) awarding Quality King legal fees and costs of suit incurred in responding to the Injunction Complaint and the Motion; and (iv) granting Quality King such other and further relief as the Court may deem just and proper.

## STATEMENT PURSUANT TO LOCAL RULE 9013-1(h)

Pursuant to Local Rule 9013-1(h), Quality King hereby consents to the entry of a final order or judgment by this Court with respect to the Complaint and/or Motion.

Dated:   Wilmington, DE
         July 28, 2023

Respectfully submitted,

BELLEW LLC


By: /s/ Sean J. Bellew

_____
Sean J. Bellew, Esq. (No. 4072)

Red Clay Center at Little Falls
2961 Centerville Road, Suite 302
Wilmington, DE 19808
Tel.: (610) 585-5900
sjbellew@bellewllc.com

*Attorneys for Defendant Quality King
Distributors, Inc.*