**<u>EXHIBIT 1</u>**



Allianz Global Corporate & Specialty®

# Allianz
## Insurance
## Policy



# ALLIANZ PROTECT – RISK MANAGEMENT TOOLS FOR EMPLOYMENT PRACTICES LIABILITY

## STRATEGIC RISK MANAGEMENT TOOLS - HELPING YOU TO MANAGE EMPLOYMENT PRACTICES RISKS

Allianz Global Corporate & Specialty is pleased to offer an EPL Help Line to assist Insureds in reducing the risk of employment related claims. Through this help line and without cost to your company, you can confer with an attorney at the Jackson Lewis law firm who specializes in employment law. Since 1958, Jackson Lewis has guided employers in reducing workplace law exposure. With 57 offices and over 800 attorneys located throughout the country, Jackson Lewis is a nationally recognized leader in the representation of employers. Risk management solutions are as follows:

— **EPL Help Line:** As an Allianz Insured, your company will receive up to one hour of no-cost consultation with a Jackson Lewis attorney. To access the help line, dial the toll free number at **(866) 758-6874** and provide the name of your company, the policy number and a brief description of your question.

— **Employment Practices Checklist:** Jackson Lewis will provide a checklist to help you develop workplace law policies & procedures and to guide personnel actions.

— **Mini-Webinars:** Jackson Lewis makes available brief webinars about a variety of employment issues, including avoiding harassment and discrimination, compliance with the FMLA and Americans with Disabilities Act (ADA), avoiding claims of retaliation and wrongful termination, enhancing wage and hour compliance, managing substance abuse issues in the workplace and other workplace challenges.

— **Employment Practices Liability Blog:** Blog entries written by employment law experts at Jackson Lewis covering real-life scenarios can be delivered electronically to your human resources personnel and any other managers that you designate. To subscribe, register at eplriskmitigation.com.

— Interactive "go-to-meeting" based training by Jackson Lewis for Human Resources or operations managers (up to 50 minutes per session, up to two sessions per year).

— Complimentary attendance at any Jackson Lewis sponsored breakfast series across the country. To locate nearby sessions (and to register for webinars and other events at no charge), please visit www.jacksonlewis.com/events.

### ABOUT ALLIANZ
As an international financial services company, we offer our 86 million customers worldwide products and solutions in insurance and asset management. Allianz Global Corporate & Specialty is our dedicated brand for corporate, specialty and mid market risks and insures over half of the Fortune 500® companies.

Copyright © 2018 Allianz Global Corporate & Specialty SE. All rights reserved. The material contained in this publication is designed to provide general information only. While every effort has been made to ensure that the information provides is accurate, this information is provided without any representation or warranty of any kind about its accuracy and Allianz Global Corporate & Specialty SE cannot be held responsible for any mistakes or omissions. All descriptions of coverage are subject to the terms, conditions and exclusions of the individual policy.





### DECLARATIONS

### PRIVATE COMPANY PROTECT INSURANCE POLICY
### A CLAIMS MADE POLICY

**NOTICE:** THIS IS A CLAIMS MADE POLICY FOR ALL **COVERAGE PARTS** OTHER THAN CRIME. SUBJECT TO ITS TERMS, FOR ALL **COVERAGE PARTS** OTHER THAN CRIME, THIS POLICY APPLIES ONLY TO: (1) A **CLAIM** FIRST MADE AGAINST AN **INSURED** DURING THE **POLICY PERIOD** OR THE **DISCOVERY PERIOD** (IF APPLICABLE); (2) **VOLUNTARY COMPLIANCE LOSS** FIRST ASSESSED BY OR AGAINST AN **INSURED** (IF THE FIDUCIARY LIABILITY **COVERAGE PART** IS PURCHASED) AND (3) **EVENTS** FIRST RECEIVED, FIRST COMMENCED OR FIRST OCCURRING DURING THE **POLICY PERIOD** OR THE **DISCOVERY PERIOD** (IF APPLICABLE), AND REPORTED IN ACCORDANCE WITH THE REQUIREMENTS OF THIS POLICY.

AMOUNTS INCURRED AS **DEFENSE COSTS** AND **EXPENSES** SHALL REDUCE AND MAY EXHAUST THE **LIMIT OF LIABILITY** AND ARE SUBJECT TO THE APPLICABLE **RETENTIONS**. THIS POLICY DOES NOT PROVIDE FOR ANY DUTY BY **INSURER** TO DEFEND ANY OF THE **INSUREDS**.

The Declarations along with the Policy and with endorsements attached, if any, shall constitute the contract between the **Insureds** and **Insurer**. All terms appearing in **bold** in the Declarations and Policy are defined terms in the Policy.

Policy Number: USF00981121

| | | |
|---|---|---|
| Item 1. | **Policyholder**:<br>Principal Address: | Entourage Commerce, LLC<br>1516 Motor Parkway<br>Islandia, NY 11749 |
| | State of Formation: | Delaware |
| Item 2. | **Policy Period**: | From: August 18, 2021<br>To: August 18, 2022<br>The **Policy Period** incepts and expires as of 12:01 AM at the **Policyholder's** principal address. |
| Item 3. | **Aggregate Limit of Liability:** | $6,000,000 for all **Loss** under this Policy (except as set forth in Item 5. of the Declarations). |

---

**NOTICE:** THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIRMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF NEW YORK LAWS AND REGULATIONS.

New York Free Trade Zone (Risk- Code): **2-14177**

© 2015 Allianz Global Corporate & Specialty SE.
All rights reserved.



Item 4. **Coverage Part** Summary

| Coverages Purchased | Coverage Part | Separate Limit of Liability | Limits of Liability Shared with: |
|---|---|---|---|
| ☒ | Directors Officers and Company Liability | ☒ | N/A |
| ☐ | Employment Practices Liability | ☐ | |
| ☒ | Fiduciary Liability | ☒ | N/A |
| ☐ | Crime | | |

Note: Coverage shall be provided under this Policy only for **Coverage Parts** identified as "purchased" above. In the event the section above is blank or so otherwise states, coverage shall not be available. All **Limits of Liability** shall be deemed shared unless specifically set forth as Separate above.

Item 5. Supplemental **Limits of Liability** for all **Coverage Parts** (Other than Crime):

| a. | $100,000 | for **Crisis Communication Expenses** directly resulting from all **Personal Crisis Events**, in the aggregate for all **Personal Crisis Events** for all **Insured Persons** combined |
|---|---|---|
| b. | $100,000 | for **Crisis Communication Expenses** directly resulting from a **Company Crisis Events**, in the aggregate for all **Company Crisis Events** |
| c. | $25,000 | for **Kidnap Response Costs**, if the Directors, Officers, and Company Liability **Coverage Part** is purchased. |

**Retentions** shall not apply to: **Crisis Communication Expenses** under Subsection 1.1(C) Personal Crisis Event Supplemental Limit Coverage and Subsection 1.1(D) Company Crisis Event Supplemental Limit Coverage in General Terms and Conditions; or **Kidnap Response Costs**, if the Directors, Officers, and Company Liability **Coverage Part** is purchased.

Item 6. Sub-Limit of Liability for all **Coverage Parts** (Other than Crime):

| a. | $25,000 | **Defense Costs** and **Expenses** under Subsection 1.1(B) (Emergency Defense Costs and Expenses) of the General Terms and Conditions Section |
|---|---|---|

The Sub-limits of Liability stated in Item 6. of the Declarations shall be part of and not in addition to the **Aggregate Limit of Liability** of this Policy stated in Item 3 of the Declarations.

© 2015 Allianz Global Corporate & Specialty SE.
All rights reserved.



| Directors Officers and Company Liability **Coverage Part** Schedule | |
|---|---|
| **Limit of Liability** | |
| a.  Limit of Liability | $5,000,000 |
| b.  Sub-Limit of Liability | |
| **Asset and Liberty Protection Costs** | $100,000 |
| **Derivative Demand Costs** | $250,000 |
| **Securities Claim** arising from Title IV of the JOBS Act (Small Company Capital Formation). | $5,000,000 |
| c.  Additional Limit of Liability | |
| Additional **Limit of Liability** for **Non-Executive Director Excess Limit of Liability** per **Non-Executive Director:** | $1,000,000 |
| Aggregate additional **Non-Executive Director Excess Limit of Liability** for all **Claims** against all **Non-Executive Directors** combined | $1,000,000 |
| **Retention** and Coinsurance | |
| Each **Claim** or **Event** (other than a **Claim** to which a **Securities Retention** applies) | $500,000 |
| Each **Securities Claim** | $500,000 |
| **Non-Indemnifiable Loss Retention** | |
| Each **Claim** or **Event** per **Insured Person** for **Non-Indemnifiable Loss** | $0 |
| Each **Claim** or **Event** in the aggregate for all **Insured Persons** for **Non-Indemnifiable Loss** | $0 |
| Coinsurance: | .5% |
| Dates | |
| Pending and Prior Date | 12/27/2017 |
| Premium | |
| **Coverage Part Premium** | See Below |

© 2015 Allianz Global Corporate & Specialty SE.
All rights reserved.



| Employment Practices Liability **Coverage Part** Schedule | |
|---|---|
| **Limit of Liability** | |
| a. Limit of Liability | N/A |
| Employment Practices Liability Coverage | N/A |
| Third Party Violation Liability Coverage | N/A |
| **Retention** | |
| Each **Claim** or **Event** (other than **Claims** for which class or collective action certification is sought) | N/A |
| Each **Claim** or **Event** for which class or collective action certification is sought | N/A |
| **Dates** | |
| b. Pending and Prior Date | |
| Employment Claim | N/A |
| Third Party Claim | N/A |
| **Premium** | |
| c. **Coverage Part Premium** | N/A |

| Fiduciary Liability **Coverage Part** Schedule | |
|---|---|
| **Coverage Part Limit of Liability** | |
| a. Limit of Liability | $1,000,000 |
| Fiduciary Liability Coverage | $1,000,000 |
| Voluntary Compliance Program Coverage | $250,000 |
| b. Sub-Limit(s) of Liability | |
| **Section 502(c) Penalties** | $250,000 |
| **Pension Protection Act Penalties** | $250,000 |
| **HIPAA Penalties** | $1,000,000 |
| **Health Care Reform Penalties** | $100,000 |
| **Section 4975 Penalties** | $100,000 |
| **Retentions** | |
| Each **Claim** or **Event** (other than a **Claim** to which a **Securities Retention** applies) | $0 |
| Each **Claim** related to **Employer's Securities** subject to a **Securities Retention** | $0 |
| No **Retention** shall apply to **Non-Indemnifiable Loss**, **Crisis Communications Expenses**, **Voluntary Compliance Program Loss**, **Section 502(c) Penalties**, **Pension Protection Act Penalties**, **HIPAA Penalties**, **Health Care Reform Penalties**, **Section 4975 Penalties** or the first $25,000 in **Defense Costs** incurred for **E-Discovery Consultant Services** as per Subsection 1.1(E) of the General Terms and Conditions Section of this Policy. | |
| **Dates** | |
| Pending and Prior Date | 12/27/2017 |
| **Premium** | |
| **Coverage Part Premium** | See Below |

The Sub-Limits of Liability stated in each (**Coverage Part** Schedule) in Item 5 of the Declarations shall be part of and not in addition to the **Aggregate Limit of Liability** of this Policy stated in Item 3 of the Declarations.

© 2015 Allianz Global Corporate & Specialty SE.  
All rights reserved.


| Crime **Coverage Part** Schedule | | |
|---|---|---|
| Insuring Agreements | **Limit of Insurance** | **Deductible** |
| 1.1   Fidelity | | |
|       (A)  Employee Theft or Forgery | $ N/A | $ N/A |
|       (B)  ERISA Fidelity | $ N/A | $ N/A |
|       (C)  Client Property | $ N/A | $ N/A |
| 1.2   Forgery and Alteration | | |
|       (A)  Forgery and Alternation of Business Instruments | $ N/A | $ N/A |
|       (B)  Forgery and Alternation of Executive Personal Instruments | $ N/A | $ N/A |
| 1.3   Inside the Premises | $ N/A | $ N/A |
| 1.4   Outside the Premises - In Transit | $N/A | $ N/A |
| 1.5   Computer Crime | $ N/A | $ N/A |
| 1.6   Funds Transfer Fraud | $ N/A | $ N/A |
| 1.7   Social Engineering Fraud | $ N/A | $N/A |
| 1.8   Money Orders and Counterfeit Money | $ N/A | $ N/A |
| 1.9   Credit Card Fraud | $ N/A | $ N/A |
| 1.10 Identity Fraud [Executives] | $ N/A | $ N/A |
| 1.11 Data Restoration Expense | $ N/A | $ N/A |
| 1.12 Investigative Expense | $ N/A | $ N/A |
| **Premium** | | |
| Coverage Part Premium | N/A | |

Note: Coverage will be provided under this Policy only for the Insuring Agreements which include a **Limit of Insurance** and **Deductible** in the section above. In the event the section above is blank or so otherwise states, coverage shall not be available.

Item 8.    By acceptance of this Policy, the **Policyholder** gives notice to the **Insurer** of terminating or cancelling prior Crime coverages or policy(ies) effective at the time this Policy becomes effective.

Item 9.    **Premium**:    $84,000

Item 10.   **Discovery Period Additional Premium**:
a.            12 Months:              See Endorsement #3        of the Policy **Premium**
b.            24 Months:              See Endorsement #3        of the Policy **Premium**
c.            36 Months:              See Endorsement #3        of the Policy **Premium**

Item 11.   Notification of **Claims**, **Events**, loss and circumstances shall be given to:
                 Allianz Global Risks US Insurance Company
                 Attention: Financial Lines - Claims Department
                       225 West Washington Street, Suite 1800
                       Chicago, IL 60606-3484
                 Email for First Notice of Loss (FNOL): NewLoss@agcs.allianz.com
                 Phone Number for Claims FNOL: 1-(800) 347-3428
                 Phone Number for Existing Claims: 1-(800) 870-8857

© 2015 Allianz Global Corporate & Specialty SE.
All rights reserved.



Item 12. **Insurer**:
(Coverage is provided in the following company, a stock company)
Allianz Global Risks US Insurance Company
225 West Washington Street, Suite 1800
Chicago, IL 60606-3484
Phone Number: 1-888-466-7883

Item 13. Endorsements attached at issuance:   See Schedule of Forms and Endorsements, DO1200-MU


Producer Name and Mailing Address:
Aon Risk Services
165 Broadway
New York, NY 10006

© 2015 Allianz Global Corporate & Specialty SE.
All rights reserved.


**New York Addendum**

*CONSUMER INFORMATION NOTICE - PLEASE READ CAREFULLY*

**Claims Made Coverage**
[11 NYCRR 73 (Reg. 121)]

This policy is written on a claims-made basis for all **Coverage Parts** (other than Crime) and provides no coverage for claims which took place prior to the retroactive or prior acts date stated in the policy, if any.

For all **Coverage Parts** (other than Crime), this Policy covers only claims actually made against the insured while the policy remains in effect, and all coverage under the policy ceases upon the termination of the policy. Claims may, however, be reported to the company during an automatic sixty (60) day Discovery Period, or any additional Discovery Period purchased by the Policyholder.

During the first several years of the claims made relationship, claims made rates are comparatively lower than occurrence rates. Be advised that substantial annual premium increases, independent of overall rate level increases, should be expected if the policyholder is written at a less than mature rate. This disparity lessens the longer the claims made relationship exists.

There is a potential for coverage gaps that may arise upon expiration of any Discovery Period.

Coverage under this policy may apply for acts, errors, or omissions which occurred prior to the effective date of this Policy if a Claim for Loss or Damages resulting therefrom is first reported during the Policy Period or during any applicable Discovery Period; provided, however that on or before such date the Insured did not know or could not have reasonably foreseen that such Wrongful Act could lead to a Claim. IF THIS POLICY CONTAINS A PRIOR ACTS EXCLUSION, THERE IS NO COVERAGE FOR CLAIMS FIRST REPORTED TO THE INSURER ARISING OUT OF ACTS, ERRORS OR OMISSIONS THAT OCCURRED PRIOR TO THE INCEPTION DATE OF THIS POLICY.

**Defense Costs: Limit of Liability**
[11 NYCRR 71 (Reg. 107)]

**Defense Costs** are part of, and not in addition to, the **Limit of Liability** and may be exhausted by amounts incurred as legal defense costs. The **Insurer** will not be liable for further legal defense costs or for the amount of any judgment or settlement after exhaustion of the **Limit of Liability**.

The **Policyholder**, on behalf of all **Insureds** has a right to an accounting, upon request, of legal defense costs actually expended.

© 2015 Allianz Global Corporate & Specialty SE.
All rights reserved.



# Schedule of Forms and Endorsements

| Policy Number | Effective Date | Producer |
|---|---|---|
| USF00981121 | August 18, 2021 | Aon Risk Services |

**Policyholder: Entourage Commerce, LLC**

| Form Name | Form Number |
|---|---|
| Private Company Protect Insurance Policy General Terms and Conditions | DPR1000 (01/16) |
| Directors, Officers and Company Liability Coverage Part | DPRDO1000 (01/16) |
| Employment Practices Liability Coverage Part | EPLM1000 (01/16) |
| Fiduciary Liability Coverage Part | FIDM1000 (12/15) |
| Crime Coverage Part | CRMM1000 (12/15) |
| Notice of Terrorism Insurance Coverage | PHN7157-MU (01/20) |
| Cyber Perils Disclosure Notice | CYB-1 |
| New York Amendatory Endorsement | DPR1100-NY (09/17) |
| Cap on Losses from Certified Acts of Terrorism | 145989 (03/17) |
| Aon Amendatory Endorsement (Declarations and General Terms and Conditions) (Carlyle) | DPRMAN – MU(02/21) |
| Aon Amendatory Endorsement (Directors, Officers and Company Liability Schedule and Coverage Part) (Insured v Insured) | DPRMAN(1486) |
| Aon Amendatory Endorsement (Fiduciary Liability Coverage Part) (Carlyle) | DPRMAN – MU(02/21) |
| Named Co-Defendant Extension | DPRMAN(1390) |
| Other Insurance Provision Amended | DPRMAN(1389) |
| Entity Anti-Trust Claim Defense Costs Sub-Limit of Liability (D&O Coverage Part) | DPRMAN(1468)-MU (01/16) |
| Products Exclusion, Including False Advertising – Absolute | DPRMAN(1488) – MU (03/20) |



**PRIVATE COMPANY PROTECT INSURANCE POLICY**
**A CLAIMS MADE POLICY**

**GENERAL TERMS AND CONDITIONS**

## Contents

| | | |
|---|---|---|
| **Section 1.** | **Coverage Extensions** | Page 1 |
| **1.1** | Solely with respect to coverage afforded pursuant to the Liability Coverage Parts | Page 1 |
| **1.2** | International Jurisdiction Extension [Other than Crime] | Page 2 |
| **1.3** | Estate, Legal Representatives, Spouses and Domestic Partners Extensions [Other than Crime] | Page 2 |
| **1.4** | Discovery Period [Other than Crime] | Page 2 |
| **1.5** | New and Past Subsidiary and Plan Coverage | Page 3 |
| **Section 2.** | **Definitions** | Page 4 |
| **Section 3.** | **Exclusions for the Liability Coverage Parts** | Page 10 |
| **3.1** | Conduct | Page 10 |
| **3.2** | Fiduciary | Page 10 |
| **3.3** | Pending and Prior Claim; Prior Notice | Page 11 |
| **3.4** | Pollution | Page 11 |
| **3.5** | Statutory and Compensation Liability | Page 11 |
| **Section 4.** | **Notification of Claims, Events and Circumstances** | Page 12 |
| **4.1** | Notification | Page 12 |
| **4.2** | Notice of Circumstances | Page 13 |
| **4.3** | Related Claims and Related Events | Page 13 |
| **4.4** | Failure Report Events | Page 13 |
| **Section 5.** | **Defense, Settlement and Allocation for the Liability Coverage Parts** | Page 14 |
| **5.1** | No Duty to Defend | Page 14 |
| **5.2** | Optional Duty to Defend | Page 14 |
| **5.3** | Advancement | Page 14 |
| **5.4** | Claims Participation and Cooperation | Page 15 |
| **5.5** | Consent to Settlement | Page 15 |
| **5.6** | Full Settlement Within Retention | Page 15 |
| **5.7** | Allocation | Page 15 |
| **Section 6.** | **Limit of Liability and Retentions for the Liability Coverage Parts** | Page 16 |
| **Section 7.** | **Other Insurance for the Liability Coverage Parts** | Page 18 |
| **Section 8.** | **Severability and Non-Rescindable/Avoidance to All Coverage Parts** | Page 19 |
| **Section 9.** | **General Conditions** | Page 19 |

© 2016 Allianz Global Corporate & Specialty SE.
All rights reserved.



**PRIVATE COMPANY PROTECT INSURANCE POLICY**
**A CLAIMS MADE POLICY**

**GENERAL TERMS AND CONDITIONS**

Unless otherwise stated in this General Terms and Conditions or the **Coverage Parts** of this Policy, the terms, conditions and exclusions of this General Terms and Conditions shall be applicable to the **Liability Coverage Parts** unless specifically identifying provision applicable to the Crime **Coverage Part**. Words appearing in this General Terms and Conditions that are defined in a **Coverage Part** shall have the meaning provided for such terms in such **Coverage Part** both for purposes of this General Terms and Conditions and for such **Coverage Part**. Except as otherwise indicated, the terms and conditions set forth in each **Coverage Part** shall only apply to that particular **Coverage Part** (and, as applicable, to this General Terms and Conditions) but shall in no way be construed to apply to any other **Coverage Part** of this Policy. If any provision of the General Terms and Conditions is inconsistent or conflicts with the provision set forth in the **Coverage Part**, the terms and conditions of the **Coverage Part** shall control.

The coverage under this Policy for all **Coverage Parts**, other than Crime or so specified, is afforded solely with respect to **Claims** first made against an **Insured** during the **Policy Period** or, if exercised, the **Discovery Period**, and **Events** received, commenced or occurring, during the **Policy Period** or, if exercised, the **Discovery Period**, and reported to the **Insurer** as required by Section 4 (Notification of Claims, Events and Circumstances) in General Terms and Conditions of this Policy.

In consideration of payment of the **Premium** and subject to all terms, conditions and limitations of this Policy, the **Insurer**, the **Policyholder** and the **Insureds** agree as follows:

1. **Coverage Extensions**

1.1 Solely with respect to coverage afforded pursuant to the **Liability Coverage Parts**:

(A) <u>**Outside Entity Executive**</u>

The **Insurer** shall pay **Loss** of an **Outside Entity Executive** (or of the **Company** to the extent the **Company** has indemnified such **Outside Entity Executive** for such **Loss**) that arises from a **Claim** made against such **Outside Entity Executive**. Coverage is afforded to the **Outside Entity Executive** solely from the date on which such **Outside Entity Executive** in such capacity for such **Outside Entity**.

With regard to any covered **Claim** made against an **Outside Entity Executive**, the **Insurer** will only pay **Loss** under this Policy excess of any indemnification provided by an **Outside Entity** and excess of any valid and collectible coverage comparable to the management liability insurance policy that is afforded to an **Outside Entity** or its director or officers, or equivalent executive or management positions in any other country.

Such other insurance shall be regarded as valid and collectible if there is an entitlement to indemnity thereunder in respect to **Loss** covered under this Policy, or if there would be such an entitlement to indemnity but for the existence of this Policy, or but for any provision in such other policy to the same or similar effect as this Subsection.

(B) <u>**Emergency Defense Costs and Expenses**</u>

If the **Insurer's** required prior written consent cannot reasonably be obtained in a timely manner by the **Insureds** or the **Company** before **Defense Costs** or **Expenses** are incurred with respect to a covered **Claim** or covered **Event**, the **Insured** shall have the right to incur such **Defense Costs** or **Expenses** without such prior written consent, after which the **Insurer** will provide retroactive approval for such costs, subject to the applicable Sub-Limit of Liability as stated in Item 6 of the Declarations for all such amounts combined. The **Insureds** and the **Company** shall take all reasonable steps to obtain the required prior written consent before such costs are incurred.

© 2016 Allianz Global Corporate & Specialty SE.
All rights reserved.



(C) **Personal Crisis Event Supplemental Limit Coverage**

The **Insurer** shall pay **Crisis Communication Expenses** of an **Executive** (or of the **Company** to the extent the **Company** has indemnified such **Executive** for such **Loss**) that arise from a **Personal Crisis Event**, subject to the supplemental **Limit of Liability** as stated in Item 5.a. of the Declarations.

(D) **Company Crisis Event Supplemental Limit Coverage**

The **Insurer** shall pay the **Crisis Communication Expenses** of the **Company** that arise from a **Company Crisis Event**, subject to the supplemental **Limit of Liability** as stated in Item 5.b. of the Declarations.

(E) **E-Discovery Consultant Services**

No **Retention** shall apply to the first $25,000 incurred as **Defense Costs** for **E-Discovery Consultant Services** solely as a result of a covered **Claim** made against an **Insured** for which class action certification is being sought.

**1.2 International Jurisdiction Extension [Other than Crime]**

With respect solely to any **Claim** brought and maintained against an **Insured Person** that is located in an **International Jurisdiction**, the **Insurer** shall apply to such **Claim** the terms of the **International Policy** of such jurisdiction if it offers more favorable coverage solely in respect of the terms specifically addressing the Insuring Agreements, Coverage Extensions, Definitions and Exclusions in the respective sections of the **International Policy**. This extension does not apply to limits, sub-limits, retentions/deductibles, geographical scope, sanction clauses or clauses regarding the time-scope of coverage including any local legal interpretation thereof. Notwithstanding the above, any specific coverage or exclusion endorsement to this Policy shall apply irrespective of the terms of the **International Policy**.

**1.3 Estates, Legal Representatives, Spouses and Domestic Partners Extension [Other than Crime]**

The estates, heirs, legal representatives, assigns, spouses, or legally recognized domestic partners (as defined in any applicable federal, state, or foreign legislation) of an **Insured Person** shall be considered an **Insured Person** but only for a **Claim** arising solely out of their status as such. Where recovery is sought from (i) a spouse or civil or domestic partner solely because joint property is held or owned by or on behalf of the spouse or civil or domestic partner; or (ii) the legal representatives, heirs, assigns or estates of such **Insured Persons** in the event of their death, incapacity, insolvency or bankruptcy. No coverage is afforded for any wrongful act or omission of an estate, heir, legal representative, assign, spouse, or civil or domestic partner. All provisions in the General Terms and Conditions and the respective **Coverage Parts** applicable to **Loss** incurred by the **Insured Person** shall also apply to losses incurred by such estates, heirs, legal representatives, assigns, spouses, or civil or domestic partners.

**1.4 Discovery Period [Other than Crime]**

In the event that this Policy is: (1) cancelled by the **Policyholder**; or (2) the **Policyholder** or the **Insurer** does not renew or replace this Policy, in part or in whole, with another insurance policy providing the same or similar coverage(s), then the **Policyholder** shall have the right to a **Discovery Period** of either: (a) sixty (60) days automatically and at no additional premium; or (b) for a time period stated in Item 10.a.-c. of the Declarations, but only if the **Policyholder** makes a written request for such **Discovery Period** no later than thirty (30) days after the expiration of the **Policy Period** and pays the applicable required additional premium stated in Item 10.a.-c. of the Declarations. The **Policyholder** may only elect a single **Discovery Period** for all the **Coverage Parts** of this Policy. However, in the event the **Insurer** renews some **Coverage Parts** of this Policy but not others, the **Policyholder** shall have the right, subject to the provisions of this Subsection 1.4 (Discovery Period [Other than Crime]), to a **Discovery Period** applicable to the non-renewed **Coverage Part(s)** at the full premiums stated in (a) and (b) of this paragraph.

The **Discovery Period** is not cancelable and the additional premium charged is fully earned at its inception. There shall be no right to a **Discovery Period** in the event: (1) the **Insurer** has cancelled this Policy due to non-payment of **Premium**; (2) this Policy is renewed by the **Insurer**; (3) this Policy is


renewed or replaced with a management liability insurance policy with any other insurer; or (4) of a **Change of Control**, except as stated below. Any **Discovery Period** shall terminate immediately upon the effective date of: (a) the renewal of this Policy by the **Insurer**; or (b) any management liability insurance policy issued by any other insurer which replaces or renews the coverage afforded by this Policy, either in part or in whole.

(A) **Change of Control**

In the event of a **Change of Control** the **Policyholder** may purchase a **Discovery Period** up to seventy-two (72) months commencing immediately after the effective date of the **Change of Control**, subject to the **Policyholder** making a written request for such **Discovery Period** no later than thirty (30) days after such **Change of Control** and paying the applicable required premium within thirty (30) days of the **Insurer** indicating the required additional premium, less any unearned **Premium** for this Policy. In considering a request for up to a seventy-two (72) month **Discovery Period**, the **Insurer** shall be entitled to underwrite the exposure and to extend an offer on whatever terms, conditions and limitations the **Insurer** deems appropriate. In the event of a **Change of Control** the right to a **Discovery Period** shall not otherwise exist except as indicated in this paragraph.

(B) **Insured Person Discovery Period Election**

If the **Policyholder** is entitled to but does not exercise a **Discovery Period** as described in Subsection 1.4 (Discovery Period [Other than Crime]), then the **Insured Person(s)** shall have the right to jointly purchase a **Discovery Period** for the respective time period stated in Item 10.a.-c. of the Declarations, but such **Discovery Period** shall only apply to **Non-Indemnifiable Loss** and shall only apply to those **Insured Person(s)** who have affirmatively elected, in writing to the **Insurer**, such **Discovery Period**. Such **Discovery Period** shall not apply to: (a) any coverage for the **Company**; or (b) any coverage for any other **Insured Person** who did not affirmatively elect the **Discovery Period**. Only one **Discovery Period** and only one **Aggregate Limit of Liability** shall apply under this Policy for all **Insured Persons** combined, for all **Claims** in the aggregate, who elected coverage pursuant to this paragraph. Further, the **Limit of Liability** for any **Discovery Period** shall be part of, and not in addition to the existing **Aggregate Limit of Liability** for the **Policy Period** as stated in Item 3. of the Declarations.

The right of election under this Extension shall lapse unless written notice of such election is given by the **Insured Person** to the **Insurer** within thirty (30) days after the **Policyholder's** right to exercise the **Discovery Period** has expired. This Extension of coverage for the **Insured Person** is conditioned upon each covered **Insured Person(s)** electing the **Discovery Period** and paying (individually or collectively) the applicable additional premium within thirty (30) days of the **Insurer** indicating the required additional premium. In considering the request(s) under this paragraph, the **Insurer** shall be entitled to underwrite the exposure and to extend an offer on whatever terms, conditions and limitations the **Insurer** deems appropriate, provided, however, the additional premium required shall not exceed the amount as described in Item 10.a.-c. of the Declarations with respect to the periods of time stated therein.

## 1.5 New and Past Subsidiary and Plan Coverage

(A) **New Subsidiary Coverage**

If, during the **Policy Period**, the **Policyholder** obtains **Management Control** of an entity then such entity shall be deemed a **Subsidiary** and shall automatically be covered under this Policy as such with effect from the date on which the **Policyholder** first obtained **Management Control**, unless such entity has total assets that exceed thirty-five (35) percent of the total assets of the **Policyholder** as reflected in their respective most recent audited consolidated financial statements (the "Threshold").

In such a case where the newly acquired, created or controlled entity exceeds the Threshold, this Policy shall automatically extend coverage for such new entity but only for a period of ninety (90) days after the **Policyholder** obtained such **Management Control** (not to exceed the termination of

© 2016 Allianz Global Corporate & Specialty SE.
All rights reserved.



the **Policy Period**) and only for a **Claim** or **Event** first received, commenced or occurring, during such ninety (90) day period. At the **Company's** request, the **Insurer** may extend cover for such entity as a **Subsidiary** beyond the ninety (90) days, but only if the **Company** provides the **Insurer** with written notice containing full details of such entity and agrees to any additional terms, conditions, limitations and premium that the **Insurer** requires. The **Insurer** shall only be liable for **Wrongful Acts**, **Events** or matters that took place after the **Policyholder** obtained **Management Control** of such entity. This Subsection 1.5(A) shall also apply to the Crime **Coverage Part**, if purchased.

(B) <u>**Past Subsidiary Coverage**</u>

In the event the **Policyholder** ceased to have **Management Control** of a **Subsidiary** during or prior to the **Policy Period**, coverage shall continue hereunder for such former **Subsidiary** and any **Insured Person** thereof, but only for **Wrongful Acts**, **Events** or matters that took place while the **Policyholder** had **Management Control** of such entity.

(C) <u>**New Plan Coverage**</u>

Subsection 1.4(C) (<u>New Plan Coverage</u>) shall apply only in the event that the Fiduciary Liability **Coverage Part** is purchased.

If during the **Policy Period** the **Policyholder** becomes responsible for any plan that would qualify as a **Plan**, then such plan shall be deemed a **Plan** and shall automatically be covered as such with effect from the date on which the **Policyholder** first became responsible for such plan, unless the plan has total assets of any such plan that exceed thirty five percent (35%) of the total consolidated assets of the **Plans** that existed at the inception of the **Policy Period** as reflected in their most recent audited consolidated financial statements (the "Plan Threshold").

In such a case where the new **Plan** exceeds the Plan Threshold, this Policy shall automatically extend coverage for such new entity but only for a period of ninety (90) days after the **Policyholder** first becomes responsible for such **Plan** (not to exceed the termination of the **Policy Period**) and only for a **Claim** or **Event** first received, commenced or occurring, during such ninety (90) day period. At the **Company's** request, the **Insurer** may extend cover for such entity as a **Plan** beyond the ninety (90) days, but only if the **Company** provides the **Insurer** with written notice containing full details of such **Plan** and agrees to any additional terms, conditions, limitations and premium that the **Insurer** requires.

Coverage under this Policy for any **Plan** and its **Insureds** shall only apply for **Wrongful Acts** taking place while a **Policyholder** is a sponsor of such **Plan** or is otherwise responsible for the **Administration** of such **Plan**.

(D) <u>**Past Plan Coverage**</u>

Subsection 1.4(D) (<u>Past Plan Coverage</u>) shall apply only in the event that the Fiduciary Liability **Coverage Part** is purchased.

If before or during the **Policy Period** a **Plan** is terminated, coverage for such **Plan** and its **Insureds** shall continue until termination of this Policy, but only for **Wrongful Acts** that took place before such termination.

2. **Definitions**

2.1 **Aggregate Limit of Liability** means the amount stated in Item 3 of the Declarations.

2.2 **Application** means:

(A) the written statements and representations and any portion of an application given to the **Insurer** for this Policy, including any written information and materials attached thereto or incorporated therein, submitted by or on behalf of an **Insured** for the purposes of the **Insurer's** underwriting of this Policy or any policy issued by the **Insurer** of which this Policy is a direct or indirect renewal or replacement;



(B)    all warranties executed by or on behalf of an **Insured** and provided to the **Insurer** in connection with the underwriting of this Policy or the underwriting of any other **Management Liability Insurance Policy** issued by the **Insurer**, or any of its affiliates during the twenty-four (24) month period immediately preceding the inception of the **Policy Period**; and

(C)    all publicly available documents prepared by the **Company** which are reviewed by the **Insurer** in connection with the underwriting of this Policy or the underwriting of any other **Management Liability Insurance Policy** issued by the **Insurer**, or any of its affiliates during the twenty-four (24) month period immediately preceding the inception of the **Policy Period**.

**2.3**    **Change of Control** means when:

(A)    a person, entity or group: (1) acquires more than 50% of the **Policyholder's** share capital; (2) acquires the majority of the voting rights in the **Policyholder** by any method; (3) assumes the right to appoint or remove the majority of the board of directors (or equivalent position) of the **Policyholder**; or (4) merges with the **Policyholder**, such that the **Policyholder** is not the surviving entity; or

(B)    a trustee in bankruptcy, receiver, liquidator, rehabilitator or conservator (or similar official person) is appointed for the **Policyholder**.

**2.4**    **Claim** shall have the meaning specified in each **Coverage Part**.

**2.5**    **Clean Up Costs** means costs and expenses (including but not limited to legal and professional fees) incurred in relation to or arising out of the testing for, monitoring, remediating, cleaning-up, removing, containing, treating, neutralizing, detoxifying or assessing the effects of **Pollutants** or **Greenhouse Gases**.

**2.6**    **Company** means the **Policyholder**, **Subsidiary** and any debtor in possession as such term is used in Chapter 11 of the US Bankruptcy Code or any equivalent provision in any **International Jurisdiction**, except with respect to the Crime **Coverage Part**.

**2.7**    **Company Crisis Event** shall have the meaning specified in each **Coverage Part**.

**2.8**    **Coverage Part** means each of the **Coverage Part(s)** for which coverage has been selected under this Policy as stated in Item 4 of the Declarations.

**2.9**    **Crisis Communication Consultant** means a crisis management company or public relations firm which is retained with the prior written consent of the **Insurer**, which consent shall not be unreasonably withheld or delayed, by: (1) the **Policyholder** for a **Company Crisis Event**; or (2) the **Executive** of the **Policyholder** for a **Personal Crisis Event**; within thirty (30) days of such **Company Crisis Event** or **Personal Crisis Event** (respectively) to specifically mitigate damage to the **Company's** reputation or brand as a direct result of potential adverse publicity of such **Company Crisis Event** or **Personal Crisis Event**.

**2.10**    **Crisis Communication Expenses** means the reasonable and necessary fees, costs, charges and expenses incurred with the **Insurer's** prior written consent, such consent not to be unreasonably withheld or delayed, by a **Crisis Communication Consultant** to specifically mitigate damage to the **Company's** reputation or brand as a direct result of potential adverse publicity of such **Company Crisis Event** or **Personal Crisis Event**. **Crisis Communication Expenses** are subject to the respective additional supplemental **Limit of Liability** stated in Items 5.a. and 5.b. of the Declarations.

**2.11**    **Defense Costs** means reasonable and necessary fees, costs, charges and expenses:

(A)    incurred in connection with the defense and investigation of any **Claim**, including the costs of **E-Discovery Consultant Services** and the premiums for any appeal bond, attachment bond or similar bond arising out of a covered judgment, but without any obligation on the part of the **Insurer** to apply for or furnish any such bond, by or on behalf of the **Insured** in the investigation, defense, adjustment or settlement of a **Claim** against such **Insured** and any appeal thereof*;*

(B)    of any expert retained by defense counsel and approved in writing by the **Insurer** on behalf of the **Insureds** to prepare an evaluation, report, assessment, diagnosis or rebuttal of evidence in connection with the defense of a **Claim** against such **Insured**; and


(C)    if the Fiduciary Liability **Coverage Part** is purchased, incurred in connection with the defense and investigation of **Voluntary Compliance Program** any, including the costs of **E-Discovery Consultant Services** and the premiums for any appeal bond, attachment bond or similar bond arising out of a covered judgment, but without any obligation on the part of the **Insurer** to apply for or furnish any such bond, by or on behalf of the **Insured** in the investigation, defense, adjustment or settlement of a **Voluntary Compliance Program** involving such **Insured** and any appeal thereof.

The incurring of **Defense Costs** require the prior written consent of the **Insurer**, such consent not to be unreasonably withheld or delayed, except as provided by Subsection 1.1(B) (<u>Emergency Defense Costs and Expenses</u>) in General Terms and Conditions.

**Defense Costs** shall not include remuneration payable to any **Insured Persons** or **Employees**, costs of their time or costs or overhead of any **Company** remuneration, time, expenses or any other associated benefit or overhead of any **Insured Person** or any overhead expenses of the **Company**. Further, **Defense Costs** shall not include **Expenses**.

**2.12   Discovery Period** means the extended period of coverage, as set forth in Subsection 1.4 (<u>Discovery Period [Other than Crime]</u>) in General Terms and Conditions, commencing immediately after the effective date of the cancellation or non-renewal of this Policy during which written notice may be given to the **Insurer** of a: (1) **Claim** first made against an **Insured**; or (2) notice of circumstances, but solely (with regard to (1) or (2)) for **Wrongful Acts** occurring prior to the expiration of the **Policy Period**.

**2.13   E-Discovery Consultant Services** means services provided by an E-Discovery consultant firm retained by defense counsel with the prior written consent of the **Insurer**, which consent shall not be unreasonably withheld or delayed, to manage and minimize the costs associated with the development, collection, storage, organization, cataloging, preservation or production of electronically stored information that the **Insured**, **Insurer** and defense counsel agree are reasonable and necessary to the investigation and defense of a covered **Claim** or **Event**.

**2.14   Employee** means any natural person who is, was or becomes employed by the **Company** and whose labor or service is engaged by and directed by the **Company**, including full-time, part-time, seasonal, and temporary employees, volunteers, but solely while acting within the scope and capacity as such for the **Company**. **Employee** shall also include leased employees and independent contractors of an **Company** but only if the **Company** provides indemnification pursuant to a written agreement in the same manner as provided to **Employees** who are not leased workers or independent contractors. Coverage for such leased worker, or independent contractor shall be specifically excess of any indemnification or insurance otherwise available to such leased worker, or independent contractor from the applicable leasing company or any other source.

Solely with respect to a **Claim** against an **Outside Entity Executive** in his or her scope and capacity of such position, **Employee** also means a natural person who is, was or becomes employed by the **Outside Entity** and whose labor or service is engaged by and directed by the **Outside Entity**, including full-time, part-time, seasonal, leased and temporary employees but solely while acting within the scope and capacity as such for the **Outside Entity**. **Employee** shall not include independent contractors.

**2.15   Employment Claim** means a **Claim** which is brought by or on behalf of any past, present, future or prospective **Employee** against an **Insured** or an **Outside Entity Executive** for an **Employment Practices Violation Wrongful Act**.

**2.16   Employment Practices Violation** means any actual or alleged:

(A)    wrongful dismissal, discharge or termination (either actual or constructive) of employment, including breach of an implied contract;

(B)    harassment (including workplace bullying or sexual harassment whether "quid pro quo", hostile work environment or otherwise);



(C) discrimination, (including but not limited to discrimination based upon age, gender, race, color, national origin, religion, sexual orientation or preference, pregnancy, genetic information, military status, employment status or disability);

(D) **Retaliation**;

(E) employment-related misrepresentation(s) to an **Employee** or applicant for employment with the **Company**;

(F) employment-related libel, slander, humiliation, defamation or invasion of privacy;

(G) wrongful failure to employ or promote;

(H) wrongful deprivation of career opportunity, wrongful demotion or negligent **Employee** evaluation, including the giving of negative or defamatory statements in connection with an employee reference;

(I) wrongful discipline;

(J) failure to grant tenure;

(K) with respect to any of the foregoing items (A)-(J) of this Definition, negligent hiring, retention, training or supervision, infliction of emotional distress or mental anguish, failure to provide or enforce adequate or consistent corporate policies and procedures or violation of an individual's civil rights

whether direct, indirect, intentional or unintentional, but only if such **Employment Practices Violation** relates to an **Employee** or applicant for employment with the **Company** or an employee of an **Outside Entity**.

2.17 **Employment Practices Violation Wrongful Act** means any actual or alleged **Employment Practices Violation** actually or allegedly committed or attempted by:

(A) an **Insured Person**, while acting in his or her scope and capacity as such;

(B) an **Outside Entity Executive**, solely while serving in their capacity as such; or

(C) the **Company**.

2.18 **Event** shall have the meaning specified in each **Coverage Part**.

2.19 **Executive** means, solely while acting within the scope and capacity set forth below, any natural person who was, is or during the **Policy Period** becomes:

(A) a duly elected or appointed: director, officer, trustee, governor, management committee member, member of the management board of a **Company**, including any de facto, shadow director or the functional equivalent in any **International Jurisdiction**; or

(B) in-house General Counsel, Chief Legal Counsel or Risk Manager of any **Company** (or the functional equivalent in any **International Jurisdiction**).

2.20 **Expenses** shall have the meaning specified in each respective **Coverage Part**. In addition, **Expenses** shall also include **Crisis Communication Expenses**.

2.21 **Financial Insolvency** means the status of the **Company** resulting from the appointment of any federal, provincial, territorial, state or foreign official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate the **Company**, or the **Company** becoming a debtor in possession under **U.S.** bankruptcy law or the equivalent in any **International Jurisdiction**.

2.22 **Financial Institution** means any bank, savings and loan company, trust company, credit union, securities fund, mutual fund, pension fund, broker or dealer in securities or commodities, mortgage broker, investment advisor, stock exchange, commodities exchange, futures exchange, insurance company, insurance agent, venture capital firm, private equity firm, finance company, leasing company, fund manager, or any similar enterprise.

© 2016 Allianz Global Corporate & Specialty SE.
All rights reserved.



**2.23 Greenhouse Gases** means carbon dioxide, methane, nitrous oxide, hydrofluorocarbons, perfluorocarbons, and sulphur hexafluoride, or any other emission or substance defined by applicable law as a greenhouse gas.

**2.24 Insured** shall have the meaning specified in each **Coverage Part**.

**2.25 Insured Person** shall have the meaning specified in each **Coverage Part**.

**2.26 Insurer** means the entity stated as such in Item 12 of the Declarations.

**2.27 International Jurisdiction** means any jurisdiction other than the **United States of America**.

**2.28 International Policy** shall mean, in relation to an **International Jurisdiction**, the most recently revised, filed and approved Allianz standard wording for management liability insurance policy as applicable, issued by or with the approval of the **Insurer** or Allianz SE including any subsidiary or Allianz SE network thereof in such **International Jurisdiction** and offered in the ordinary course of business to other comparable insureds that provides substantially similar **Management Liability Insurance Policy** coverage to the coverage provided by this Policy. The term **International Policy** shall not include any partnership managerial, pension trust or professional liability coverage or insurance policy.

**2.29 Liability Coverage Parts** means the Directors, Officers, and Company Liability **Coverage Part**; Employment Practices Liability **Coverage Part**; and Fiduciary Liability **Coverage Part**.

**2.30 Limit of Liability** means the respective amounts stated in Item 7 of the **Coverage Part** Schedules of the Declarations subject to the **Aggregate Limit of Liability**.

**2.31 Loss** shall have the meaning specified in each **Coverage Part**.

**2.32 Management Control** means **Policyholder**, directly or indirectly: (1) owning interests representing more than fifty percent (50%) of the voting, appointment or designation power for the selection of a majority of (a) the board of directors of a corporation; (b) the members of the board of managers of a limited liability company, or (c) the general partners of a limited partnership; or (2) having the right pursuant to a written contract or the articles of incorporation, bylaws, operating agreement or equivalent organizational or governance documents of an entity, to control the operation of such entity.

**2.33 Management Liability Insurance Policy** means the policy which is comprised of the **Coverage Parts** that are purchased by the **Policyholder** as indicated in Item 4 of the Declarations.

**2.34 Non-Executive Director** means any member of the **Company's** board of directors who is not an **Employee**, but only while serving in that capacity.

**2.35 Non-Executive Director Excess Limit of Liability** means the additional **Limit of Liability** amount stated as in Item 7.c. of the Directors Officers and Company Liability **Coverage Part** Schedule in the Declarations for each **Non-Executive Director**, subject to an aggregate **Non-Executive Director Excess Limit of Liability** amount stated as in 7.c. of the Directors Officers and Company Liability **Coverage Part** Schedule in the Declarations therein.

**2.36 Non-Indemnifiable Loss** means **Loss** of an **Insured Person** for which a **Company** is neither permitted nor required to indemnify due to legal or regulatory prohibition under any contract, charter, bylaws, operating agreement, statutory law, codified law or common law, or for which the **Company** is neither permitted nor required to indemnify due to **Financial Insolvency**.

**2.37 Official Body** means any regulator, governmental body, governmental agency or official trade body (or the enforcement arm of such body) that is empowered by statute or statutory regulation to investigate the affairs of the **Company**, an **Outside Entity** or an **Insured Person**.

Page 8 of 22

© 2016 Allianz Global Corporate & Specialty SE.
All rights reserved.



**2.38** **Outside Entity** means any:

(A) organization chartered or incorporated and operating as a not-for-profit organization;

(B) any for-profit entity in which the **Policyholder** is a shareholder, unit holder, or partner, creditor, trustee, or executor excluding **Financial Institutions**, joint ventures and excluding any entity whose securities are publicly traded; or

(C) other entity specifically added as an **Outside Entity** by endorsement to this Policy;

provided that such entity is not included in the definition of **Company**.

**2.39** **Outside Entity Executive** means any **Employee**, director, officer, trustee, governor or equivalent of a **Company** who at the specific request or direction of, or as part of the regular duties assigned by such **Company**, holds the position of director, officer, trustee, governor or equivalent of an **Outside Entity**, but only while acting within the scope and capacity of such position.

**2.40** **Personal Crisis Event** shall have the meaning specified in each **Coverage Part**.

**2.41** **Pending and Prior Date** means the dates stated for the applicable **Coverage Part** as shown in Item 7 of the Declarations.

**2.42** **Policyholder** means the entity stated in Item 1 of the Declarations.

**2.43** **Policy Period** means the period of time stated in Item 2 of the Declarations.

**2.44** **Pollutants** means, but is not limited to solids, liquids, gaseous, thermal, biological, nuclear or radiological irritants, contaminants or smoke, vapor, soot, fumes, acids, alkalis, chemicals or **Waste** and any air emission, odor, waste water, oil or oil products, infectious, biological or medical waste, asbestos or asbestos products, silica, noise, fungus, including mold, mildew and any mycotoxins, spores, scents or by products produced or released by fungi, but not any fungi intended by the **Insured** for consumption, and electric or magnetic or electromagnetic fields. "**Waste**" includes, but is not limited to, materials to be recycled, reconditioned or reclaimed and nuclear materials.

**2.45** **Premium** means the amount specified in Item 9 of the Declarations.

**2.46** **Related Claim** means any and all **Claims**, whether made or commenced before, during or after the **Policy Period**, arising out of, based upon, attributable to or in any way involving, directly or indirectly, the same or related **Wrongful Acts**, facts, matters, **Events**, circumstances, transactions, practices, statements or decisions, whether involving the same or different **Insured(s)** or others, involving the same or different plaintiffs or claimants, or involving the same or different **Coverage Part**.

**2.47** **Related Event** means any and all **Events**, whether made or commenced before, during or after the **Policy Period**, arising out of, based upon, attributable to or in any way involving, directly or indirectly, the same or related **Wrongful Acts**, facts, matters, **Events**, circumstances, transactions, practices, statements or decisions, whether involving just the same or different **Insured(s)** or others, involving the same or different plaintiffs or claimants, or involving the same or different **Coverage Part**.

**2.48** **Retaliation** means a retaliatory act of an **Insured** alleged to be in response to any of the following activities: (1) the disclosure or threat of disclosure by an **Employee** of the **Company** or an **Outside Entity** to a superior or to any governmental agency of any act by an **Insured** which act is alleged to be a violation of any federal, state, local or foreign law, common or statutory, or any rule or regulation promulgated thereunder; (2) the actual or attempted exercise by an **Employee** of the **Company** or an **Outside Entity** of any right that such **Employee** has under law, including rights under worker's compensation laws, the Family and Medical Leave Act, the Americans with Disabilities Act or any other law relating to employee rights; (3) the filing of any claim under the Federal False Claims Act or any other federal, state, local or foreign "whistle-blower" law; or (4) strikes of an **Employee** of the **Company** or an **Outside Entity**.

**2.49** **Retention** means the amounts stated for the applicable **Liability Coverage Part** as shown in Item 7 of the Declarations.

© 2016 Allianz Global Corporate & Specialty SE.
All rights reserved.



2.50 **Self Report** means the actual report to an **Official Body** by any **Insured** pursuant to an obligation to inform such agency of matters giving rise to actual or potential regulatory issues, where failure to give such notification or delay in notifying, can itself give rise to enforcement consequences.

2.51 **Subsidiary** means any entity which, on or before the inception date of the **Policy Period**, is: (1) under **Management Control**; or (2) an organization charted or incorporated and operating as a not-for-profit organization sponsored exclusively by the **Policyholder**. The **Insurer** shall only be liable for **Loss** arising out of a **Wrongful Act** or an **Event** committed or occurring while such entity is a **Subsidiary**.

2.52 **United States of America** ("**U.S.**") means the United States of America its territories and possessions.

2.53 **Wage and Hour Violations** means:

(A)    violation of the Fair Labor Standards Act (except the Equal Pay Act);

(B)    the refusal, failure or inability of any **Insured** to pay wages or overtime pay (or amounts representing such wages or overtime pay) for services rendered or time spent in connection with work-related activities (including conversion, unjust enrichment, failure to reimburse expenses, violations of unfair business practices or trade practices); provided however that this Subsection shall not apply solely to tort based back pay or front pay damages

(C)    misclassification of employees;

(D)    improper deduction from pay taken by any **Insured** from any **Employee** or purported **Employee**; or

(E)    failure to provide or enforce legally required meal or rest break periods.

2.54 **Wrongful Act** shall have the meaning set forth in each applicable **Coverage Part**.

3.    **Exclusions for the Liability Coverage Parts**

Under all **Coverage Parts,** the **Insurer** shall not be liable for that portion of **Loss** or **Expense** on account of any **Claim** or **Event**:

3.1    <u>Conduct</u>

(A)    arising out of, based upon, attributable to or as a consequence of the committing of a deliberately fraudulent or deliberately criminal act or omission, or a willful violation of law by the **Insured**; or

(B)    for the gaining of any financial profit, remuneration or financial advantage by the **Insured** to which they were not legally entitled;

provided, that this Subsection 3.1 shall only apply to an **Insured** if such behavior is established by a final, non-appealable adjudication in any action or proceeding other than an action or proceeding initiated by the **Insurer** to determine coverage under this Policy.

Solely with respect to the Directors, Officers, and Company Liability **Coverage Part** and notwithstanding the foregoing, Paragraph (B) of this Subsection does not apply to any **Claim** for an actual or alleged violation of Section 11, 12, or 15 of the Securities Act of 1933, as amended, unless it is established by a final and non-appealable adjudication in a **Claim** other than an action or proceeding brought by the **Insurer** that the **Loss** attributable to such violation constitutes profit or remuneration to which the **Insured** was not legally entitled.

Further, for the application of the exclusion set forth in Subsection 3.1(A), the imposition of a criminal fine or other criminal sanction in an **International Jurisdiction** will not, by itself, be conclusive proof that a deliberate dishonest, fraudulent or criminal act or omission or willful violation of law occurred, if such acts or omissions which are treated as criminal violations in such **International Jurisdiction** are not treated as a criminal violation in the **United States of America**.

3.2    <u>Fiduciary</u>

for any actual or alleged violation of the Employee Retirement Income Security Act of 1974 (ERISA), as amended or any regulations promulgated thereunder or any similar law, federal, state or local law or regulation; provided however this exclusion shall not apply to the Fiduciary Liability **Coverage Part**;

© 2016 Allianz Global Corporate & Specialty SE.
All rights reserved.


### 3.3    Pending and Prior Claim; Prior Notice

alleging, arising out of, based upon, attributable to or as a consequence of:

(A)    any civil, criminal, administrative, regulatory, arbitration, mediation proceeding or **Claim**, including any claim or investigation conducted by the Equal Employment Opportunity Commission ("EEOC"), initiated or commencing prior to or pending as of the **Pending and Prior Date**; or alleging or deriving from the same or essentially the same facts as alleged in such actions or claims or any **Related Claim** or **Related Event** thereto;

(B)    acts alleged or the same or related **Wrongful Act(s)** or **Related Event(s)** alleged or contained in any **Claim** or circumstance that has been reported or notified under any **Management Liability Insurance Policy** of which this Policy is a renewal, replacement or which it may succeed in time; unless:

(1)    such prior policy was issued by the **Insurer**; and;

(2)    the **Insurer** did not cover or accept such **Claim** or circumstance under such prior policy other than by reason of the application of the **Retention** or the exhaustion of the **Limit of Liability**.

### 3.4    Pollution

for:

(A)    any actual or alleged or threatened discharge, dispersal, release, or escape of **Pollutants**;

(B)    any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or assess the effects of **Pollutants** or **Greenhouse Gases**; or

(C)    **Clean Up Costs**;

provided, however, this Subsection 3.4 shall not apply under the Directors Officers and Company Liability **Coverage Part**, if purchased, to the following:

(1)    **Non-Indemnifiable Loss**;

(2)    **Loss** in connection with an **Environmental Mismanagement Event**.

### 3.5    Statutory and Compensation Liability

(A)    for any actual or alleged violation of the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, as amended or any regulations promulgated thereunder or any similar law, federal, state, local or foreign law or regulation in connection with any of the foregoing; or for any actual or alleged violation of the **Company's** obligations respecting worker's compensation, disability benefits, unemployment compensation, unemployment insurance, retirement benefits, social security benefits or similar obligations'; or.

(B)    alleging, arising out of, based upon, attributable to or as a consequence of any **Wage and Hour Violation**;

provided, however, that this Subsection 3.5 shall not apply to any **Employment Claim** for **Retaliation**;

The **Wrongful Act** of an **Insured Person** shall not be imputed to any other **Insured Persons** for the purpose of determining the applicability of the foregoing exclusions in this Section 3 (Exclusions). Only those **Wrongful Acts** committed by any past, present or future Chief Executive Officer, Chief Financial Officer, General Counsel or Chief Legal Counsel (or equivalent) of the **Company** shall be imputed to the **Company** for the purposes of determining the coverage under this Policy for such **Company**.

© 2016 Allianz Global Corporate & Specialty SE.
All rights reserved.


**4.      Notification of Claims, Events and Circumstances**

This Notification of Claims, Events and Circumstances Section shall apply to all **Coverage Parts** other than the Crime **Coverage Part**.

**4.1    Notification**

The **Policyholder** shall, as a condition precedent to any obligation of the **Insurer** under this Policy, give written notice to the **Insurer** of:

(A)      any **Claim** made against an **Insured**;

(B)      Subject to Subsection 4.3 (<u>Related Claims and Related Events</u>) any **Event**; or

(C)      in the event the Fiduciary Liability **Coverage Part** of this Policy is purchased, any **Voluntary Compliance Program Notice** (as that term is defined in such **Coverage Part**).

as soon as is reasonably practicable after the **Company's** Chief Executive Officer, Chief Financial Officer, Risk Manager or General Counsel, or any person in equivalent positions, first becomes aware of such **Claim**, **Event**, or **Voluntary Compliance Program Notice** prior to the expiration of the **Policy Period** or the **Discovery Period**, if applicable. Solely with respect to any **Claim**, such notice shall be made no later than sixty (60) days after the expiration of the **Policy Period**.

Written notice shall include but not be limited to a description of the **Claim** or **Event**, of the nature of the alleged or potential damage, the names of the actual or potential claimants and the date and manner in which the **Company** or **Insured Persons**, as the case may be, first became aware of the **Claim** or **Event**.

Notwithstanding the foregoing notification provision, the **Insureds** shall have no obligation to give notice:

(1)      with respect to Fiduciary Liability **Coverage Part**:

(a)      a **Fact Finding Investigation Event** before the earliest of time that:  (i) the matter becomes a **Claim**; (ii) a **Wrongful Act** alleged in writing; or (iii) any **Insured** has incurred defense costs for which coverage is being sought; or

(b)      an **Internal Appeal Event** before the earliest of time that:  (i) the matter becomes a **Claim**; (ii) any investment loss within a **Plan** is alleged; or (iii) any **Insured** has incurred defense costs for which coverage is being sought.

(2)      with respect to all **Coverage Parts** [Other than Crime]: for all other **Events** before the earliest of time that:  (i) the matter becomes a **Claim**; or (ii) any **Insured** has incurred defense costs or other expenses for which coverage is being sought.

With respect to the Fiduciary Liability **Coverage Part** and subject to Subsection 4.3 (<u>Related Claims and Related Events</u>), the payment of any **Voluntary Compliance Program Loss** under this Policy will not waive any of the **Insurer's** rights, including the **Insurer's** rights in the event that the circumstances giving rise to such **Voluntary Compliance Program** also give rise to a **Claim**.

With respect to the Crime **Coverage Part** of this Policy only, if purchased, written notice of any loss **Discovered** by the **Insured** shall be provided to the **Insurer** pursuant to Subsection 5.4 (<u>Duties After Discovery of a Loss or Claim</u>) of the Crime **Coverage Part**.



**4.2**  **Notice of Circumstances**

If during the **Policy Period** or the **Discovery Period** an **Insured** becomes aware of any circumstances which may reasonably be expected to give rise to a **Claim** being made against an **Insured** and may give written notice to the **Insurer** of those circumstances, such notice to comprise the **Wrongful Act** allegations or matters anticipated and the reasons for anticipating such a **Claim**, with full particulars as to the dates, persons, and entities involved, then a **Claim** which is subsequently made against such **Insured** and reported to the **Insurer** alleging, arising out of, based upon, attributable to or as a consequence of any **Wrongful Act** or matter which is the same as or related to any **Wrongful Act** or matter anticipated in those reported circumstances, shall be considered made at the time such notice of those circumstances was received by the **Insurer**.

**4.3**  **Related Claims and Related Events**

If during the **Policy Period**, or any applicable **Discovery Period**, a **Claim** or an **Event** is noticed to the **Insurer** in accordance with the requirements of this Policy, then any: (1) **Related Claim** to such **Claim** made; or (2) **Related Event**, received, commenced or occurring, after expiration of the **Policy Period**, or the applicable **Discovery Period**, shall be accepted by the **Insurer** as having been:

(A)  made and notified at the same time as such prior notified **Claim** with respect to a **Related Claim**; or

(B)  received, commenced or occurred and notified at the same time as such prior notified **Event** with respect to a **Related Event**.

All (i) **Related Claims** or (ii) **Related Events**; and its related **Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of causally connected facts, circumstances, situations, events, transactions or causes shall be deemed to be:

(1)  one single **Claim** and deemed to be made at the time the first of such **Related Claim(s)** was made; or

(2)  one single **Event** and deemed or have been received, commenced or occurred at time the first **Related Event(s)** was received, commenced or occurred.

Provided however, any **Claim** subsequently made by reason of a related **Wrongful Act** as described above, shall be deemed to be a **Claim** first made at the earlier of when the **Event** is first noticed to the **Insurer** or a **Claim** is first made.

All **Related Claims** and **Related Events** shall be subject to only one **Aggregate Limit of Liability** applying pursuant to this Subsection (Related Claims and Related Events) in the General Terms and Conditions of this Policy.

With regard to any subsequent **Related Claims** or **Related Events**, Subsection 1.1(B) (Emergency Defense Costs) in the General Terms and Conditions shall not apply.

**4.4**  **Failure to Report Events**

Failure to report a **Events**,(including a **Pre-Claim Inquiry**), as defined under the General Terms and Conditions and the respective **Coverage Parts** of this Policy pursuant to Section 4. (Notification of Claims, Events and Circumstances) in General Terms and Conditions, or any prior policy of which this Policy is a replacement, renewal or succeeds in time, shall not constitute a breach of Subsection 4.1 (Notification) for the purposes of any subsequent **Claim** made against an **Insured** during the **Policy Period** or the **Discovery Period**; provided however, that the **Insurer** shall have no obligation under this Policy for any costs, fees, or expenses incurred prior to the tender of such notice.

Written notice under this Policy shall be given in writing to the **Insurer** named in the Declarations at the address or email address indicated in Item 11 of the Declarations, and will be effective from the date of receipt by the **Insurer** at such address.

© 2016 Allianz Global Corporate & Specialty SE.
All rights reserved.



## 5. Defense, Settlement and Allocation for the Liability Coverage Parts

### 5.1 No Duty to Defend

The **Insurer** does not assume any duty to defend. The **Insureds** shall defend and contest any **Claim** made against them.

### 5.2 Optional Duty to Defend

Notwithstanding the foregoing, the **Insureds** shall have the right to tender the defense of the **Claim** to the **Insurer**, which right shall be exercised in writing by the **Policyholder** on behalf of all **Insureds** to the **Insurer** pursuant to Section 4 (Notification of Claims, Events and Circumstances) of the General Terms and Conditions. This right shall terminate if not exercised within thirty (30) days of the date the **Claim** is first made against an **Insured**. Further, from the date the **Claim** is first made against the **Insured** to the date when the **Insurer** accepts the tender of the defense of such **Claim**, the **Insureds** shall take no action, or fail to take any required action, that prejudices the rights of the **Insureds** or the **Insurer** with respect to such **Claim**. Provided that the **Insureds** have complied with the foregoing, the **Insurer** shall be obligated to assume the defense of the **Claim**, even if such **Claim** is groundless, false or fraudulent, provided, however, the **Insurer** shall not be obligated to defend such **Claim** after the **Aggregate Limit of Liability**, the Limit of Liability of the applicable **Coverage Part**, applicable Sub-Limit of Liability has been exhausted, or after the **Insureds** rejection of or failure or refusal to accept, within the time prescribed in Subsection 5.5 (Consent to Settlement) below, a settlement opportunity. The assumption of defense of the **Claim** shall be effective upon written confirmation sent by the **Insurer** to the **Policyholder**. Once the defense has been so tendered, the **Insured** shall have the right to effectively associate with the **Insurer** in the defense and negotiation of any settlement of any **Claim**, subject to the provisions of this Subsection 5.2.

The Optional Duty to Defend afforded pursuant to this Subsection 5.2 shall not be afforded for any **Claim** alleging, in whole or in part, a **Wage and Hour Violation**.

### 5.3 Advancement

When the **Insurer** has not assumed the defense of a **Claim** pursuant to Subsection 5.2 (Optional Duty to Defend), the **Insurer** shall advance **Defense Costs** and **Expenses** on behalf of the **Insureds** as and when such **Defense Costs** and **Expenses** are incurred pursuant to the provisions of this Policy.

If the **Company** is permitted or required to indemnify the **Insured Persons** for **Loss** pursuant to the broadest applicability of law, but fails to indemnify such **Insured Persons** for any reason within sixty (60) days of a written demand from the **Insured Person** to so indemnify, then the **Insurer** will pay such otherwise covered **Loss** to or on behalf of the **Insured Persons** as if such **Loss** was **Non-Indemnifiable Loss** and without prior deduction of any applicable **Retention**. In such event, however, the **Insurer** shall be entitled to obtain immediate reimbursement from the **Company** for all payments made by the **Insurer** that would not have been made or covered under this Policy had the indemnity been provided by the **Company** in respect of such **Loss** by reason of the applicability of the **Retention**; provided, however, that, subject to the provisions of Subsection 9.8 (Financial Insolvency) of the General Terms and Conditions, the foregoing shall not apply if the **Company** cannot indemnify the **Insured Persons** due to **Financial Insolvency**.

Subject to the foregoing, such payments shall be made within a reasonable time after receipt and review of full details and after acceptance by the **Insurer** of such **Defense Costs** and **Expenses** as covered **Loss** under this Policy. In the event that a determination as to the amount, if any, of **Defense Costs** and **Expenses** to be advanced under this Policy cannot be agreed to by the **Insureds** and the **Insurer**, then the **Insurer** shall advance **Defense Costs** and **Expenses**, excess of any applicable **Retention** amount, that portion of **Loss** which the **Insured** and the **Insurer** agree is not in dispute until a different amount shall be agreed upon or determined pursuant to the provisions of this Policy and applicable law. Any payments of **Defense Costs** and **Expenses** to any **Insureds** that have been made by the **Insurer** shall be repaid to the **Insurer** by each and every **Insured** or the **Company**, severally according to their respective interests, in the event that any such **Insured Person** or **Company** shall not be entitled under this Policy to the payment of such **Defense Costs** and **Expenses**.

© 2016 Allianz Global Corporate & Specialty SE.
All rights reserved.



**5.4** **Claims Participation and Cooperation**

When the **Insurer** has not assumed the defense of a **Claim** pursuant to Subsection 5.2 (<u>Optional Duty to Defend</u>), the **Insurer** shall have nevertheless the right, but not the obligation, to fully and effectively associate with each and every **Insured** in the defense, investigation, settlement and prosecution of any **Claim** or **Event** (or in the event the Fiduciary Liability **Coverage Part** has been purchased, any **Voluntary Compliance Program**) that involves or appears reasonably likely to involve the **Insurer**.

In all events, each and every **Insured** shall give the **Insurer** full cooperation, and such information as it may reasonably require. The **Insureds** shall do nothing that would in any way increase the **Insurer's** liability under this Policy or prejudice the **Insurer's** actual or potential rights of recovery.

The **Insurer** shall accept as reasonable and necessary the retention of separate legal representation to the extent required by a material conflict of interest between **Insureds**.

Other than as provided in Subsection 1.1(B) (<u>Emergency Defense Costs and Expenses</u>), of this Policy, no **Defense Costs** or **Expenses** shall be incurred without the prior written consent of the **Insurer**, such consent shall not be unreasonably withheld or delayed.

As a condition precedent to the **Insurer's** obligation to make any payment of **Loss**, the **Insureds** shall not admit or assume any liability, enter into any settlement agreement, consent to any judgment, or incur any **Defense Costs** or **Expenses** without the prior written consent of the **Insurer**, such consent not to be unreasonably withheld or delayed. Only those settlements, judgments, **Defense Costs** and **Expenses** that have been consented to by the **Insurer** shall be recoverable as **Loss** under the terms of this Policy. A **Self Report** shall not be considered as admitting liability, settling or attempting to settle a **Claim**.

**5.5** **Consent to Settlement**

With respect to the:

(A) Employment Practices Liability **Coverage Part**, if any **Insured** refuses to consent to a settlement or compromise recommended by the **Insurer** and elects to contest or continue to contest the **Claim** or **Event**;

(B) With respect to the Fiduciary Liability **Coverage Part**, if any **Insured** refuses to consent to a settlement or compromise recommended by the **Insurer** and elects to contest or continue to contest the **Claim**, **Event**, or a **Voluntary Compliance Program Loss**;

the **Insurer's** liability shall not exceed the amount of **Defense Costs** and **Expenses** incurred prior to the date of the recommendation plus the amount of the recommended settlement or compromise plus eighty percent (80%) of all future **Loss**; provided that in no event shall the **Insurer's** liability under this Policy for such **Claim** or **Event** or **Voluntary Compliance Program** exceed the remaining portion of the **Limit of Liability**.

**5.6** **Full Settlement Within Retention**

Notwithstanding the foregoing provision set forth in Subsection 5.4 (<u>Claims Participation and Cooperation</u>), The **Insured** may settle any covered **Claim**, covered **Event**, or covered **Voluntary Compliance Program Loss**, if applicable, where the **Loss** does not exceed the applicable **Retention**, provided the entire **Claim**, **Event** or **Voluntary Compliance Program Loss**, if applicable, is resolved, inclusive of **Defense Costs** and **Expenses**, and the **Insured** obtains a full release on behalf of all the **Insureds** from all claimants, or court approval of the settlement and notice of such settlement is provided to the **Insurer**. This exception shall not apply where any dispute exists between the **Insurer** and the **Insured** over whether certain **Claims** are **Related Claims** or whether certain **Events** are **Related Events**.

**5.7** **Allocation**

If both **Loss** covered by this Policy and **Loss** not covered by this Policy are incurred, either because a **Claim** or **Event** made against the **Insured** contains both covered and uncovered matters, or because a **Claim** or **Event** is made against both the **Insured** and others who are not **Insureds**, the **Insured** and the **Insurer** will use their best efforts to determine a fair and appropriate allocation of **Loss** between that portion


of **Loss** that is covered under this Policy and that portion of **Loss** that is not covered under this Policy. Additionally, the **Insured** and the **Insurer** agree that in determining a fair and appropriate allocation of **Loss**, the parties will take into account the relative legal and financial exposures of, and relative benefits obtained in connection with the defense and settlement of the **Claim** or **Event** by the **Insured** and others.

In the event that an agreement cannot be reached between the **Insurer** and the **Insured** as to an allocation of **Loss** then the **Insurer** shall pay or advance that portion of **Loss** (pursuant to this Subsection) which the **Insured** and the **Insurer** agree is not in dispute until a final amount is agreed upon or determined pursuant to the provisions of this Policy and applicable law.

## 6. Limit of Liability and Retentions for the Liability Coverage Parts

### 6.1 Aggregate Limit of Liability

Except as hereinafter stated, the **Aggregate Limit of Liability** stated in Item 3 of the Declarations shall be the **Insurer's** maximum liability, in the aggregate, payable under this Policy for all amounts and all **Loss** of all **Insureds**, combined during one **Policy Period**; provided however that the **Aggregate Limit of Liability** shall not apply to Subsection 6.5 (Additional Limits of Liability) and Subsection 6.6 (Supplemental Limits of Liability). The **Aggregate Limit of Liability** shall apply only in excess of the applicable **Retention**. The **Limit of Liability** for any **Discovery Period** shall be part of, and not in addition to, the **Aggregate Limit of Liability** for the **Policy Period**.

If a Separate Limit of Liability is indicated in Item 4 of the Declarations, then each such Separate Limit of Liability shall be the maximum limit of the **Insurer's** liability for all amounts and all **Loss** of all **Insureds** during the **Policy Period** or the **Discovery Period**, if applicable, with respect to the applicable **Coverage Part** as stated in Item 4 of the Declarations. The Separate Limit of Liability for the **Discovery Period** shall be part of and not in addition to, this Separate Limit of Liability for the **Policy Period**. Each Separate Limit of Liability shall be part of and not in addition to the **Aggregate Limit of Liability** for all **Loss** under this Policy and shall in no way serve to increase the **Insurer's Aggregate Limit of Liability** as therein stated.

If Shared Limits of Liability are stated in Item 4 of the Declarations, then each such Shared Limit of Liability shall be the maximum limit of the **Insurer's** liability for all amounts and all **Loss** of all **Insureds** during the **Policy Period** or the **Discovery Period** if applicable with respect to the applicable **Coverage Part** as stated in the Declarations. The Limit of Liability respecting each **Coverage Part** which is indicated as Shared Limit of Liability in Item 4 of the Declarations shall be part of and not in addition to the Shared Limit of Liability of every other **Coverage Part** which is indicated as Shared Limit of Liability in Item 4 of the Declarations. Furthermore, the Shared Limit of Liability for the **Discovery Period** shall be part of and not in addition to, this Shared Limit of Liability for the **Policy Period**. Each Shared Limit of Liability shall be part of and not in addition to the **Aggregate Limit of Liability** for all **Loss** under this Policy and shall in no way serve to increase the **Insurer's Aggregate Limit of Liability** as stated therein. Any **Coverage Part** for which a limit of liability is shown in applicable **Coverage Part** Schedule in Item 7 of the Declarations which is neither indicated as "Shared" or "Separate" in Item 4 of the Declarations shall be deemed to be indicated as "Shared" in Item 4 of the Declarations.

### 6.2 Sub-Limits of Liability

Each Sub-Limit of Liability stated in applicable **Coverage Part** Schedules in Item 7 of the Declarations shall be part of and not in addition to, applicable **Limit of Liability** for such **Coverage Part** and subject to the **Aggregate Limit of Liability** of this Policy as stated in Item 3 of the Declarations. The Sub-Limit of Liability separately specified in the applicable **Coverage Part** Schedules in Item 7 of the Declarations shall be the **Insurer's** maximum liability with respect to each Sub-Limit of Liability under this Policy.

### 6.3 Defense Costs and Expenses

**Defense Costs** and **Expenses** are not payable by the **Insurer** in addition to the **Aggregate Limit of Liability**. Such **Defense Costs** and **Expenses** are part of **Loss** and as such are subject to the **Aggregate Limit of Liability** for **Loss**.

© 2016 Allianz Global Corporate & Specialty SE.
All rights reserved.



**6.4** <u>Related Claims and Related Events</u>

Further, a **Claim** or **Event** which is made subsequent to the **Policy Period** or any **Discovery Period**, if applicable, which, pursuant to Subsection 4.3 (<u>Related Claims and Related Events</u>) in General Terms and Conditions, is considered made during the **Policy Period** or any **Discovery Period** (if applicable), shall also be part of the same one **Aggregate Limit of Liability**, as stated in the Declarations.

**6.5** <u>Additional Limits of Liability</u>

<u>Excess Limit of Liability for Non-Executive Directors</u>

The per **Non-Executive Director Limit of Liability** as stated in Item 7.c. of the Directors Officers and Company Liability **Coverage Part** Schedule in the Declarations for each **Non-Executive Director** shall apply for all **Loss** of any one **Non-Executive Director**, subject to an aggregate **Non-Executive Director Excess Limit of Liability** amount stated as in 7.c. of the Directors Officers and Company Liability **Coverage Part** Schedule in the Declarations for all **Loss** of all **Non-Executive Directors**.

**6.6** <u>Supplemental Limits of Liability</u>

(A) <u>Crisis Communication Expenses</u>

The supplemental limit for **Crisis Communication Expenses** as stated in Item 5.a. of the Declarations shall be the **Insurer's** maximum liability for all **Personal Crisis Events** for all **Insured Persons**, combined.

The supplemental limit for **Crisis Communication Expenses** as stated in Item 5.b. of the Declarations shall be the **Insurer's** maximum liability for all **Crisis Communication Expenses** of the **Company** for all **Company Crisis Events**, combined.

(B) <u>Kidnap Response Costs</u>

If the Directors, Officers, and Company Liability **Coverage Part** is purchased, the supplemental limit for **Kidnap Response Costs** as stated in Item 5.c. of the Declarations shall be the **Insurer's** maximum liability for all **Kidnap Response Costs** for all **Insured Persons**, combined.

**6.7** <u>Application of Retention to All Coverage Parts</u>

(A) The **Insurer** will only pay that amount of **Loss** in respect of each **Claim** or **Event** that is in excess of the applicable **Retention** amounts stated for the applicable **Liability Coverage Part** as shown in Item 7 of the Declarations. The **Retentions** shall apply to all **Loss** of: (1) **Insured Persons** other than **Non-Indemnifiable Loss**; and (2) the **Company** for all **Loss**.

With respect to the Employment Practices Liability **Coverage Part**, if purchased and subject to the above, the **Retention** stated amounts stated for the Employment Practices Liability **Coverage Part** Schedule as shown in Item 7 of the Declarations shall apply to any **Claim** and for each **Claim** for which class or collective action certification is sought pursuant to applicable law. The **Retention** stated in Item 7 the Employment Practices Liability **Coverage Part** Schedule of the Declarations shall apply to any other **Claim** or **Event**.

The **Retention** set forth in Item 7 the Fiduciary Liability **Coverage Part** Schedule of the Declarations shall apply to **Loss** resulting from a **Claim** in which a plaintiff alleges loss or seeks damages based upon a change in or challenge to the price or valuation of **Employer Securities**. The **Securities Retention** set forth in Item 7 the Fiduciary Liability **Coverage Part** Schedule of the Declarations shall not apply to **Loss** resulting from a **Claim** in which plaintiffs allege a loss or seek damages as a result of a **Plan's** allegedly excessive fees or excessive cash holdings within an investment fund designed to hold **Employer Securities** as long as there is no allegation based on a drop in the price or decrease in the valuation of such **Employer Securities**.

© 2016 Allianz Global Corporate & Specialty SE.
All rights reserved.



**Retentions** shall not apply to:

(1) the first $25,000 of **Defense Costs** for **E-Discovery Consultant Services** under Subsection 1.1(E) (<u>E-Discovery Consultant Services</u>) in General Terms and Conditions;

(2) **Crisis Communication Expenses** under Subsection 1.1(C) (<u>Personal Crisis Event Supplemental Limit Coverage</u>) and Subsection 1.1(D) (<u>Company Crisis Event Supplemental Limit Coverage</u>) in General Terms and Conditions;

(3) **Kidnap Response Costs**, if the Directors, Officers, and Company Liability **Coverage Part** is purchased; or

(4) **Voluntary Compliance Program Loss**, **Section 502(c) Penalties**, **Pension Protection Act Penalties**, **HIPAA Penalties**, **Health Care Reform Penalties**, and **Section 4975 Penalties**, if Fiduciary Liability **Coverage Part** is purchased.

(B) The **Retention** is not part of the **Insurer's Aggregate Limit of Liability**. The **Retention** is to be paid by the **Company** and shall remain uninsured, other than if insured by a **Subsidiary** that is a captive insurance company. If more than one **Retention** is applicable to a single **Claim**, then the applicable **Retentions** will be applied separately to each part of such **Claim**, but the maximum total **Retention** applicable to such **Claim** shall not exceed the largest applicable **Retention**. However, with respect to the recognition of erosion of the applicable **Retention** as to an **Insured Person**, the **Insurer** shall recognize any actual monetary payment of any covered **Loss** by: (i) an Excess Difference in Conditions Directors and Officers insurance policy (ii) any policy issued in a foreign jurisdiction under an **International Policy**; or (iii) any policy issued in a foreign jurisdiction by another insurer; or (iv) payment of the retention by the **Insured**.

## 6.8 <u>Single Claim Covered by Multiple Coverage Parts</u>

If a single **Claim** (including a **Related Claim**) is covered in whole or in part under more than one **Coverage Part** and:

(A) the **Coverage Parts** are subject to a Shared Limit of Liability, the applicable **Retention** under each such **Coverage Part** shall be applied with respect to coverage for such **Claim** under such **Coverage Part**; provided the sum of all applicable **Retentions** under all such **Coverage Parts** shall not exceed the largest of such applicable **Retentions**; or

(B) at least one of the purchased **Coverage Parts** is subject to a Separate Limit of Liability, the **Retention** applicable to **Loss** in connection with such **Claim** or group of **Related Claims** under any such **Coverage Parts**, the applicable **Retention** shall apply separately to such **Loss**, and the applicable **Retention** for such **Coverage Part** shall not be satisfied by payments of **Loss** made towards the **Retention** required under any other **Coverage Part**.

The remaining applicable **Limits of Liability** under each such **Coverage Part** shall apply with respect to coverage for such **Claim** under such **Coverage Part**, provided the **Insurer's** maximum aggregate liability for all **Loss** covered under all such **Coverage Parts**, combined, on account of such **Claim** shall not exceed the largest of such remaining applicable **Limits of Liability** for such **Coverage Parts**. This Paragraph does not increase the **Insurer's Aggregate Limit of Liability** with respect to such **Claim**, which is also subject to the **Aggregate Limit of Liability** as set forth in Item 3 of the Declarations and any applicable Shared Limit of Liability as indicated in Item 9 of the Declarations.

## 7. Other Insurance for the Liability Coverage Parts

## <u>Other Insurance</u>

This insurance shall be specifically excess over, and not contribute with, any other valid and collectible insurance, except such insurance that is specifically written as excess over this Policy.

© 2016 Allianz Global Corporate & Specialty SE.
All rights reserved.


**8. Severability and Non-Rescindable/Avoidance to All Coverage Parts**

**8.1 Severability**

In granting coverage to the **Insureds** under this Policy, the **Insurer** has relied upon the **Application** for this Policy and any statements, warranties and representations made in connection therewith. The **Application**, and such statements, warranties and representations and any financial information of the **Company**, are the basis of the coverage under this Policy and shall be considered as incorporated in and constituting part of this Policy. The **Application** for coverage shall be construed as a separate **Application** for coverage by each **Insured Person**.

For the purposes of determining the availability of coverage under this Policy, including the application of any exclusion, no fact pertaining to, knowledge possessed by, or conduct of one **Insured Person** shall be imputed to any other **Insured Person**.

With respect to the **Company** and **Plans**, the statements made by, information or knowledge possessed by and any conduct of any past, present or future Chief Executive Officer, Chief Financial Officer, General Counsel or Head of Human Resources (or equivalent executive or management position) of the **Company** shall be imputed to such **Company**, and the knowledge of the same officers of the **Policyholder** shall be imputed to all **Companies**.

In the event that any of the particulars or statements in the **Application** is untrue, this Policy will be void *ab initio* with respect to any **Insured** who knew of such untruth.

**8.2 Non-Rescindable/Avoidance**

The **Insurer** shall not void or rescind, in whole or in part, the coverage provided for **Non-Indemnifiable Loss** under any **Coverage Part**.

**9 General Conditions**

The following General Conditions apply to all **Coverage Parts** unless specifically set forth below:

**9.1 Priority of Payments**

With respect to the **Liability Coverage Parts**, the **Insurer** shall make payments of **Loss** as they fall due in the order in which they are presented to the **Insurer**. If the **Insurer**, in its absolute and sole discretion, determines that it is likely an **Aggregate Limit of Liability** will not be sufficient to cover all such **Loss**, then the **Insurer** shall pay **Loss** in the following order: (A) first, pay **Non-Indemnifiable Loss**, then only after this payment; (B) with respect to whatever remaining amount of the applicable **Aggregate Limit of Liability** is available, pay such other **Loss** for which coverage is provided under the remaining coverage provided under this Policy.

**9.2 Mid-term Enhancements**

If during the **Policy Period** the **Insurer** develops a standard endorsement providing enhancements of coverage to its base **Management Liability Insurance Policy** in the **United States of America** and such endorsement is filed and approved by the insurance department for the state in which this Policy is issued and such approved filing states that such endorsement is to be automatically provided to all the **Insurer's** customers in such state for no additional premium, then the **Policyholder** shall have the right to the benefit of such new coverage enhancement endorsement, subject to all satisfactory underwriting information or particulars as the **Insurer** may require, from the date the satisfactory underwriting information is approved by the **Insurer**.

**9.3 Conformance with State Statutes**

In the event of any inconsistency between: (1) any period of limitation in this Policy relating to the giving of notice of **Claims**, cancellation or **Discovery Period**; and (2) the minimum period required by applicable law, where such law allows, the **Insurer** will resolve the inconsistency by applying the notice period that is more favorable to the **Insureds**.



**9.4** **Cancellation or Non-Renewal**

(A) **Cancellation**

This Policy may not be cancelled by the **Insurer**, except for non-payment of **Premium**. In such event, the **Insurer** shall mail by first class, certified mail or electronic mail notice of cancellation for non-payment of **Premium** to the **Company**, at the last address known to the **Insurer**, and to the **Company's** authorized representative. Such notice will state the effective date of cancellation, which will not be less than fifteen (15) days after mailing such notice. Proof of mailing will be sufficient proof of notice.

This Policy may be cancelled by the **Policyholder** on behalf of all **Insureds** at any time during the **Policy Period** stating the date thereafter that the cancellation shall be effective. If this Policy is cancelled by the **Policyholder**, the **Insurer** shall retain the short rate portion of the earned **Premium** for the Policy. With respect to the Crime **Coverage Part**, in the event of a cancellation by the **Policyholder**: (i) on behalf of any **Insured** or (ii) with respect to any Insuring Agreements, the **Insurer** shall calculate in its sole discretion the amount, if any, of the return premium. The cancellation will be nevertheless effective even if the **Insurer** has not made or offered a refund.

This Policy may not be cancelled by the **Policyholder**: (1) during the **Discovery Period**, once elected; (2) after the **Policyholder** suffers **Financial Insolvency**; or (3) after the **Policyholder** undergoes a **Change of Control**.

(B) **Nonrenewal**

If the **Insurer** elects not to renew this policy, the **Insurer** shall mail to the **Policyholder** written notice thereof at least sixty (60) days prior to the effective date of such non-renewal.

Any increase in **Premium** or a change in terms, conditions and limitations of this Policy shall not be considered a non-renewal under this Policy, including but not limited to a termination of some but not all **Coverage Parts**.

**9.5** **Change of Control**

With respect to the **Liability Coverage Parts**, the **Insurer** shall not be liable for any **Loss** arising out of, based upon, attributable to or a consequence of a **Wrongful Act** committed or **Event** received, commencing or occurring after the effective date of a **Change of Control**. The full annual **Premium** shall be deemed fully earned immediately upon the occurrence of a **Change of Control** and this Policy may not be cancelled thereafter.

**9.6** **Governing Law and Jurisdiction**

This Policy shall be governed by the laws of the state of the principal address of the **Policyholder** as stated in Item 1 of the Declarations, except as provided by definition of **Loss** in the applicable **Coverage Part**. Other than as set out in Subsection 9.15 (Alternative Dispute Resolution Proceeding), this Policy shall be subject to the exclusive jurisdiction of the Courts in the state of the **Policyholder's** Principal Address as stated in Item 1 of the Declarations.

**9.7** **Currency**

All monetary amounts under this Policy are expressed and payable in **U.S.** dollars. If a judgment is rendered, a settlement is denominated or **Loss** or **Expense** under this Policy is stated in a currency other than the **U.S.** dollars, payment under this Policy shall be made in **U.S.** dollars at the rate of exchange published in the Wall Street Journal on the date the judgment becomes final, the amount of the settlement is agreed upon, or any **Loss** or **Expense** is due, respectively.

**9.8** **Financial Insolvency**

**Financial Insolvency** of the **Company** or any **Insured** or the estate of any **Insured** shall not relieve the **Insurer** of its obligations nor deprive the **Insured Persons** of any rights under this Policy.

© 2016 Allianz Global Corporate & Specialty SE.
All rights reserved.



In the event of **Financial Insolvency** of the **Company**, then with respect to any covered **Claim** or **Event** hereunder, the **Insureds** agree to cooperate and not to oppose or object to any efforts by the **Insurer** or the **Insureds** to obtain relief from any stay or injunction applicable to the distribution of proceeds under this Policy to any **Insured Person**.

**9.9**    **Subrogation**

With respect to the **Liability Coverage Parts**, in the event of a payment under this Policy, the **Insurer** shall be subrogated to all applicable rights of recovery of any **Insured** in respect of such payment, including rights of an **Insured Person** against a **Company** for corporate or other indemnification. In addition, the **Insured** shall execute all and any documentation and undertake any action necessary to enable the **Insurer** to bring a recovery action or suit, at the **Insurer's** option, in the name of the **Insured**, **Company**, **Plan** or **Insurer**, as applicable. Any recovery received shall first be applied against any payment made by the **Insurer** with any balance remaining thereafter being remitted to or retained by the **Policyholder**.

Except as respects the Crime **Coverage Part**, the **Insurer** shall not exercise any right of subrogation against an **Insured Person** for **Loss** of an **Insured Person** unless it is established that such **Insured Person** has committed a deliberate fraudulent act, deliberate criminal act, willful act or obtained any profit or advantage to which such **Insured Person** was not legally entitled, pursuant to the requirements of Subsection 3.1 (Conduct).

In the event the **Insurer** recovers any amounts the **Insurer** paid under this Policy, the **Insurer** will reinstate the **Limits of Liability** of this Policy to the extent of such recovery, less the costs incurred in administering and obtaining such recovery. The **Insurer** assumes no duty to seek a recovery of any amounts paid under this Policy. The **Insurer**, in its sole and absolute discretion, shall determine the amounts to be credited, if any, toward a reinstatement of the **Limits of Liability**.

**9.10**    **Sanctions clause**

Whenever coverage provided by this Policy would be in violation of any **U.S.** economic or trade sanctions such as, but not limited to, those sanctions administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC"), such coverage shall be null and void.

**9.11**    **Action against the Insurer**

With respect to the **Liability Coverage Parts**, no action may be taken against the **Insurer** unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this Policy. No person or entity shall have any right under this Policy to join the **Insurer** as a party to any action against any **Insured** to determine such **Insured's** liability nor shall the **Insurer** be impleaded by such **Insured** or legal representatives of such **Insured**.

**9.12**    **Authorization Clause**

By acceptance of this Policy, the **Policyholder** agrees to act on behalf of the **Insureds** with respect to giving and receiving notices of **Claim**, **Event** or circumstances, paying **Premiums** and receiving any return **Premiums** that may become due under this Policy, negotiating settlements, agreeing to endorsements, cancellation of this Policy, giving or receiving notices provided for in this Policy and exercising of the **Discovery Period**, and the **Insureds** agree that the **Policyholder** shall act on their behalf.

**9.13**    **Assignment**

Neither this Policy nor any rights hereunder may be assigned without the prior written consent of the **Insurer**.

**9.14**    **Alternative Dispute Resolution Proceeding**

With respect to the **Liability Coverage Parts**, the **Insureds** and the **Insurer** shall submit any dispute arising out of or relating to this Policy to a binding arbitration proceeding as described in this Subsection (hereinafter "ADR Proceeding"). The seat of the ADR Proceeding shall be in the state of the principle address of the **Policyholder** as stated in Item 1 of the Declarations. Either the **Insureds** or the **Insurer** may initiate the ADR Proceeding process by sending written notice to the other party.


Unless otherwise agreed by the parties, any such binding arbitration shall be governed by AAA Commercial Arbitration Rules. Provided, however, that in all events in any such arbitration, the **Insureds** collectively and the **Insurer** shall each select an independent arbitrator, and those two arbitrators shall select a third independent arbitrator. A decision by a majority of the three arbitrators shall be final and binding upon all **Insureds** and the **Insurer**. The parties to the ADR Proceeding process shall share equally the fees and expenses of the third-appointed arbitrator as well as other common expenses of the ADR Proceeding process, although each party shall pay the fees and expenses of such party's appointed arbitrator.

**9.15 Worldwide Coverage**

Coverage under this Policy shall apply to **Loss** incurred, resulting from **Claims** made and **Wrongful Acts** occurring anywhere in the world, where such coverage is legally permissible.

**9.16 Entire Agreement and Changes to Policy**

This Policy constitutes the entire agreement between the **Insurer** and the **Insureds** concerning the subject matter of this Policy and supersedes any previous agreement, oral or written, between the parties concerning the subject matter of this Policy. Nothing in this Subsection 9.16 shall exclude or limit any liability or any right which any party may have in respect of any statements made fraudulently or dishonestly prior to the date of this Policy.

No term of this Policy may be amended or waived without a prior written endorsement or other instrument duly signed by the **Insurer**.

**9.17 Plurals, Headings and Titles**

The descriptions in the headings and titles of this Policy are solely for reference and convenience and do not lend any meaning to this contract. Words and expressions in the singular shall include the plural and vice versa. In this Policy, words in **bold** typeface have special meaning and are defined. Words that are not specifically defined in this Policy have the meaning normally attributed to them.


IN WITNESS WHEREOF, the **Insurer** has caused this Policy to be signed by its President and Secretary.


_Secretary_                    _President_



**DIRECTORS, OFFICERS AND COMPANY LIABILITY COVERAGE PART**
**CLAIMS MADE COVERAGE**

### Contents

**Section 1.**     **Insuring Agreements**                                                Page 1

    **1.1**     Directors and Officers Coverage                                  Page 1
    **1.2**     Company Reimbursement Coverage                           Page 1
    **1.3**     Company Coverage                                                 Page 1

**Section 2.**     **Coverage Extensions**                                                Page 1

    **2.1**     Insured Person Additional Protection Coverage          Page 1
    **2.2**     Environmental Mismanagement Event                     Page 1
    **2.3**     Cyber Event                                                         Page 1
    **2.4**     Kidnap Event                                                       Page 1
    **2.5**     Employed Lawyer Extension                                  Page 2
    **2.6**     Derivative Demand Extension                              Page 2
    **2.7**     Initial Public Offering Coverage Quote                    Page 2

**Section 3.**     **Definitions**                                                           Page 2

**Section 4.**     **Exclusions**                                                             Page 7

    **4.1**     Bodily Injury and Property Damage                        Page 7
    **4.2**     Employment Related and Third Party Discrimination    Page 7
    **4.3**     Entity v. Insured                                                   Page 7
    **4.4**     Public Transaction                                                Page 7
    **4.5**     Securities                                                           Page 8
    **4.6**     Exclusions Applicable to Subsection 1.3 (Company Coverage) Only    Page 8

© 2016 Allianz Global Corporate & Specialty SE.
All rights reserved.



**DIRECTORS, OFFICERS AND COMPANY LIABILITY COVERAGE PART**
**CLAIMS MADE COVERAGE**

## 1. Insuring Agreements

The coverage under this **Coverage Part** is afforded solely with respect to **Claims** or **Events** reported to the **Insurer** as required by Section 4. <u>Notification of Claims, Events and Circumstances</u> in the General Terms and Conditions of this Policy.

### 1.1 Directors and Officers Coverage

The **Insurer** shall pay, on behalf of each **Insured Person**, **Non-Indemnifiable Loss** on account of any (1) **Claims** alleging a **Wrongful Act** first made against an **Insured Person**; or (2) **Events** received, commenced or occurring; during the **Policy Period** or, if exercised, the **Discovery Period**.

### 1.2 Company Reimbursement Coverage

The **Insurer** shall pay, on behalf of an **Company**, **Loss** for which such **Company** grants indemnification to an **Insured Person**, on account of any (1) **Claims** alleging a **Wrongful Act** first made against an **Insured Person**; or (2) **Events** received, commenced or occurring; during the **Policy Period** or, if exercised, the **Discovery Period**.

### 1.3 Company Coverage

The **Insurer** shall pay, on behalf of a **Company**, **Loss** on account of any (1) **Claims** alleging a **Wrongful Act** first made against an **Insured**; or (2) **Events** received, commenced or occurring; during the **Policy Period** or, if exercised, the **Discovery Period**.

## 2. Coverage Extensions

### 2.1 Insured Person Additional Protection Coverage

The **Insurer** shall pay:

(A) **Pre-Claim Inquiry Costs**;

(B) **Asset and Liberty Protection Costs**, subject to the **Asset and Liberty Protection Costs** Sub-Limit of Liability as set forth in Item 7.b. of the Directors, Officers and Company Liability **Coverage Part** Schedule in the Declarations;

(C) **Extradition Proceedings Costs**;

(D) **UK Corporate Manslaughter Investigation Costs**.

### 2.2 Environmental Mismanagement Event

The **Insurer** shall pay **Loss** of an **Insured Person** (including an **Outside Entity Executive**) for a **Claim** or **Event** which arises from an **Environmental Mismanagement Event**.

### 2.3 Cyber Event

The **Insurer** shall pay **Defense Costs**, **Expenses**, and **Non-Indemnifiable Loss**, of an **Insured Person** arising from a **Claim** made against such **Insured Person** alleging a **Cyber Event**; provided that this coverage shall be specifically excess of any valid and collectible cyber liability, network security or privacy liability insurance policy applicable to the **Loss**.

### 2.4 Kidnap Event

The **Insurer** shall pay **Kidnap Response Costs** of the **Company** in the event that during the **Policy Period** an **Insured Person** has first become a victim of a **Kidnap Event**; provided however, this coverage shall be specifically excess of any valid and collectible dedicated primary kidnap and ransom insurance policy applicable to such **Loss**. This Subsection shall be subject to the supplemental **Limit of Liability** stated in Item 5.c. of the Declarations, but no **Retention** shall apply.

DPRDO1000 (01/16)
Directors Officers and Company Liability
Coverage Part

© 2016 Allianz Global Corporate & Specialty SE.
All rights reserved.



### 2.5 Employed Lawyer Extension

The **Insurer** shall pay **Loss** of an **Employed Lawyer** arising from a **Claim** made against such **Employed Lawyer** in connection with him or her providing legal services for the **Company**; provided that this coverage shall be specifically excess of any valid and collectible Employed Lawyers Insurance policy applicable to the **Loss**.

### 2.6 Derivative Demand Extension

The **Insurer** shall pay **Derivative Demand Costs** incurred with the **Insurer's** prior written consent which the **Policyholder** becomes legally obligated to pay on account of any **Derivative Demand** for **Wrongful Acts** by an **Executive** before or during the **Policy Period**. If such coverage is extended, **Derivative Demand Costs** shall be subject to the Sub-Limit of Liability as set forth in Item 7.b. of the Directors, Officers and Company Liability **Coverage Part** Schedule in the Declarations.

### 2.7 Initial Public Offering Coverage Quote

If during the **Policy Period**, the **Policyholder**:

(A)  at least thirty (30) days before the effective date of the offering or transaction, gives written notice to the **Insurer** that a **Company** intends to engage in a **Public Transaction**; and

(B)  provides the **Insurer** with all information requested relating to such **Public Transaction**;

the **Insurer** shall provide the **Company** a quotation for coverage with respect to such Public Transaction, including coverage for **Wrongful Acts** occurring during the course of any "road show" presentation to potential investors or other similar presentations; provided that any such coverage offered shall be subject to such other terms, conditions, and limitations of coverage and such additional premium as the **Insurer**, in its sole discretion, may require. No coverage is afforded pursuant to this Subsection 2.7 unless and until the **Policyholder** agrees in writing to such terms, conditions, limits of liability, retention and premium and the **Insurer** agrees to bind such coverage. This Subsection 2.7 shall not impact the **Insurer's** ability to cancel or non-renew this Policy as provided in Subsection 9.4 (Cancellation or Non-Renewal) in the General Terms and Conditions.

### 3. Definitions

In addition to the Definitions included in the General Terms and Conditions the following Definitions shall also apply to this **Coverage Part**:

### 3.1 Asset and Liberty Proceedings means any proceedings against an **Insured Person** first commenced during the **Policy Period** by the service on an **Insured Person** of notice of a hearing, charges, an order or similar document by any **Official Body** seeking:

(A)  to disqualify such **Insured Person** from holding office as a director or officer;

(B)  confiscation, assumption of ownership and control, suspension or freezing of rights of ownership of real property or personal assets of such **Insured Person**;

(C)  a lien or attachment over real property or personal assets of such **Insured Person**;

(D)  a temporary or permanent prohibition on such **Insured Person** from holding office of or performing the function of a director or officer;

(E)  a restriction of such **Insured Person's** liberty to a specific domestic residence or an official detention; or

(F)  deportation of such **Insured Person** following revocation of otherwise proper, current and valid immigration status for any reason other than such **Insured Person's** conviction of a crime.

### 3.2 Asset and Liberty Protection Costs means reasonable and necessary fees, costs, charges and expenses incurred with the prior written consent of the **Insurer**, such consent not to be unreasonably withheld or delayed, by an **Insured Person** to defend or oppose **Asset and Liberty Proceedings** against such **Insured Person**. **Asset and Liberty Costs** shall be subject to the respective Sub-Limit of Liability as set forth in Item 7.b. of the Directors, Officers and Company Liability **Coverage Part** Schedule in the Declarations, which shall be the maximum limit of **Insurer's** liability under this Policy for all such **Asset and Liberty Protection Costs** in the aggregate.

### 3.3 Claim means any:

DPRDO1000 (01/16)
Directors Officers and Company Liability
Coverage Part

Page 2 of 9

© 2016 Allianz Global Corporate & Specialty SE.
All rights reserved.



(A) a written demand for monetary or non-monetary relief alleging a **Wrongful Act**; or any request to toll or waive any statute of limitations; commenced by the receipt of such demand or request by an **Insured**; or

(B) a civil, criminal administrative, regulatory or arbitration proceeding for monetary or non-monetary relief alleging a **Wrongful Act** which is commenced by: (a) service of a complaint or similar pleading; (b) return of an indictment, information or similar document (in the case of a criminal proceeding); or (c) receipt of filing of a notice of charges upon an **Insured**; or

(C) civil, criminal, administrative or regulatory investigation or interview of an **Insured Person** alleging a **Wrongful Act**, by an **Official Body** which is commenced by: (1) a written statement from a regulator, government body, government agency, judicial agency or official trade body identifying such **Insured Person** as the subject of an investigation including any target letter or similar document; or (2) the arrest, detainment or incarceration for more than twenty-four (24) hours of an **Insured Person** by any law enforcement authority in an **International Jurisdiction**. An investigation or interview shall be deemed to be first made when the **Insured Person** is first so identified, served, arrested or detained.

**Claim** shall include a **Securities Claim**, a **Derivative Demand**, or an **Extradition Proceeding**.

**Claim** shall not include an **Event**.

**3.4 Company Crisis Event** means: (1) a **Claim** made against the **Company** covered under this Policy that the General Counsel (or equivalent position) of the **Policyholder** reasonably believes will exceed the applicable **Retention**; (2) the Chief Executive Officer, Chief Financial Officer or General Counsel (or equivalent positions) of the **Policyholder** becoming aware of a **Wrongful Act** by the **Company** that he/she reasonably believes is likely to lead to a **Claim** being made against an **Insured** and covered under this Policy resulting in **Loss** in excess of applicable **Retention**; or (3) a **Cyber Event**, provided that: (a) such **Claim**, **Wrongful Act** or **Cyber Event** was first made, first known or first occurred (respectively) during the **Policy Period**; and (b) written notice is given of such **Claim** or matter in accordance with Section 4. Notification of Claims, Events and Circumstances of this Policy.

**Company Crisis Event** does not include an industry-wide event that affects a number of entities in that industry. A **Company Crisis Event** shall be deemed to be first made against an **Insured** when such **Company Crisis Event** first occurs. A **Company Crisis Event** shall conclude the earlier of: (1) the **Crisis Communication Consultant** advises the **Policyholder** that such **Company Crisis Event** no longer exists; (2) when the additional supplemental **Limit of Liability** as set forth in Item 5.b. the Declarations.has been exhausted; or (3) twelve (12) months after the inception of the **Company Crisis Event**.

**3.5 Cyber Event** means a **Wrongful Act** of an **Insured Person** which results in a failure by the **Company** to prevent:

(A) any actual or alleged unauthorized disclosure by the **Company** or an **Insured Person** of any Personal Information belonging to a natural person employee or customer of the **Company** or any unauthorized access or use of such natural person's Personal Information stored in a computer system which is owned and operated by the **Company** which causes harm to such natural person; or

(B) any intrusion into the computer system owned and operated by the **Company**, or from such computer system to a third party´s computer system, that is designed to modify, alter, damage, destroy, delete, information without authorization, or to cause the suspension or delay of network operations of such computer system, including any denial of service attack;

that is first discovered during the **Policy Period**. "Personal Information" means information, the loss or theft of which, triggers notification requirements to such natural person pursuant to federal, state or foreign breach notification laws.

**3.6 Derivative Demand** means a written demand by one or more shareholders of the **Company** upon the board of directors (or equivalent management body) of such **Company** to commence a civil action on behalf of the **Company** against any **Executive** for any **Wrongful Act** on the part of such **Executive**.

**3.7 Derivative Demand Costs** means all reasonable and necessary fees, costs and expenses consented to in writing by the **Insurer** (except as provided by Subsection 1.1(B) (Emergency Defense Costs and Expenses) in the General Terms and Conditions, such consent not to be unreasonably withheld or delayed, incurred by or on behalf of the **Company** to investigate and respond to a **Derivative Demand** (including any fees, costs, charges and expenses incurred in seeking the dismissal of any **Derivative Demand**). **Derivative Demand Costs** shall not include

DPRDO1000 (01/16)
Directors Officers and Company Liability
Coverage Part

Page 3 of 9

© 2016 Allianz Global Corporate & Specialty SE.
All rights reserved.


remuneration, compensation, time, expenses or any other associated benefit or overhead of any **Insured Person** or the costs or overhead of any **Company**.

**3.8** **Employed Lawyer** means any **Employee** duly admitted and authorized to practice law who is or was employed at the time of the alleged **Wrongful Act** as a lawyer by the **Company**, but only while providing legal services for the **Company**.

**3.9** **Environmental Mismanagement Event** means any actual, alleged or threatened discharge, release, escape, seepage, migration or disposal of **Pollutants** or **Greenhouse Gases** into or on real or personal property, water or the atmosphere.

**3.10** **Event**, for the purposes of the Directors, Officers and Company Liability **Coverage Part**, shall also mean, any **Pre-Claim Inquiry**, **Asset and Liberty Proceedings**, **Environmental Mismanagement Event**, and **Kidnap Event**.

**3.11** **Expenses** shall also mean **Pre-Claim Inquiry Costs**, **Assets and Liberty Protection Costs**, , and **UK Corporate Manslaughter Act Investigation Costs**, , with respect to the Directors and Officers Liability **Coverage Part**.

**3.12** **Extradition Proceeding Costs** means reasonable and necessary fees, costs, charges and expenses incurred with the prior written consent of the **Insurer**, such consent not to be unreasonably withheld or delayed, by an **Insured Person** in lawfully opposing, challenging, resisting or defending an **Extradition Proceeding** against such **Insured Person**, including an appeal thereof.

**3.13** **Extradition Proceedings** means any formal process or proceeding first commenced against an **Insured Person** during the **Policy Period** by the service on such **Insured Person** by an **Official Body** of any official notice following a request for extradition, or the execution of an arrest warrant (including an appeal or separate proceedings to overturn an extradition order) in order to surrender such **Insured Person** from one country to another to answer criminal allegations.

**3.14** **Insured** means **Insured Persons** and the **Company**.

**3.15** **Insured Person** means, solely while acting within the scope and capacity set forth below, any natural person who was, is or during the **Policy Period** becomes:

    (A)   an **Executive**;

    (B)   a **Non-Executive Director**;

    (C)   any **Outside Entity Executive**; or

    (D)   an **Employee**;

    (E)   any **Employed Lawyer**, but solely for the coverage provided under Subsection 2.5 (Employed Lawyer Extension) of the Directors, Officers and Company Liability **Coverage Part**; or

    (F)   the Chief Information Officer, Information Technology Security Officer or Data Protection Officer, or equivalent positions, of any **Company**, but solely for the coverage provided under Subsection 2.3 (Cyber Event) of the Directors, Officers and Company Liability **Coverage Part**.

**3.16** **Kidnap Consultant** means any person or entity appointed by the **Company** with the prior written consent of the **Insurer**, such consent not to be unreasonably withheld or delayed, to advise and respond to a **Kidnap Event**.

**3.17** **Kidnap Event** means the seizing, detaining or carrying away by force or fraud, for the purpose of demanding ransom monies, of an **Insured Person**.

**3.18** **Kidnap Response Costs** means the reasonable and necessary fees, costs, charges and expenses of the **Kidnap Consultant** incurred by the **Company** in response to any **Kidnap Event** anywhere in the world except Afghanistan, Colombia, Iraq, Nigeria, the Philippines, Syria and the Ukraine. Such fees and expenses shall include related costs for travel, accommodation, qualified interpretation, communication and payments to informants. **Kidnap Response Costs** does not include any ransom or ransom monies.

© 2016 Allianz Global Corporate & Specialty SE.
All rights reserved.



**3.19 Loss** means:

(A) the amounts which the **Insured** is legally liable to pay, including settlements, damages, judgments, pre and post-judgment interest on a covered judgment or award;

(B) **Defense Costs**, **Derivative Demand Costs**, or **Extradition Proceedings Costs**;

(C) **Expenses**; or

(D) civil;

    (1) penalties assessed against any **Insured Person** pursuant to Section 2(g)(2)(b) of the Foreign Corrupt Practices Act, 15 U.S.C. § 78dd-2(g)(2)(b), Section 308 of the Sarbanes-Oxley Act of 2002 (15 U.S.C. 7246(a)) and the United Kingdom's Bribery Act 2010 (2010 chapter 23), if insurable by law; and

    (2) penalties, civil fines and taxes that an **Insured Person** is obligated to pay if such fines, penalties or taxes are insurable by law and are imposed in connection with such **Insured Person's** service with a **Company** that has entered **Financial Insolvency**.

With respect to judgments in which: (i) punitive, exemplary or multiplied damages are awarded; (ii) fines, penalties or taxes described in Subsection (D) of this Definition; or (iii) any amounts to which paragraph (e) of this Definition may apply, coverage provided by this Policy shall be determined under the internal laws of any applicable jurisdiction most favorable to the **Insured**, including without limitation the jurisdiction in which the **Company**, the **Insured Person**, the **Insurer**, this Policy or such **Claim** is located or has a substantial relationship.

**Loss**, other than **Defense Costs**, shall not include:

    (a) fines, penalties and taxes, other than those set described in Subsection (D) of this Definition;

    (b) the price or consideration paid or proposed to be paid for the acquisition or completion of the acquisition of all or substantially all the ownership interest in or assets of an entity is inadequate. **Loss** with respect to such **Claim** shall not include any amount of any judgment or settlement representing the amount by which such price or consideration is effectively increased; provided, however, that this paragraph shall not apply to any **Non-Indemnifiable Loss** in connection with such **Claim**;

    (c) social security benefits, employment termination severance payments, other than any such payments negotiated with and consented to by the **Insurer** as part of a settlement, commissions or employment related benefits of any kind, including any contributions to an employee benefit plan;

    (d) costs incurred by an **Insured** to comply with an order for non-monetary relief, including declaratory and injunctive relief, or with any agreement to provide such relief; or

    (e) any amount which is uninsurable under the law pursuant to which this Policy is construed; provided that the **Insurer** will not assert that the portion of any settlement or judgment in a **Claim** arising from an initial or subsequent public offering of the **Company's** securities constitutes uninsurable loss due to the alleged violations of Sections 11 or 12 of the Securities Act of 1933 as amended (including alleged violations of Sections 11 or 12 of the Securities Act of 1933 by a Controlling Person pursuant to Section 15 of the Securities Act of 1933).

**3.20 Personal Crisis Event** means (1) a **Claim** made against an **Executive** covered under this Policy that the General Counsel (or equivalent position) of the **Policyholder** reasonably believes will exceed the applicable **Retention**; (2) the Chief Executive Officer, Chief Financial Officer or General Counsel (or equivalent positions) of the **Policyholder** becoming aware of a **Wrongful Act** by the **Executive** that he/she reasonably believes is likely to lead to a **Claim** being made against an **Insured** and covered under this Policy resulting in **Loss** in excess of applicable **Retention**; provided that: (a) such **Claim** or **Wrongful Act** was first made, first known or first occurred (respectively) during the **Policy Period**; and (b) written notice is given of such **Claim** or **Wrongful Act** in accordance with Section 4. Notification of Claims, Events and Circumstances in the General Terms and Conditions of this Policy. Solely for the purposes of this definition, the term **Insured Person** shall include actions taken outside the scope and capacity as an **Executive** if the Chief Executive Officer, Chief Financial Officer or General Counsel (or equivalent positions) of the **Policyholder** becoming aware of such action reasonably believes it is likely to lead to a **Claim** being made against an **Insured** and covered under this Policy resulting in **Loss** in excess

DPRDO1000 (01/16)
Directors Officers and Company Liability
Coverage Part

Page 5 of 9

© 2016 Allianz Global Corporate & Specialty SE.
All rights reserved.



of applicable **Retention**, or is likely to lead to adverse publicity which would damage the **Company's** reputation and brand.

**Personal Crisis Event** does not include an industry-wide event that affects a number of entities in that industry, rather than the **Company** specifically. The **Personal Crisis Event** must first be received or commenced, or must first occur, during the **Policy Period**. A **Personal Crisis Event** shall be deemed to be first made, received, commenced or occurring when such **Event** first occurs. A **Personal Crisis Event** shall conclude the earlier of: (1) once the **Crisis Communication Consultant** advises the **Executive** and **Insurer** that such **Personal Crisis Event** no longer exists, (2) when the supplemental **Limit of Liability** stated in the Item 3(e) of the Declarations has been exhausted or (3) twelve (12) months after the inception of the **Personal Crisis Event**.

3.21 **Pre-Claim Inquiry** means with respect to an **Insured Person**: (1) a raid on, or on site visit to any **Company** or any **Outside Entity** by an **Official Body** that involves the production, review, copying or confiscation of documents or interviews of such **Insured Person**; (2) any formal written notification by an **Official Body** to a **Company**, an **Outside Entity** or an **Insured Person** of a suspected material breach of an **Insured Person's** legal or regulatory duty; or (3) the receipt by such **Insured Person** of a formal notice from an **Official Body** which legally compels such **Insured Person** to produce documents to, or answer questions by, or attend interviews with, that **Official Body**. A **Pre-Claim Inquiry** shall not include industry-wide or sector investigations, hearings, examinations or inquiries or any routine or regular regulatory audit, examination, inspection or review. **Securities** means any financial or investment instrument of and issued by a **Company** which denotes an ownership interest, denotes a right to share in the earnings in and of such **Company**, denotes a right in the distribution of a property or provides evidence of a debt.

3.22 **Pre-Claim Inquiry Costs** means reasonable and necessary fees, costs, charges and legal expenses incurred with the prior written consent of the **Insurer**, such consent not to be unreasonably withheld or delayed, incurred by the **Insured Person** solely in connection with their preparation for and response to a **Pre-Claim Inquiry**, including any attendance at an interview or meeting requested by such **Official Body**. **Pre-Claim Inquiry Costs**, however, shall not include: (a) any fees, costs, travel expenses or other compensation of an **Insured Person**; and (b) the administrative costs of producing, copying or searching for documents, records or electronic information.

3.23 **Public Transaction** means a public offer to sell any debt or equity securities or otherwise become a publicly held organization described in the Securities Exchange Act of 1934, as amended.

3.24 **Securities** means any financial or investment instrument of and issued by a **Company** which denotes an ownership interest, denotes a right to share in the earnings in and of such **Company**, denotes a right in the distribution of a property or provides evidence of a debt.

3.25 **Securities Claim** means any **Claim**:

(A) made against any **Insured** for any actual or alleged violation of any federal, state, local or foreign statute, regulation, or rule or common law regulating **Securities**, including but not limited to the purchase or sale of, or offer to purchase or sell, **Securities**, and which is:

(1) brought by any person or entity resulting from, the purchase or sale of, or offer to purchase or sell, **Securities** of the **Company**; or

(2) brought by a security holder of the **Company** with respect to such security holder's interest in **Securities** of the **Company**; or

(B) brought derivatively on behalf of the **Company** by a security holder of the **Company**.

**Securities Claim** shall also include any **Claim** arising out of an offering of **Securities** pursuant to, or permitted by, Title II, III or Title IV of the Jumpstart Our Business Startups Act ("JOBS Act").

3.26 **UK Corporate Manslaughter Act** means the United Kingdom Corporate Manslaughter and Corporate Homicide Act of 2007 or any similar statute in any jurisdiction.

3.27 **UK Corporate Manslaughter Act Investigation Costs** means **Defense Costs** incurred by an **Insured Person** that result solely from the investigation, adjustment, defense and/or appeal of a **Claim** against the **Company** for a violation of the **UK Corporate Manslaughter Act**.

3.28 **Wrongful Act** means any actual or alleged error, misstatement, misleading statement, act, omission, neglect,

DPRDO1000 (01/16)
Directors Officers and Company Liability
Coverage Part

Page 6 of 9

© 2016 Allianz Global Corporate & Specialty SE.
All rights reserved.


breach of duty, actually or allegedly committed or attempted by:

(A)  an **Insured Person**, while acting in his or her scope and capacity as such, or any matter claimed against an **Insured Person** solely by reason of their serving in such capacity or as an **Outside Entity Executive**; or

(B)  the **Company**.

## 4.  Exclusions

In addition to the Exclusions in the General Terms and Conditions the following Exclusions shall also apply to this **Coverage Part**:

Under this **Coverage Part**, the **Insurer** shall not be liable for that portion of **Loss** on account of any **Claim** or **Event**:

### 4.1  Bodily Injury and Property Damage

(A)  for bodily injury, sickness, disease, mental anguish or emotional distress, or death of any person howsoever caused; provided however that this exclusion shall not apply to:

    (1)  **Defense Costs** that are **Non-Indemnifiable Loss**; or

    (2)  **UK Corporate Manslaughter Investigation Costs**;

(B)  for damage to or loss of or destruction of any tangible property including loss of use thereof. Data and programs shall not be considered tangible property in the context of this exclusion.

### 4.2  Employment Related and Third Party Discrimination Claims

alleging, arising out of, based upon, attributable to or as a consequence of an employment-related and third party discrimination or harassment claim.

### 4.3  Entity v. Insured

which is brought by or on behalf of a **Company** against any other **Insured**, or by an **Outside Entity** against an **Outside Entity Executive**, provided that this exclusion shall not apply:

(A)  to **Defense Costs** which constitute **Non-Indemnifiable Loss** incurred by any **Insured Person** in defending any **Claim** against that **Insured Person**;

(B)  to the extent a **Claim** is brought derivatively by a security holder of: (1) the **Company**; or (2) any **Outside Entity**; against an **Insured Person** who, when such **Claim** is made and maintained, is acting independently of, and without the solicitation, assistance, participation or intervention of: (i) any **Insured Person**, (ii) the **Company**, or (iii) any **Outside Entity**;

(C)  to the extent a **Claim** is brought by the Bankruptcy Trustee or Examiner of the **Company**, or of the **Outside Entity** or any assignee of such Trustee or Examiner, or any Receiver, Conservator, Rehabilitator, or Liquidator or comparable authority of the **Company** or of the **Outside Entity**;

(D)  against an **Insured Person** when s/he has not been an **Insured Person** for at least twelve (12) months prior to the date the **Claim** was first made in an insured capacity;

(E)  to any cross claim or third party claim for contribution or indemnity arising from another **Claim** otherwise covered under this Policy; or

(F)  to any **Claim** brought outside the **United States of America**.

### 4.4  Public Transaction

alleging, arising out of, based upon, attributable to or as a consequence of a **Company**:

(A)  engaging in a **Public Transaction**; or

(B)  purchasing securities in an entity which has engaged in a **Public Transaction** which resulted, or would result, in such entity becoming a **Subsidiary** or a **Company** becoming publicly traded (directly or indirectly);

provided however, that this exclusion shall not apply if prior to such purchase or sale, or offer or solicitation of an offer to purchase or sell, securities (i) the **Insurer** agrees in writing to delete this exclusion with respect to such

© 2016 Allianz Global Corporate & Specialty SE.
All rights reserved.



purchase, sale, offer, or solicitation; and (ii) the **Company** agrees to pay an additional premium and agrees to any additional terms and conditions reasonably required by the **Insurer** for such deletion.

**4.5** <u>Securities</u>

alleging, arising out of, based upon, attributable to or as a consequence of is a **Securities Claim**; provided, however, this exclusion shall not apply to:

(A) any **Securities Claim** alleging or involving the purchase or sale of securities (i) exempted from registration under section 3(b) of the Securities Act of 1933; or (ii) offered pursuant to Title II, III or IV of the JOBS Act); provided however, that securities offered pursuant to Title IV of the JOBS Act (Small Company Capital Formation) shall be subject to the Sub-Limit of Liability as set forth in Item 7.b. of the Directors, Officers and Company Liability **Coverage Part** Schedule in the Declarations;

(B) any **Claim** by a security holder of a **Company** alleging or involving the failure of a **Company** to undertake or successfully complete a public offering of securities; or

(C) any **Securities Claim** alleging or involving a **Wrongful Act** which occurred during the **Insured's** preparations to commence any offering of securities not exempted from registration under section 3(b) of the Securities Act of 1933, including an initial public offering ("IPO") and which occurred at any time prior to the effective date and time of the IPO, including any such **Claim** alleging a **Wrongful Act** during the road show.

**4.6** <u>Exclusions Applicable to Subsection 1.3 (Company Coverage) Only</u>

with respect to Subsection 1.3 (<u>Company Coverage</u>) only, which is alleging, arising out of, based upon, attributable to, involving, directly or indirectly, or as a consequence of:

(A) any actual or alleged plagiarism, misappropriation, infringement or violation of any copyright, patent, trademark, trade secret, trade name, trade dress, service mark, title, slogan, domain, brand or any other intellectual property rights;

(B) any false arrest; wrongful detention or imprisonment; malicious prosecution; defamation, including libel and slander; invasion of privacy; or wrongful entry or eviction;

(C) any actual or alleged violation of any law, whether statutory, regulatory or common law, respecting any of the following activities: anti-trust, restraint of trade, unfair or business competition, unfair trade practices or tortious interference in another's business or contractual relationships;

(D) any actual or alleged contractual liability of the **Company** or any other **Insured** under any express contract or agreement; provided, however, that this exclusion shall not apply to liability which would have attached in the absence of such express contract or agreement;

(E) any actual or alleged malfunction or recall of any product or failure of any product to perform in any manner as a result of any actual or alleged defect, deficiency, inadequacy or dangerous condition in such product or in its design or manufacturer;

(F) directly or indirectly alleging, arising out of, based upon, attributable to or as a consequence of:

   (1) a **Cyber Event**;

   (2) any use or operation or any partial or total defect, destruction, modification, unavailability, interruption or slowdown of any computer, Computer System, computer software program or any other electronic system; or

   (3) any other use or operation, whether or not as a means for inflicting harm, of any malicious code, computer virus or process.

   For the purpose of this exclusion "Computer System" shall mean a computer and all input, output, processing, storage, applications, software, intranets and communication facilities including related communication or open systems networks and extranets which are connected directly or indirectly to such a device, including any information technology to steer or control technical processes, embedded systems, SCADA systems (Supervisory Control and Data Acquisition systems) or other industrial IT, the rendering of, or failure to render any services for others for a fee or other consideration.

© 2016 Allianz Global Corporate & Specialty SE.
All rights reserved.



(G)    the **Insured's** rendering of, or failure to render any services for others for a fee or other consideration; or any act(s), error(s) or omission(s) relating thereto.

Provided, however, that the foregoing Subsection 4.6 shall not apply to a **Securities Claim**.

© 2016 Allianz Global Corporate & Specialty SE.
All rights reserved.

Directors Officers and Company Liability
Coverage Part



## FIDUCIARY LIABILITY COVERAGE PART
## CLAIMS MADE COVERAGE

### Contents

| | | |
|---|---|---|
| **Section 1.** | **Insuring Agreements** | Page 1 |
| **1.1** | Fiduciary Liability Coverage | Page 1 |
| **1.2** | Voluntary Compliance Program Coverage | Page 1 |
| **Section 2.** | **Coverage Extensions** | |
| **2.1** | Outside Entity Executive | Page 1 |
| **2.2** | Settlor Capacity | Page 1 |
| **2.3** | Disproven Allegation Protection | Page 1 |
| **2.4** | Managed Care Coverage | Page 1 |
| **2.5** | LMRA Coverage | Page 1 |
| **2.6** | Fact Finding Investigation | Page 1 |
| **2.7** | Internal Appeal | Page 1 |
| **Section 3.** | **Definitions** | Page 2 |
| **Section 4.** | **Exclusions** | Page 8 |
| **4.3** | Bodily Injury and Property Damage | Page 8 |
| **4.4** | Discrimination | Page 8 |

© 2015 Allianz Global Corporate & Specialty SE.
All rights reserved.



**FIDUCIARY LIABILITY COVERAGE PART**
**CLAIMS MADE COVERAGE**

## 1. Insuring Agreements

The coverage under this **Coverage Part** is afforded solely with respect to **Claims** or **Events** reported to the **Insurer** as required by Section 4. (Notification of Claims, Events and Circumstances) in the General Terms and Conditions of this Policy.

### 1.1 Fiduciary Liability Coverage

The **Insurer** shall pay **Loss** of an **Insured** which such **Insured** becomes legally obligated to pay on account of any (1) **Claim** alleging a **Wrongful Act** first made against an **Insured**; or (2) **Events** received, commenced or occurring; during the **Policy Period** or, if exercised, the **Discovery Period**.

### 1.2 Voluntary Compliance Program Coverage

The **Insurer** shall pay **Voluntary Compliance Program Loss** of an **Insured** which such **Insured** becomes legally obligated to pay for a **Voluntary Compliance Program Loss** first incurred by an **Insured** during the **Policy Period** or, if exercised, the **Discovery Period**

## 2. Coverage Extensions

### 2.1 Outside Entity Executive

The **Insurer** shall pay **Loss** of an **Outside Entity Executive** (or of the **Company** to the extent the **Company** has indemnified such **Outside Entity Executive** for such **Loss**) that arises from a **Claim** made against such **Outside Entity Executive**.

### 2.2 Settlor Capacity

Solely in the event that coverage is triggered under Subsection 1.1 (Fiduciary Liability Coverage), the **Insurer** shall also pay **Loss** of an **Insured** arising from an allegation that such **Insured** committed an error or omission in a settlor capacity with respects to a **Plan**.

### 2.3 Disproven Allegation Protection

The **Insurer** shall not seek recovery of amounts previously paid in the event that an allegation which had the potential to trigger coverage is later disproven and results in a **Claim** outside the scope of coverage, including, but not limited to, the following disproven allegations:

(1) an **Executive** or employee of the **Company** who is alleged to be a **Plan** fiduciary was not, in fact, a **Plan** fiduciary;

(2) an alleged **Plan** was not a plan or was not a covered **Plan**; or

(3) a **Company** alleged to be the sponsor of a **Plan** was not, in fact, the sponsor of such plan.

### 2.4 Managed Care Coverage

The **Insurer** shall pay the **Loss** of an **Insured** arising from a **Claim** made against such **Insured** alleging improper or negligent selection of a **Managed Care Services** provider or denial or delay of any benefit under a health care, pharmaceutical, vision or dental **Plan** of an **Insured**.

### 2.5 LMRA Coverage

Solely in the event that coverage is triggered under Subsection 1.1 (Fiduciary Liability Coverage), the **Insurer** shall also pay the **Loss** of an **Insured** arising from an allegation that such **Insured** violated Section 301 of the Labor Management Relations Act ("LMRA") relating to alleged violations of collectively bargained contracts in connection with a **Plan**.

### 2.6 Fact Finding Investigation

The **Insurer** shall pay the **Loss** of an **Insured** arising from a **Fact Finding Investigation Event** of the **Insured** first made during the **Policy Period** and reported to the **Insurer** as required by this Policy.

© 2015 Allianz Global Corporate & Specialty SE.
All rights reserved.



**2.7** <u>Internal Appeal</u>

The **Insurer** shall pay the **Loss** of an **Insured** arising from an **Internal Appeal Event** first made during the **Policy Period** and reported to the **Insurer** as required by this Policy.

**3. Definitions**

In addition to the Definitions in the General Terms and Conditions the following Definitions shall also apply to this **Coverage Part**:

**3.1** **Administration** means one or more of the following administrative duties or activities, but only with respect to a **Plan**:

    (A)    giving advice or counsel to employees, participants, or beneficiaries;

    (B)    providing interpretations;

    (C)    handling records;

    (D)    determining and calculating benefits;

    (E)    preparing, distributing or filing required notices or documents; or

    (F)    the enrollment of, termination of or cancellation of:  employees, participants or beneficiaries under the **Plan**.

**3.2** **Benefits** mean any right of a **Plan** participant or beneficiary to a payment of money or property under a **Plan** or any other privilege, right, option or perquisite available under a **Plan** to its participants or beneficiaries.

**3.3** **Claim** means:

    (A)    a written demand for monetary or non-monetary relief (including any request to toll or waive any statute of limitations), commenced by the receipt of such demand by an **Insured**; or

    (B)    a civil, criminal administrative, regulatory or arbitration proceeding for monetary or non-monetary relief which is commenced by: (1) service of a complaint or similar pleading; (2) return of an indictment, information or similar document (in the case of a criminal proceeding); or (3) receipt of filing of a notice of charges upon an **Insured**;

alleging a **Wrongful Act**.

**Claim** shall not include an **Event**.

**3.4** **Company Crisis Event** means (1) a **Fiduciary Crisis Event** which the Chief Executive Officer, Chief Financial Officer, General Counsel, or Risk Manager (or equivalent positions) of the **Policyholder** reasonably believes may result in a **Claim** in excess of the applicable **Retention**; or (2) when the Chief Executive Officer, Chief Financial Officer, General Counsel, or Risk Manager (or equivalent positions) of the **Policyholder** becomes aware of a **Wrongful Act** by the **Company** that he/she reasonably believes is likely to lead to a **Claim** being made against an **Insured** in excess of the applicable **Retention**, and covered under this Policy.

**Company Crisis Event** does not include an industry-wide event that affects a number of entities in that industry. A **Company Crisis Event** shall be deemed to be first made against an **Insured** when such **Company Crisis Event** first occurs. A **Company Crisis Event** shall conclude the earlier of: (1) the **Crisis Communication Consultant** advises the **Policyholder** that such **Company Crisis Event** no longer exists; (2) when the additional supplemental **Limit of Liability** stated in Item 5.b. of the Declarations has been exhausted; or (3) twelve (12) months after the inception of the **Company Crisis Event**.

**3.5** **Covered Fiduciary Civil Penalties** means:

    (A)    the 5% or less civil penalty imposed upon an **Insured** under Section 502(i) of **ERISA**;

    (B)    the 20% or less civil penalty imposed upon an **Insured** under Section 502(l) of **ERISA**;

    (C)    the civil fines or penalties assessed against an **Insured** by either the (i) United Kingdom's Pensions Ombudsman or the Pension Regulator; (ii) Republic of Ireland's Pension Board or Pension Ombudsman; or any successor body thereto;

FIDM1000 (12/15)
Fiduciary Liability Coverage Part

© 2015 Allianz Global Corporate & Specialty SE.
All rights reserved.


(D)    the civil penalties under 502(c) of **ERISA**, other than penalties under the Pension Protection Act, subject to the aggregate sublimit of liability set forth in Item 7.b. of the Fiduciary Liability **Coverage Part** Schedule of the Declarations ("**Section 502(c) Penalties**");

(E)    the civil penalties under the Pension Protection Act of 2006, subject to the aggregate sublimit of liability set forth in Item 7.b. of the Fiduciary Liability **Coverage Part** Schedule of the Declarations ("**Pension Protection Act Penalties**");

(F)    the civil penalties for violations of the privacy provisions of the Health Insurance Portability and Accountability Act of 1996 ("**HIPAA**"), subject to the aggregate sublimit of liability set forth in Item 7.b. of the Fiduciary Liability **Coverage Part** Schedule of the Declarations ("**HIPAA Penalties**");

(G)    the civil penalties imposed under rules and regulations (including interim final rules and regulations) provided by government agencies (including the U.S. Department of Health and Human Services, the U.S. Department of the Treasury, the U.S. Internal Revenue Service ("IRS"), and the U.S. Department of Labor ("DOL"), the Office of Consumer Information and Insurance Oversight, and the Employee Benefits Security Administration), for inadvertent violations by an **Insured** of the Patient Protection and Affordable Care Act ("PPACA"); and the Health Care and Education Reconciliation Act of 2010 , subject to the aggregate sublimit of liability set forth in Item 7.b. of the Fiduciary Liability **Coverage Part** Schedule of the Declarations ("**Health Care Reform Penalties**"); and

(H)    the 15% or less tax penalty imposed upon an **Insured** under Section 4975 of the Internal Revenue Code of 1986, with respect to covered judgments, subject to the aggregate sublimit of liability set forth in Item 7.b. of the Fiduciary Liability **Coverage Part** Schedule of the Declarations ("**Section 4975 Penalties**").

**3.6**   **Employee Benefit Law** means:

(A)    **ERISA** and any similar common or statutory law anywhere in the world (including, but not limited to the United Kingdom's Pensions Act 2004, Pensions Act 1995, and Pension Schemes Act 1993; and the Pension Benefit Standards Act, 1985 of Canada), as amended, and any rules and regulations promulgated thereunder which apply to a **Plan**;

(B)    the privacy regulations under HIPAA; and

(C)    solely with respect to paragraph (B) the Definition of **Wrongful Act**, unemployment insurance, Social Security, government-mandated disability benefits or similar law.

In no event shall **Employee Benefit Law**, other than as set forth in paragraph (C) above, include any law other than **ERISA** which concerns workers' compensation, unemployment insurance, Social Security, government-mandated disability benefits or similar law.

**3.7**   **Employer Securities** means securities of or issued by (i) the **Policyholder**, (ii) the **Company**, (iii) any company acquired, in whole or in part, by the **Policyholder**, or (iv) any former parent of any company that is acquired, in whole or in part, by the **Policyholder**.

**3.8**   **ERISA** means the Employee Retirement Income Security Act of 1974, as amended, including but not limited to amendments pursuant to:

(A)    COBRA (the Consolidated Omnibus Budget Reconciliation Act of 1985);

(B)    HIPAA;

(C)    The Newborns' and Mothers' Health Protection Act of 1996;

(D)    The Mental Health Parity Act of 1996;

(E)    The Women's Health and Cancer Rights Act of 1998;

(F)    The Pension Protection Act of 2006,

(G)    The Patient Protection and Affordable Care Act ("PPACA"); and

(H)    The Health Care and Education Reconciliation Act of 2010;

and including any amendments thereto and regulations thereunder.

© 2015 Allianz Global Corporate & Specialty SE.
All rights reserved.



**3.9** **Event** for the purposes of the Fiduciary Liability **Coverage Part** shall also mean any **Fact Finding Investigation Event** or **Internal Appeal Event**, **Company Crisis Event** or **Personal Crisis Event**.

**3.10** **Fact Finding Investigation Event** means any investigation into a possible violation of **Employee Benefit Law** with respect to a **Plan** by the U.S. Department of Labor, the U.S. Pension Benefit Guaranty Corporation, or any similar governmental authority in the **U.S.** or **International Jurisdiction**.

**3.11** **Fiduciary Crisis Event** shall mean:

    (A) Public disclosure that an entity engaged to assist an **Insured** in the **Administration** of a **Plan**:

        (1) engaged in fraudulent conduct;

        (2) is in bankruptcy or has laid off a material number of its employees; or

        (3) is the target of any investigation, litigation or indictment by any government.

    (B) Investment losses sustained by a **Plan** of:

        (1) 25% or more of the value of a **Plan's** overall assets within a 30 day period; or

        (2) 75% or more of the value of a single investment held by a **Plan** where such loss may have a material effect on the total asset value of such **Plan**.

**Fiduciary Crisis Event** shall not include any disclosures, investment losses, or declines in the **Company's** stock price which are related to or arise from any **Claim** or notice of circumstances reported under any policy of which this Policy is a renewal, replacement or which this Policy succeeds in time.

**3.12** **Insured** for the purposes of the Fiduciary Liability **Coverage Part**., shall mean **Insured Persons**, any **Plan**, any **Plan Committee** and the **Company**.

**3.13** **Insured Person** means any natural person who was, is or during the **Policy Period** becomes:

    (A) an **Executive**;

    (B) a **Non-Executive Director**;

    (C) any **Outside Entity Executive**;

    (D) a prospective director or officer in any listing particulars, prospectus, circular or similar document issued by any **Company**;

    (E) an employee; or

    (F) with regard to any **Insured Person** defined in (A)-(C) of this Definition and only with respect to **Wrongful Acts** committed by such **Insured Persons**: (1) the lawful spouse or civil or domestic partner as defined in any applicable federal, state or foreign legislation of such **Insured Person** where recovery is sought solely because joint property is held or owned by or on behalf of the spouse or civil or domestic partner; and (2) the legal representatives, heirs, assigns or estates of such **Insured Persons** in the event of their death, incapacity, insolvency or bankruptcy;

solely while acting in his or her capacity as a fiduciary, trustee or settlor of a **Plan**, or in the **Administration** of a **Plan** (including a position equivalent to the foregoing in an **International Jurisdiction**).

**Insured Persons** shall also include any member of a **Plan Committee** (or equivalent in an **International Jurisdiction**) in his or her capacity as a fiduciary or trustee of a **Plan**, or in the **Administration** of a **Plan**.

**Insured Person** shall not include any individual in his or her capacity as an employee of any third party, other than an **Outside Entity Executive**, including but not limited to a service provider, unless scheduled by endorsement to this Policy.

**3.14** **Internal Appeal Event** means an appeal of an adverse benefits determination made by an **Insured** pursuant to the U.S. Department of Labor's claim procedure regulation, 29 C.F.R. 2560.503-1(h) or similar claim procedures under any applicable similar law in the **U.S.** or **International Jurisdiction**.

© 2015 Allianz Global Corporate & Specialty SE.
All rights reserved.


**3.15  Loss** means the amounts which the **Insured** is legally liable to pay as a result of a **Claim** or **Event**, including:

(A)  settlements, damages, judgments, pre and post-judgment interest on a covered judgment or award, and plaintiff's costs or fees;

(B)  **Defense Costs**;

(C)  **Expenses**;

(D)  punitive, exemplary and multiplied damages if insurable by law; and

(E)  **Covered Fiduciary Civil Penalties** and,

(F)  with respects to a **Voluntary Compliance Program**, **Voluntary Compliance Program Loss**.

**Loss** shall also include reasonable fees and expenses of (i) an independent fiduciary if such fiduciary is retained to review a proposed settlement of a covered **Claim** and (ii) any law firm hired by such independent fiduciary to facilitate such review.

With respect to judgments in which punitive, exemplary or multiplied damages are awarded or any amounts to which paragraph (D) of this Definition may apply, coverage provided by this Policy shall be determined under the internal laws of any applicable jurisdiction most favorable to the Insured, including without limitation the jurisdiction in which the, **Insured**, or the **Insurer** is domiciled; where, this Policy is issued; or such **Claim** is located or has a substantial relationship.

**Loss**, other than **Defense Costs**, shall not include:

(1)  **Benefits**, including that portion of any judgment or settlement representing **Benefits**, unless an **Insured Person** who is otherwise covered under this Policy, is personally liable for such **Benefits**. For the purposes of the foregoing, **Benefits** shall not exclude that portion of any settlement or fund for settling any **Claim** made against an **Insured** to the extent it alleges loss to a **Plan** and/or loss to the actual accounts of participants in a **Plan** by reason of a change in value of the investments held by that **Plan**, including but not limited to **Employer Securities**, regardless of whether the amounts sought in such **Claim** have been characterized as "benefits" or held by the court to be "benefits";

(2)  fines, penalties and taxes, except as provided under Subsections (D) or (E) above;

(3)  wages, tips, or commissions;

(4)  costs incurred by an **Insured** to comply with an order for non-monetary relief, including declaratory and injunctive relief, or with any agreement to provide such relief; or

(5)  any amount which is uninsurable under the law pursuant to which this Policy is construed.

**3.16  Managed Care Services** means the administration or management of a health care, pharmaceutical, vision or dental **Plan** utilizing cost control mechanisms, including but not limited to utilization review, case management, disease management, pharmacy management, the use of a preferred provider medical, vision or dental network, or a health maintenance organization.

**3.17  Management Control** means **Policyholder**, directly or indirectly: (1) owning interests representing more than fifty percent (50%) of the voting, appointment or designation power for the selection of a majority of (a) the board of directors of a corporation; (b) the members of the board of managers of a limited liability company, or (c) the general partners of a limited partnership; or (2) having the right pursuant to a written contract or the articles of incorporation, bylaws, operating agreement or equivalent organizational or governance documents of an entity, to control the operation of such entity.

**3.18  Multiemployer Plan** shall mean a multiemployer plan as defined in **ERISA**, which is operated jointly by the **Company**, a labor organization, and one or more other employers for the benefit of the employees of the **Company** and other unrelated organizations.

© 2015 Allianz Global Corporate & Specialty SE.
All rights reserved.



**3.19** **Personal Crisis Event** means (1) a **Fiduciary Crisis Event** which the Chief Executive Officer, Chief Financial Officer, General Counsel, or Risk Manager (or equivalent positions) of the **Policyholder** reasonably believes may result in a **Claim** in excess of the applicable **Retention** against an **Insured Person**; or (2) when the Chief Executive Officer, Chief Financial Officer, General Counsel, or Risk Manager (or equivalent positions) of the **Policyholder** becomes aware of a **Wrongful Act** by the **Company** that he/she reasonably believes is likely to lead to a **Claim** in excess of the applicable **Retention**, being made against an **Insured Person** covered under this Policy or is likely to lead to adverse publicity which would damage the **Company's** reputation and brand.

**Personal Crisis Event** does not include an industry-wide event that affects a number of entities in that industry, rather than the **Company** specifically. The **Personal Crisis Event** must first be received or commenced, or must first occur, during the **Policy Period**. A **Personal Crisis Event** shall be deemed to be first made, received, commenced or occurring when such **Event** first occurs. A **Personal Crisis Event** shall conclude the earlier of: (1) once the **Crisis Communication Consultant** advises the **Executive** and **Insurer** that such **Personal Crisis Event** no longer exists, (2) when the supplemental **Limit of Liability** stated in the Item 5.a. of the Declarations has been exhausted or (3) twelve (12) months after the inception of the **Personal Crisis Event**.

**3.20** **Plan** means any:

(A) Qualified or non-qualified plan, fund, trust or program, including, but not limited to any: (i) pension, welfare, health savings account, IRA-based, stock option, stock purchase, top hat, excess benefit, cafeteria, fringe benefit, plans; (ii), deferred compensation, supplemental executive retirement, or dependent care assistance program; or (iii) voluntary employees' beneficiary association as defined in the Internal Revenue Code of 1986, as amended ("VEBA") established anywhere in the world, which is sponsored solely by a **Company**, and with respect to a collectively bargained **Plan**, operated jointly by a **Company** and a labor organization, in each case solely for the benefit of such **Company's** current or former employees or **Executives**, and which was in existence on or before the inception of the **Policy Period**;

(B) government-mandated programs for unemployment insurance, Social Security, or disability payments for the **Company's** current or former employees or **Executives**;

(C) plan or program described in Subsection (A) or (B) above that:

(1) the **Company** ceased to sponsor during or prior to the **Policy Period**, or

(2) the **Company** first created or first sponsored during the **Policy Period** as set forth in Subsection 1.5 (C) (New Plan Coverage) of General Terms and Conditions.

In no event shall this Policy provide coverage for **Wrongful Acts** that did not take place while the **Company** so sponsored a **Plan**; or

(D) a **Multiemployer Plan**, but solely with respect to coverage afforded pursuant to Subsection (E) of the Definition of **Wrongful Act**; or

(E) other plan, fund, trust or program specifically identified as a **Plan** by written endorsement attached to and made part of this Policy.

**3.21** **Plan Committee** means employee benefit committee, including, but not limited to any plan investment or administration committee, that is established by a **Company** and that is comprised entirely of **Insured Persons** but only in its capacity as a fiduciary or trustee of a **Plan**, or in its **Administration** of a **Plan**.

**3.22** **Securities Retention** means the amounts specified in Item 7 of the Fiduciary Liability **Coverage Part** Schedule of the Declarations.

**3.23** **Voluntary Compliance Program Loss** means fines, penalties, sanctions, and reasonable fees, costs or expenses required by **Voluntary Compliance Program**. **Voluntary Compliance Program Loss** does not include any compensation of any **Insured Persons** or any employees of an **Insured**.

© 2015 Allianz Global Corporate & Specialty SE.
All rights reserved.



**3.24 Voluntary Compliance Program** means any voluntary compliance resolution program or similar voluntary settlement program administered by the DOL, IRS, PBGC or other similar **U.S.** governmental authority or any similar program administered by any governmental authority in an **International Jurisdiction**, to correct any inadvertent non-compliance by a **Plan**, including, but not limited to:

(A)   Employee Plans Compliance Resolution System;

(B)   Delinquent Filer Voluntary Compliance Program;

(C)   Voluntary Fiduciary Correction Program;

(D)   Premium Compliance Evaluation Program; and

(E)   Participant Notice Voluntary Correction Program.

**3.25 Voluntary Compliance Program Notice** means the prior written notice by the **Insured** to the **Insurer** that it is the **Insured's** intent to enter into a **Voluntary Compliance Program** with respect to any **Plan**,

**3.26 Wrongful Act** means any:

(A)   allegation made against an **Insured** solely by reason of his, her or its actual or alleged status as a fiduciary or a settlor of a **Plan**;

(B)   actual or alleged violation by an **Insured** of any of the responsibilities, obligations or duties imposed upon fiduciaries by any **Employee Benefit Law** with respect to a **Plan**;

(C)   actual or alleged act, error or omission by an **Insured** in the **Administration** of any **Plan**, including, but not limited to the actual or alleged failure to properly and timely provide COBRA notices or other required notices; to make timely determinations of eligibility for benefits; or any allegation made against an **Insured** solely by reason of his, her or its actual or alleged **Administration** of a **Plan**;

(D)   actual or alleged act, error or omission by an **Insured** in connection with insurance actually attempted to be purchased through any public, private or government-sponsored or controlled entity established to facilitate the purchase of health insurance in accordance with the Patient Protection and Affordable Care Act; or

(E)   solely as respects a **Multiemployer Plan** any negligent, act, error or omission by an **Insured Person** or the **Company**, in facilitating such **Multiemployer Plan's** administration by a third party, including but not limited to transmitting data concerning **Company** employees who are participants in such **Multiemployer Plan**.

(F)   actual or alleged act, error or omission by an **Insured** in performing or failing to perform any of the following non-statutory functions relating to a covered **Plan**:

(1) choosing a type of **Plan** or options in a **Plan**;

(2) amending a **Plan**;

(3) requiring employee contributions to a **Plan** or changing the amount of such required contributions and, in the case of a defined benefit plan, formulating the actuarial method used in determining the required contributions; or

(4) terminating a **Plan**.

© 2015 Allianz Global Corporate & Specialty SE.
All rights reserved.


## 4.    Exclusions

In addition to the Exclusions in the General Terms and Conditions the following Exclusions shall also apply to this **Coverage Part**:

Under this **Coverage Part**, the **Insurer** shall not be liable for that portion of **Loss** on account of any **Claim** or **Event**:

### 4.1    Bodily Injury and Property Damage

(A)    for bodily injury, sickness, disease or death of any person howsoever caused; provided however that this exclusion shall not apply to:

(1) a **Claim** for actual or alleged negligent or improper selection of a provider of **Managed Care Services** or improper delay or denial of **Benefits** by the provider of **Managed Care Services**; and

(2) **Defense Costs** in the defense of a **Claim** for violation of **ERISA** by an **Insured**; or

(B)    for damage to or loss of or destruction of any tangible property including loss of use thereof.  Data and programs shall not be considered tangible property in the context of this exclusion.

### 4.2    Discrimination

for discrimination in violation of any law; provided however, that this exclusion shall not apply to a **Claim** for discrimination in violation of **Employee Benefit Law**.

The **Wrongful Act** of an **Insured Person** shall not be imputed to any other **Insured Persons** for the purpose of determining the applicability of the foregoing exclusions in Section 4. (Exclusions).  Only those **Wrongful Acts** committed by any past, present or future Chief Executive Officer, Chief Financial Officer, General Counsel (or equivalent position) of the **Company** shall be imputed to the **Company** for the purposes of determining the coverage under this Policy for such **Company**.

© 2015 Allianz Global Corporate & Specialty SE.
All rights reserved.



# IMPORTANT DISCLOSURE
## NOTICE OF TERRORISM INSURANCE COVERAGE
_____

This notice applies to all type(s) of insurance provided under this policy that are subject to the Terrorism Risk Insurance Act ("The Act"), as amended. This policy makes available and provides at a premium of $0 insurance coverage for losses resulting from acts of terrorism. As defined in Section 102(1) of the Act: The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury—in consultation with the Secretary of Homeland Security, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 80% BEGINNING ON JANUARY 1, 2020, OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS $0 AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.



# Cyber Perils Disclosure Notice
_____

IMPORTANT NOTICE TO POLICYHOLDER

THIS DISCLOSURE NOTICE IS NOT THE POLICY. PLEASE READ THE POLICY CAREFULLY TO DETERMINE THE TERMS, LIMITS, CONDITIONS, ATTACHMENT POINTS, EXTENSIONS AND ENDORSEMENTS THEREIN. ONLY THE PROVISIONS OF THE POLICY DETERMINE THE SCOPE OF YOUR INSURANCE PROTECTION.

**<u>CYBER PERILS</u>**

You have purchased a claims made policy that responds to various perils, including cyber perils. Accordingly, this policy may cover losses for claims resulting from or alleging cyber perils, such as network security breaches, privacy breaches, or attacks on information and operational technology.

Cyber perils have potential impact beyond the scope of coverage in this policy. This policy is not a replacement for any dedicated cyber insurance policy, which may offer broader and specialized coverage and services for first and third party losses resulting from or alleging cyber perils, such as costs associated with the following: breach response, crisis management, business interruption, restoration, cyber extortion or data recovery.

For information regarding dedicated cyber coverages and services, such as those offered under specific coverage parts of the Allianz ACCEPT Protect Insurance Policy, please refer to your insurance agent.

© 2019 Allianz Global Corporate & Specialty SE.
All rights reserved.



# New York Amendatory Endorsement

| Policy Number | Effective Date |
|---|---|
| USF00981121 | August 18, 2021 |

**Policyholder: Entourage Commerce, LLC**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

**Private Company Protect**

It is agreed that:

I.  With respect to the General Terms and Conditions, the following provisions are amended:

A.  The following is added after the title on the 1ˢᵗ page:

**THIS IS A CLAIMS MADE POLICY WITH DEFENSE COSTS INCLUDED IN THE LIMIT OF LIABILITY. PLEASE READ THE ENTIRE POLICY CAREFULLY.**

B.  The Coverage Extensions Section, the first two paragraphs under the Discovery Period (Other than Crime) Subsection are deleted in their entirety and replaced with the following:

1.  Upon any **Termination of Coverage** for reasons other than nonpayment of premium or fraud within the first year of claims-made coverage with the **Insurer**, the **Policyholder** shall have the right to a **Discovery Period**. The **Insurer** will advise the **Policyholder** in writing of the Automatic **Discovery Period** and the availability of, the premium for, and the importance of purchasing, the Optional **Discovery Period**. This notice will be sent no earlier than the date of notification of **Termination of Coverage**, and no later than thirty (30) days after the effective date of the **Termination of Coverage**.

2.  The **Policyholder** shall have the right to a period of sixty (60) days following **Termination of Coverage** (hereinafter the Automatic **Discovery Period**), in which to give notice to the **Insurer** of **Claims** first made against any **Insured** during said sixty (60) day period, for any **Wrongful Act** committed on or after the retroactive date and prior to the effective date of **Termination of Coverage**, and otherwise covered by this Policy.

3.  The **Policyholder** shall have the option to purchase, upon payment of an additional premium equal to 100% of the total annual premium, an Optional Discovery Period (hereinafter the Optional **Discovery Period**). The Optional **Discovery Period** shall cover **Claims** first made against any **Insured** during the period of twelve (12) months for **Wrongful Acts** committed on or after the retroactive date and prior to the effective date of **Termination of Coverage**, and otherwise covered by this Policy.

4.  Where premium is due to the **Insurer** for coverage under this Policy, any monies received by the **Insurer** from the **Policyholder** as payment for the Optional **Discovery Period** shall first be applied to such premium owing for the Policy. All premiums paid with respect to the Optional **Discovery Period** shall be deemed fully earned as of the first day of the Optional **Discovery Period**.

5.  The additional premium for the Optional **Discovery Period** shall be based upon the rates in effect at the beginning of the **Policy Period**. The **Policyholder** may purchase for an additional premium an additional Optional **Discovery Period** of one, two, or three years following the termination of this Policy. The applicable required additional premium is set forth in Item 10.a.- c. of the Declarations.

© 2017 Allianz Global Risks US Insurance Company.
All rights reserved.



6. The **Policyholder** must notify the **Insurer** in writing of its intent to purchase an Optional **Discovery Period** and must pay the additional premium. The **Policyholder** shall have the greater of the following in which to submit such notice to the **Insurer**:

    a. sixty (60) days after the effective date of **Termination of Coverage**; or

    b. thirty (30) days after the date that the **Insurer** mails notice advising the **Policyholder** of the availability of the Optional **Discovery Period**.

If the **Policyholder** elects to purchase the Optional **Discovery Period**, the Optional **Discovery Period** coverage will not take effect until the premium owed for the Policy is paid in full, and the premium owed for the Optional **Discovery Period** coverage is paid in full and promptly when due.

7. The **Aggregate Limit of Liability** for the Optional **Discovery Period** shall be at least equal to the amount of coverage remaining in the Policy's **Aggregate Limit of Liability**.

8. During a claims-made relationship and any Optional **Discovery Period**, a person employed or otherwise affiliated with the **Policyholder** and covered by the **Policyholder's** claims-made policy during such affiliation, shall continue to be covered under such policy and any Optional **Discovery Period** after such affiliation has ceased for such person's covered acts or omissions during such affiliation.

A claims-made policy issued to a corporation, partnership or other entity shall provide Optional **Discovery Period** coverage upon **Termination of Coverage** to any person covered under the policy, if:

    a. such entity has been placed in liquidation or bankruptcy or permanently ceases operations;

    b. the entity or its designated trustee does not purchase Optional **Discovery Period** coverage; and

    c. such person requests the Optional **Discovery Period** coverage within 120 days of the **Termination of Coverage**.

The **Insurer** shall have no obligation to provide any notice to any such person of the availability of the Optional **Discovery Period** coverage. The **Insurer** may charge the person for whom Optional **Discovery Period** coverage is provided a premium commensurate with such coverage.

C. The Definitions Section is amended as follows:

    A. The definition of **Application**, Item (B) is deleted in their entirety and replaced with the following:

        (B) all representations executed by or on behalf of an **Insured** and provided to the **Insurer** in connection with the underwriting of this Policy or the underwriting of any other Directors and Officers (or equivalent) liability policy issued by the **Insurer**, or any of its affiliate during the thirty-six (36) month period immediately preceding the inception of the **Policy Period**; and

    B. The following is added to the definition of **Employment Practices Violation**:

        Coverage is provided only for **Employment Claims** resulting from disparate impact or vicarious liability.

    C. The following definition is added:

        **Termination of Coverage** means:

        a. any cancellation or nonrenewal of the Policy, whether by the **Insurer** or **Policyholder**; or

        b. decrease in limits, reduction of coverage, increased deductible or retention, new exclusion, or any other change in coverage less favorable to the **Policyholder**.

D. The following is added to the Notification of Claims, Events and Circumstances Section:

**_Failure to Provide Timely Notice of Claim – Prejudice Requirement_**

Notice of any **Claim** or potential **Claim** given by or on behalf of the **Insured** to any licensed agent of the **Insurer's** in the state of New York, with particulars sufficient to identify the **Insured**, shall be deemed notice to the **Insurer**. Failure to give notice to the **Insurer** as required under this policy shall not invalidate any **Claim** made by the **Insured** injured person or any other claimant, unless the failure to provide such timely

 © 2017 Allianz Global Risks US Insurance Company.
All rights reserved.


notice has prejudiced the **Insurer**. However, no **Claim** made by the **Insured**, injured person or other claimant will be invalidated if it shall be shown not to have been reasonably possible to give such timely notice and that notice was given as soon as was reasonably possible thereafter.

If the **Insurer** disclaims liability or denies coverage based upon the failure to provide timely notice with respect to a **Claim** arising out of death or personal injury of any person, then the injured person or other claimant may maintain an action directly against the **Insurer**, in which the sole question is the **Insurer's** disclaimer or denial based on the failure to provide timely notice, unless within sixty (60) days following such disclaimer or denial, the **Insurer** or the **Insured** initiate an action to declare the rights of the parties under this Policy and named the injured person or other claimant as a party to the action.

E.    The following is added to Defense, Settlement and Allocation Section:

This Policy, subject to its terms, conditions and limitations, affords coverage for **Defense Costs** even if allegations are groundless false or fraudulent.

F.    The Limit of Liability and Retentions for the Liability Coverage Parts is amended as follows:

1.    The first paragraph of Application of Retention to All Coverage Parts Subsection is deleted in its entirety and replaced with the following:

(A)    The **Insurer** will only pay that amount of **Loss** in respect of each **Claim** or **Event** that is in excess of the applicable **Retention** amounts stated for the applicable **Liability Coverage Part** as shown in Item 7 of the Declarations. The **Retentions** shall apply to all **Loss** of: (1) **Insured Persons** for **Non-Indemnifiable Loss** (except as specified below for the Directors Officers and Company Liability **Coverage Part**); and (2) the **Company** for all **Loss**.

To the extent that 11 NYCRR §72.1 applies to a **Claim** or **Event** covered under the Directors Officers and Company Liability **Coverage Part**, the **Retention** set forth in Item 7 of the Directors Declarations shall apply to each **Insured Person** for **Non-Indemnifiable Loss** subject to the aggregate **Retention** for all **Insured Persons**.

G.    The following Subsections are added for the Liability Coverage Parts:

1.    **Coinsurance**

Solely with respect each **Claim** or **Event** for **Non-Indemnifiable Loss** covered under the Directors Officers and Company Liability **Coverage Part**, the Coinsurance set forth in Item 7 of the Declarations shall apply to each **Insured Person** for the first one million dollars ($1,000,000) of coverage for **Non-Indemnifiable Loss** after application of the applicable **Retention**.

2.    **Transfer of Duties When a Limit of Liability is Exhausted**

a.    If the **Insurer** concludes that, based on incidents, occurrences, offenses, **Claims** or suits which have been reported to the **Insurer** and to which this insurance may apply, that any limit (each **Claim**, each incident, each occurrence, aggregate, or other) under the Policy is likely to be exhausted in the payment of judgments, settlements or **Defense Costs**, the **Insurer** will notify the **Policyholder** and **Insureds**, in writing, to that effect.

b.    When a **Limit of Liability** described above has actually been exhausted in the payment of judgments, settlements or **Defense Costs**:

(1)    If the **Insurer** concludes that, based on incidents, occurrences, offenses, claims or suits which have been reported to the **Insurer** and to which this insurance may apply, that any limit (each claim, each incident, each occurrence, aggregate, or other) under the policy is likely to be exhausted in the payment of judgments or settlements and/or

(2)    The **Insurer** will notify the **Policyholder** and **Insureds**, in writing, as soon as practicable, that:

(a)    such a limit has actually been exhausted; and

(b)    the **Insurer's** duty to defend suits seeking damages subject to that limit has ended.

© 2017 Allianz Global Risks US Insurance Company.
All rights reserved.


(3) The **Insurer** will initiate, and cooperate in, the transfer of control, to any appropriate **Insured**, of all **Claims** seeking damages which are subject to that limit and which are reported to the **Insurer** before that limit is exhausted. That **Insured** must cooperate in the transfer of control of said **Claims**.

The **Insurer** agrees to take such steps, as the **Insurer** deems appropriate, to avoid a default in, or continue the defense of, such **Claims** until such transfer is completed, provided the appropriate **Insured** is cooperating in completing such transfer. The **Insurer** has no obligation to take any action whatsoever with respect to any **Claim** seeking damages that would have been subject to that limit, had it not been exhausted, if the **Claim** is reported to the **Insurer** after that **Limit of Liability** has exhausted.

(4) The **Insured** involved in a **Claim** seeking damages subject to that limit, must arrange for the defense of such **Claim** within such time period as agreed to between the appropriate **Insured** and the **Insurer**. Absent any such agreement, arrangements for the defense of such **Claim** must be made as soon as practicable.

(5) The **Insured** will reimburse the **Insurer** for expenses the **Insurer** incurs in taking those steps the **Insurer** deems appropriate in accordance with paragraph b.(3) above.

(6) The duty of the **Insured** to reimburse the **Insurer** will begin on:

    (a) the date on which the applicable **Limit of Liability** is exhausted, if the **Insurer** sent notice in accordance with paragraph a above; or

    (b) the date on which the **Insurer** sent notice in accordance with paragraph b.(2) above, if the **Insurer** did not send notice in accordance with paragraph a above.

    (c) The exhaustion of any **Limit of Liability** by the payments of judgments, settlements or **Defense Costs**, and the resulting end of the **Insurer's** duty to defend, will not be affected by the **Insurer's** failure to comply with any of the provisions of this condition.

H. The last paragraph under the Severability Subsection in Severability and Non-Rescindable/Avoidance to All Coverage Parts Section is deleted in its entirety and replaced with the following:

In the event that any of the particulars or statements in the **Application** is untrue, the **Insurer** may deny a **Claim** with respect to any **Insured** who knew of such untruth.

I. The Cancellation or Non-Renewal Subsection in the General Terms and Conditions Section is deleted in its entirety and replaced with the following:

**Cancellation or Non-Renewal/Conditional Renewal**

**Cancellation**

1. This Policy may be cancelled by the **Policyholder** by surrender thereof to the **Insurer** or by providing written notice to the **Insurer** stating when thereafter cancellation shall be effective. If this Policy is cancelled by the **Policyholder**, the **Insurer** shall retain the customary short rate proportion of the premium.

2. This Policy may be cancelled by or on behalf of the **Insurer** subject to the following:

    a. If this Policy has been in effect for sixty (60) days or less, and is not a renewal of a policy previously issued by the **Insurer**, the **Insurer** shall specify the reason for cancellation at least twenty (20) days before the effective date of cancellation.

    b. After this Policy has been in effect for more than sixty (60) days or after the effective date of renewal, this Policy may only be cancelled for one of the following reasons:

        (1) nonpayment of premium;

        (2) conviction of a crime arising out of acts increasing the hazard insured against;

        (3) discovery of fraud or material misrepresentation in obtaining the Policy or in the presentation of a **Claim** thereunder;

© 2017 Allianz Global Risks US Insurance Company.
All rights reserved.



(4)    after issuance of this Policy or after the last renewal date, discovery of an act or omission, or a violation of any Policy condition, that substantially and materially increases the hazard insured against, and which occurred subsequent to inception of the current **Policy Period**;

(5)    a determination by the Superintendent that the **Insurer's** continuation of the present premium volume would jeopardize the **Insurer's** solvency or be hazardous to the interests of the **Insurer's** policyholders, the **Insurer's** creditors or the public; or

(6)    a determination by the Superintendent that the continuation of the Policy would violate, or would place the Insurer in violation of New York law.

(7)    Where the **Insurer** has reason to believe, in good faith and with sufficient cause, that there is a probable risk of danger that the **Insured** will destroy, or permit to be destroyed, the insured property for the purpose of collecting the insurance proceeds. If the **Insurer** cancels for this reason, the **Policyholder** may make a written request to the Department of Financial Services, within ten (10) days of receipt of this notice, to review the **Insurer's** cancellation decision. Also, the **Insurer** will simultaneously send a copy of this cancellation notice to the Department of Financial Services.

The written notice of cancellation shall specify the grounds for cancellation at least fifteen (15) days before the effective date of cancellation.

Cancellation by or on behalf of the **Insurer** shall be effected by mailing or delivering written notice to the **Policyholder's** authorized agent or broker and to the **Policyholder** at the address shown in Item 1. of the Declarations. If cancellation is for nonpayment of premium, the notice of cancellation shall include the amount of premium that is due. If the **Insurer** cancels this policy, the earned premium shall be computed pro rata.

### Nonrenewal/Conditional Renewal

Should the **Insurer** decide to nonrenew this Policy or condition its renewal upon a change in the **Limit of Liability** or **Limit of Insurance**, change in type of coverage, reduction of coverage, increased retention or deductible, the addition of any exclusion or an increase in premium in excess of 10%, then the **Insurer** shall mail or deliver written notice of the refusal to renew or the conditional renewal to the **Policyholder** at the principal address shown in Item 1. of the Declarations and to the **Policyholders** authorized agent or broker, if applicable, at least sixty (60) days but not more than one hundred and twenty (120) days before the end of the **Policy Period**. Such notice shall contain the specific reasons for the nonrenewal or the conditional renewal and shall set forth the amount or a reasonable estimate of any premium increase and describe any additional proposed changes.

If the **Insurer** does not provide notice of nonrenewal or conditional renewal as provided in this section, coverage will remain in effect at the same terms and conditions of this Policy at the lower of the current rates or the prior period's rates until sixty (60) days after such notice is mailed or delivered unless the **Policyholder**, during this 60-day period, has replaced the coverage or elects to cancel in which event such cancellation shall be on a pro rata premium basis; provided, however, that if the **Insurer** elects to renew on the basis of the conditional renewal notice, then such terms, conditions and rates shall govern the Policy upon expiration of such sixty (60) day period unless such notice was provided at least thirty (30) days prior to the expiration date of the Policy, in which event the terms, conditions and rates set forth in the conditional renewal notice shall apply as of the renewal date.

If the **Insurer** provides notice of nonrenewal or conditional renewal on or after the expiration date of this Policy, coverage will remain in effect at the same terms and conditions of this Policy for another **Policy Period**, at the lower of the current rates or the prior **Policy Period's** rates, unless the **Policyholder**, during the additional **Policy Period**, has replaced the coverage or elects to cancel, in which event such cancellation shall be on a pro rata premium basis.

The **Insurer** will not send the **Policyholder** notice of nonrenewal or conditional renewal if the **Policyholder**, the **Policyholder's** authorized agent or another insurer of the **Policyholder** mails or delivers notice that the Policy has been replaced or is no longer desired.

                  © 2017 Allianz Global Risks US Insurance Company.
All rights reserved.



If the **Policyholder** elects to accept the terms, conditions and rates of the conditional renewal notice pursuant to the cancellation provisions, a new limit of insurance shall become effective as of the inception date of renewal, subject to regulations promulgated by the Superintendent of Insurance.

II.   With respect to the **Liability Coverage Parts**, the definition of **Loss** is amended to include the following:

However, and notwithstanding anything to the contrary contained in the definition of **Loss**, if New York law governs the interpretation of this Policy, **Loss** does not include any punitive or exemplary damages.

III.   With respect the Crime **Coverage Part**, if purchased, the Crime Conditions Section is amended as follows:

A.   The Fraud, Misrepresentation and Concealment Subsection is deleted in its entirety and replaced with the following:

**Fraud**

The **Insurer** does not provide coverage for any **Insured** who has made fraudulent statements or engaged in fraudulent conduct in connection with any loss or damage for which coverage is sought under this Policy.

B.   The Conditions Applicable to Insuring Agreements 1.1(A) (Employee Theft or Forgery) and 1.1(C) (Client Property) is deleted in its entirety and replaced with the following:

**Conditions Applicable to Insuring Agreements 1.1(A) (Employee Theft or Forgery) and 1.1(C) (Client Property)**

Coverage provided under Insuring Agreements 1.1(A) (Employee Theft or Forgery) and 1.1(C) (Client Property) terminates as to any **Employee**:

(A)   immediately upon such individual ceasing to be an **Employee**; provided, however, coverage shall continue for loss sustained during the time such individual was an **Employee** and **Discovered** not later than sixty (60) days from the date of cancellation of coverage as respects such **Employee**;

(B)   if such **Employee** had also committed a **Theft**, **Forgery** or dishonest act prior to the effective date of this Policy and the **Company** or an **Executive** not in collusion with the **Employee** learned of that **Theft**, **Forgery** or dishonest act valued at twenty-five thousand ($25,000) dollars or more prior to the inception date of this Policy as shown on the Declarations to this Policy; or

(C)   during the **Policy Period** to the extent loss is first **Discovered** by the **Company** after the **Company** or an **Executive** not in collusion with the **Employee** learns that the **Employee** had committed a **Theft**, **Forgery** or dishonest act.

However, if New York Law governs the interpretation of this Policy, this condition does not apply with respect to an **Employee** of the **Company** that is located in New York if the:

(1)   dishonest act was committed by that **Employee** prior to becoming employed by the **Company**;

(2)   dishonest act resulted in a conviction; and

(3)   **Company** made a determination to hire or retain the **Employee** utilizing the factors set out in Correction Law Article 23-A.


ALL OTHER TERMS, CONDITIONS AND LIMITATIONS REMAIN UNCHANGED.

© 2017 Allianz Global Risks US Insurance Company.
All rights reserved.



# Cap on Losses from Certified Acts of Terrorism

| Policy Number | Effective Date |
|---|---|
| USF00981121 | August 18, 2021 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

The following provisions are added:

If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and the Insurer (the company providing coverage under this Policy) has met its Insurer deductible under the Terrorism Risk Insurance Act, the Insurer shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**Certified Act of Terrorism** means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act, as amended. The criteria contained in the Terrorism Risk Insurance Act for a **Certified Act of Terrorism** include the following:

1.  The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2.  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

ALL OTHER TERMS, CONDITIONS AND LIMITATIONS REMAIN UNCHANGED.



# Aon Amendatory Endorsement
## (Declarations and General Terms and Conditions)

| Policy Number | Effective Date |
|---|---|
| USF00981121 | August 18, 2021 |

**Policyholder:  Entourage Commerce, LLC**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

**Private Company Protect**

It is agreed that the Declarations is amended as follows:

Item 10.    **Discovery Period Additional Premium** is deleted in its entirety and replaced with the following:

    Item 10.    **Discovery Period Additional Premium**:

        a.   12 Months:     150% of the Policy **Premium**
        b.   36 Months:     200% of the Policy **Premium**
        c.   72 Months:     250% of the Policy **Premium**

    **Run-Off Coverage Additional Premium**:

        a.   12 Months:     150% of the Policy **Premium**
        b.   36 Months:     200% of the Policy **Premium**
        c.   72 Months:     250% of the Policy **Premium**

It is agreed that the General Terms and Conditions is amended as follows:

1.    The first paragraph of Subpart (A) of Subsection **1.1** is deleted in its entirety and replaced with the following:

    The **Insurer** shall pay **Loss** of an **Outside Entity Executive** (or of the **Company** to the extent the **Company** has indemnified such **Outside Entity Executive** for such **Loss**) that arises from a **Claim** made against such **Outside Entity Executive** while serving in his or her capacity with an **Outside Entity**.  Coverage is afforded to the **Outside Entity Executive** solely while serving in his or her capacity as an **Outside Entity Executive** in such capacity for such **Outside Entity**.

2.    Subsection **1.3** <u>Estates, Legal Representatives, Spouses and Domestic Partners Extension [Other than Crime]</u> is deleted in its entirety and replaced with the following:

    **1.3    <u>Estates, Legal Representatives, Spouses and Domestic Partners Extension [Other than Crime]</u>**

    The estates, heirs, legal representatives, assigns, spouses, or legally recognized domestic partners (as defined in any applicable federal, state, or foreign legislation or pursuant to any formal **Company** programs) of an **Insured Person** shall be considered an **Insured Person** but only for a **Claim** arising solely out of their status as such.  Where recovery is sought from (i) a spouse or civil or domestic partner solely because joint property is held or owned by or on behalf of the spouse or civil or domestic partner; or (ii) the legal representatives, heirs, assigns or estates of such **Insured Persons** in the event of their death, incapacity, insolvency or bankruptcy. No coverage is afforded for any wrongful act or omission of an estate, heir, legal representative, assign, spouse, or civil or domestic partner.  All provisions in the General Terms and Conditions and the respective **Coverage**

© 2021 Allianz Global Risks US Insurance Company.
All rights reserved.



**Parts** applicable to **Loss** incurred by the **Insured Person** shall also apply to losses incurred by such estates, heirs, legal representatives, assigns, spouses, or civil or domestic partners.

3. Subsection **1.4** <u>Discovery Period [Other than Crime]</u> is amended to include the following:

If any **Premium** is owed for this Policy, any **Premium** received from the **Policyholder** shall first be applied to the earned **Premium** owing for this Policy with the remainder of the unearned **Premium** applied to the premium for the **Discovery Period**. The **Discovery Period** shall not take effect unless the outstanding **Premium** for this Policy is paid in full and the premium for the **Discovery Period** is paid when due.

4. Subpart (A) <u>New Subsidiary Coverage</u> of Subsection **1.5** <u>New and Past Subsidiary and Plan Coverage</u> is deleted in its entirety and replaced with the following:

(A) <u>**New Subsidiary Coverage**</u>

If, during the **Policy Period**, the **Policyholder** obtains **Management Control** of an entity or exclusively sponsors an organization chartered or incorporated and operating as a not-for-profit organization, then such entity shall be deemed a **Subsidiary** and shall automatically be covered under this Policy as such with effect from the date on which the **Policyholder** first obtained **Management Control**. The **Insurer** shall only be liable for **Wrongful Acts**, **Events** or matters that took place after the **Policyholder** obtained **Management Control** of such entity. This Subpart 1.5(A) shall also apply to the Crime **Coverage Part**, if purchased.

5. Subpart (C) <u>New Plan Coverage</u> of Subsection **1.5** <u>New and Past Subsidiary and Plan Coverage</u> is deleted in its entirety and replaced with the following:

(C) <u>**New Plan Coverage**</u>

Subsection 1.5(C) (<u>New Plan Coverage</u>) shall apply only in the event that the Fiduciary Liability **Coverage Part** is purchased.

If during the **Policy Period** the **Policyholder** becomes responsible for any plan that would qualify as a **Plan**, then such plan shall be deemed a **Plan** and shall automatically be covered as such with effect from the date on which the **Policyholder** first became responsible for such plan. Coverage under this Policy for any **Plan** and its **Insureds** shall only apply for **Wrongful Acts** taking place while a **Policyholder** is a sponsor of such **Plan** or is otherwise responsible for the **Administration** of such **Plan**.

6. Subpart (D) <u>Past Plan Coverage</u> of Subsection **1.5** <u>New and Past Subsidiary and Plan Coverage</u> is deleted in its entirety and replaced with the following:

(D) <u>**Past Plan Coverage**</u>

Subsection 1.5(D) (<u>Past Plan Coverage</u>) shall apply only in the event that the Fiduciary Liability **Coverage Part** is purchased.

If before or during the **Policy Period** a **Plan** is terminated, coverage for such **Plan** and its **Insureds** shall continue until termination of this Policy, but only for **Wrongful Acts** that took place before such termination. In all events, however, a **Plan** shall be deemed terminated at the later of termination of the **Plan** or distribution of the last asset.

7. Subsection **2.2** **Application** is deleted in its entirety and replaced with the following:

**2.2** **Application** means:

(A) the written statements and representations and any portion of an application given to the **Insurer** for this Policy during the twelve (12) month period immediately preceding the inception of the **Policy Period**, including any written information and materials attached thereto or incorporated therein, submitted by or on behalf of an **Insured** for the purposes of the **Insurer's** underwriting of this Policy or any policy issued by the **Insurer** of which this Policy is a direct or indirect renewal or replacement; and

(B) all warranties executed by or on behalf of an **Insured** and provided to the **Insurer** in connection with the underwriting of this Policy or the underwriting of any other **Management Liability Insurance Policy** issued by the **Insurer**, or any of its affiliates during the twelve (12) month period immediately preceding the inception of the **Policy Period**.

  © 2021 Allianz Global Risks US Insurance Company.
All rights reserved.



8.   Subsection **2.3 Change in Control** is amended by deleting subpart (B) thereof.

9.   Subpart (C) of Subsection **2.11 Defense Costs** is deleted in its entirety and replaced with the following:

(C)   if the Fiduciary Liability **Coverage Part** is purchased, incurred in connection with the defense and investigation of any **Voluntary Compliance Program**, including the costs of **E-Discovery Consultant Services** and the premiums for any appeal bond, attachment bond or similar bond arising out of a covered judgment, but without any obligation on the part of the **Insurer** to apply for or furnish any such bond, by or on behalf of the **Insured** in the investigation, defense, adjustment or settlement of a **Voluntary Compliance Program** involving such **Insured** and any appeal thereof.

10.   Subsection **2.14 Employee** is deleted in its entirety and replaced with the following:

**2.14**   **Employee** means any natural person who is, was or during the **Policy Period** becomes employed by the **Company**, including full-time, part-time, seasonal and temporary employees, volunteers and interns, but solely while acting within the scope and capacity as such for the **Company**. **Employee** shall also include leased employees and independent contractors of a **Company** but only if the **Company** provides indemnification in the same manner as provided to **Employees** who are not leased workers or independent contractors. Coverage for such leased worker or independent contractor shall be specifically excess of any indemnification or insurance otherwise available to such leased worker or independent contractor from the applicable leasing company or any other source; provided, however, a **Company** may request that no coverage be provided under the Employment Practices Liability **Coverage Part** for a leased worker or an independent contractor named in a specific **Employment Claim**.  Such request shall be made in **writing** and within ninety (90) days of the **Employment Claim** being reported to the **Insurer**.  If no such request is made, the Employment Practices Liability **Coverage Part** shall apply as if such **Company** determined that such independent contractor shall receive coverage.

Solely with respect to a **Claim** against an **Outside Entity Executive** in his or her scope and capacity of such position, **Employee** also means a natural person who is, was or becomes employed by the **Outside Entity** and whose labor or service is engaged by and directed by the **Outside Entity**, including full-time, part-time, seasonal, leased and temporary employees but solely while acting within the scope and capacity as such for the **Outside Entity**. **Employee** shall not include independent contractors.

11.   Subsection **2.15 Employment Claim** is deleted in its entirety and replaced with the following:

**2.15**   **Employment Claim** means a **Claim** which is brought by or on behalf of any past, present, future or prospective **Employee** or applicant for employment with a **Company** against an **Insured** or an **Outside Entity Executive** for an **Employment Practices Violation Wrongful Act**.

12.   Subsection **2.16 Employment Practices Violation** is deleted in its entirety and replaced with the following:

**2.16**   **Employment Practices Violation** means any actual or alleged:

(A)   wrongful reassignment, dismissal, discharge or termination (either actual or constructive) of employment, including breach of an express or implied contract;

(B)   harassment, including sexual harassment whether "quid pro quo", hostile work environment or otherwise, harassment based upon protected status, harassment via social media or social networking, harassment which interferes with performance and workplace bullying;

(C)   discrimination, including but not limited to discrimination based upon age, gender, race, color, national origin, religion, sexual orientation or preference, pregnancy, genetic information, military status, employment status, disability or any protected class as recognized by federal, state, local or foreign law;

(D)   **Retaliation**;

(E)   employment-related misrepresentation(s), including misrepresentation(s) regarding advancement opportunity;

(F)   employment-related libel, slander, humiliation, defamation or invasion of privacy, including invasion of privacy based on unlawful disclosure of an **Employee's** medical information in violation of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), unlawful disclosure of an **Employee's** credit information or related information in violation of the Fair Credit Reporting Act ("FCRA") or

© 2021 Allianz Global Risks US Insurance Company.
All rights reserved.



unauthorized disclosure or use of background checks, criminal records or other personal information of an **Employee** in connection with employment-related screening;

(G)   wrongful failure to employ or promote;

(H)   wrongful or negligent deprivation of career or employment opportunity, wrongful or negligent demotion, wrongful or negligent denial of or deprivation of seniority or wrongful or negligent **Employee** evaluation, including the giving of negative or defamatory statements in connection with an employee reference;

(I)   wrongful discipline;

(J)   failure to grant tenure;

(K)   abuse of power;

(L)   adverse change in the conditions, terms or status of employment;

(M)   inducement to become or remain employed based upon an erroneous job description;

(N)   violation of the Family and Medical Leave Act, as amended; or

(O)   with respect to any of the foregoing items (A)-(N) of this Definition, negligent hiring, retention, training or supervision, infliction of emotional distress or mental anguish, failure to adopt, provide or enforce corporate policies and procedures or violation of an individual's civil rights;

whether direct, indirect, intentional or unintentional, but only if such **Employment Practices Violation** relates to an **Employee** or applicant for employment with the **Company** or an employee of an **Outside Entity**.

13.   Subsection **2.18 Executive** is deleted in its entirety and replaced with the following:

**2.18   Executive** means, solely while acting within the scope and capacity set forth below, any natural person who is, was or during the **Policy Period** becomes:

(A)   a duly elected or appointed director, officer, trustee, governor, management committee member or member of the management board of a **Company**, including any de facto director, shadow director, board observer or the equivalent in any **International Jurisdiction**;

(B)   a duly elected or appointed member or manager of a **Company** that is structured as a limited liability company;

(C)   a duly elected or appointed member of any advisory board or advisory committee of the **Company**;

(D)   a duly elected or appointed member of any special litigation committee, special investigation committee, demand investigation committee or similar committee formed in response to a **Claim**; or

(E)   in-house General Counsel, Chief Legal Counsel or Risk Manager of any **Company** (or the equivalent in any **International Jurisdiction**).

14.   Subsection **2.35 Non-Executive Director Excess Limit of Liability** is deleted in its entirety.

15.   Subsection **2.38 Outside Entity** is deleted in its entirety and replaced with the following:

**2.38   Outside Entity** means any:

(A)   organization chartered or incorporated and operating as a not-for-profit organization;

(B)   any for-profit entity, excluding **Financial Institutions**, joint ventures and any entity whose securities are publicly traded; or

(C)   other entity specifically added as an **Outside Entity** by endorsement to this Policy;

provided that such entity is not included in the definition of **Company**.

16.   Subsection **2.39 Outside Entity Executive** is deleted in its entirety and replaced with the following:

**2.39   Outside Entity Executive** means any **Employee**, director, officer, trustee, governor or equivalent of a **Company** who, with the knowledge and consent of a **Company**, or as part of the regular duties assigned by

                    © 2021 Allianz Global Risks US Insurance Company.
All rights reserved.


such **Company**, holds the position of director, officer, trustee, governor or equivalent of an **Outside Entity**, but only while acting within the scope and capacity of such position.

17.   Subsection **2.51 Subsidiary** is amended to include the following:

**Subsidiary** shall also mean any limited partnership for which the **Policyholder** serves as general partner.

18.   Section **2. Definitions** is amended to include the following:

**Executive Excess Limit of Liability** means the additional **Limit of Liability** amount stated in Item 7.c. of the Directors, Officers and Company Liability **Coverage Part** Schedule in the Declarations for each **Executive** and **Non-Executive Director**, subject to an aggregate **Executive Excess Limit of Liability** amount stated in 7.c. of the Directors, Officers and Company Liability **Coverage Part** Schedule in the Declarations.

19.   Subsection **3.1 Conduct** is deleted in its entirety and replaced with the following:

**3.1   Conduct**

(A)   arising out of, based upon, attributable to or as a consequence of the committing of a deliberately fraudulent or deliberately criminal act or omission, or a willful violation of law by an **Insured Person**; or

(B)   for the gaining of any personal profit or financial advantage by an **Insured Person** to which they were not legally entitled;

provided, that this Subsection 3.1 shall only apply to an **Insured Person** if such behavior is established by a final, non-appealable adjudication in the underlying action.

Solely with respect to the Directors, Officers, and Company Liability **Coverage Part** and notwithstanding the foregoing, Paragraph (B) of this Subsection does not apply to any **Claim** for an actual or alleged violation of Section 11, 12, or 15 of the Securities Act of 1933, as amended, unless it is established by a final, non-appealable adjudication in the underlying action that the **Loss** attributable to such violation constitutes personal profit or financial advantage to which the **Insured Person** was not legally entitled.

Further, for the application of the exclusion set forth in Subsection 3.1(A), the imposition of a criminal fine or other criminal sanction in an **International Jurisdiction** will not, by itself, be conclusive proof that a deliberately fraudulent or deliberately criminal act or omission or a willful violation of law by an **Insured Person** occurred, if such acts or omissions which are treated as criminal violations in such **International Jurisdiction** are not treated as a criminal violation in the **United States of America**.

20.   Subsection **3.2 Fiduciary** is deleted in its entirety and replaced with the following:

**3.2   Fiduciary**

for any actual or alleged violation of the Employee Retirement Income Security Act of 1974 (ERISA), as amended, or any regulations promulgated thereunder, or any similar federal, state or local law or regulation, as respects any pension, profit sharing, health and welfare or other employee benefit plan or trust established or maintained for the purpose of providing benefits to any **Insured**; provided, however, this exclusion shall not apply to the Fiduciary Liability **Coverage Part**, if purchased, or to an **Employment Claim** alleging a violation of Section 510 of ERISA if the Employment Practices Liability **Coverage Part** is purchased.

21.   Subpart (A) of Subsection **3.3 Pending and Prior Claim; Prior Notice** is deleted in its entirety and replaced with the following:

**3.3   Pending and Prior Claim; Prior Notice**

alleging, arising out of, based upon, attributable to or as a consequence of:

(A)   any civil, criminal, administrative, regulatory, arbitration or mediation proceeding or **Claim**, including any claim or investigation conducted by the Equal Employment Opportunity Commission ("EEOC"), initiated or commencing prior to or pending as of the **Pending and Prior Date** of which an **Insured** had notice (including a qui tam or relator suit commenced by the service of a civil complaint or similar pleading upon an **Insured**); or alleging or deriving from the same or essentially the same facts as alleged in such actions or claims or any **Related Claim** or **Related Event** thereto; or

© 2021 Allianz Global Risks US Insurance Company.
All rights reserved.



22.   Subsection **3.4 <u>Pollution</u>** is deleted in its entirety and replaced with the following:

**3.4**   **<u>Pollution</u>**

for:

(A)   any actual or alleged or threatened discharge, dispersal, release, or escape of **Pollutants**;

(B)   any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or assess the effects of **Pollutants** or **Greenhouse Gases**; or

(C)   **Clean Up Costs**;

provided, however, this Subsection 3.4 shall not apply under the Employment Practices Liability **Coverage Part** or the Fiduciary Liability **Coverage Part**, if purchased, or to the Directors, Officers and Company Liability **Coverage Part**, if purchased, to the following:

(1)   **Non-Indemnifiable Loss**;

(2)   **Securities Claim**; or

(3)   **Loss** in connection with an **Environmental Mismanagement Event**.

23.   Subsection **3.5 <u>Statutory and Compensation Liability</u>** is deleted in its entirety and replaced with the following:

**3.5**   **<u>Statutory and Compensation Liability</u>**

(A)   for any actual or alleged violation of the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act or the Occupational Safety and Health Act, as amended, or any regulations promulgated thereunder, or any similar federal, state, local or foreign laws or regulations; or for any actual or alleged violation of the **Company's** obligations respecting worker's compensation, disability benefits, unemployment compensation, unemployment insurance, retirement benefits, social security benefits or similar obligations;

(B)   solely with respect to the Employment Practices Liability **Coverage Part**, for any **Wage and Hour Violation**;

provided, however, that this Subsection 3.5 shall not apply to any **Employment Claim** for **Retaliation**.

24.   The last paragraph of Section **3. Exclusions for the Liability Coverage Parts** is deleted in its entirety and replaced with the following:

No conduct, fact pertaining to or knowledge possessed by any **Insured** shall be imputed to any other **Insured** for the purpose of determining the applicability of the foregoing exclusions.

25.   The first paragraph of Subsection **4.1 <u>Notification</u>** is deleted in its entirety and replaced with the following:

**4.1**   **<u>Notification</u>**

The **Policyholder** shall, as a condition precedent to any obligation of the **Insurer** under this Policy, give written notice to the **Insurer** of:

(A)   any **Claim** made against an **Insured**;

(B)   any **Pre-Claim Inquiry** or **Fiduciary Pre-Claim Inquiry**, if an **Insured Person** elects to seek coverage for **Pre-Claim Inquiry Costs** or **Fiduciary Pre-Claim Inquiry Costs** in connection with any **Pre-Claim Inquiry** or **Fiduciary Pre-Claim Inquiry**;

(C)   subject to Subsection 4.3 (<u>Related Claims and Related Events</u>) any **Event**; or

(D)   in the event the Fiduciary Liability **Coverage Part** of this Policy is purchased, any **Voluntary Compliance Program Notice** (as that term is defined in such **Coverage Part**);

as soon as practicable after the **Policyholder's** Risk Manager or General Counsel, or any person in equivalent positions, first becomes aware of such **Claim**, **Pre-Claim Inquiry**, **Fiduciary Pre-Claim Inquiry**, **Event** or **Voluntary Compliance Program Notice** prior to the expiration of the **Policy Period** or the **Discovery Period**, if applicable. Solely with respect to any **Claim**, **Pre-Claim Inquiry** or **Fiduciary Pre-Claim Inquiry**, such notice shall be made no later than ninety (90) days after the expiration of the **Policy Period**.

   © 2021 Allianz Global Risks US Insurance Company.
All rights reserved.


26. Subsection **4.4 <u>Failure to Report Events</u>** is deleted in its entirety and replaced with the following:

   **4.4** **<u>Failure to Report Events</u>**

   Failure to report **Events** (including a **Pre-Claim Inquiry** or a **Fiduciary Pre-Claim Inquiry**) as defined under the General Terms and Conditions and the respective **Coverage Parts** of this Policy pursuant to Section 4. (<u>Notification of</u> <u>Claims, Events and Circumstances</u>) in the General Terms and Conditions, or any prior policy of which this Policy is a replacement, renewal or succeeds in time, shall not constitute a breach of Subsection 4.1 (<u>Notification</u>) for the purposes of any subsequent **Claim** made against an **Insured** during the **Policy Period** or the **Discovery Period**; provided, however, that the **Insurer** shall have no obligation under this Policy for any costs, fees, or expenses incurred prior to the tender of such notice.

27. Subsection **5.2 <u>Optional Duty to Defend</u>** is deleted in its entirety and replaced with the following:

   **5.2** **<u>Optional Duty to Defend</u>**

   Notwithstanding the foregoing, the **Insureds** shall have the right to tender the defense of the **Claim** to the **Insurer**, which right shall be exercised in writing by the **Policyholder** on behalf of all **Insureds** to the **Insurer** pursuant to Section 4. (<u>Notification of Claims, Events and Circumstances</u>) of the General Terms and Conditions. This right shall terminate if not exercised within thirty (30) days of the date the **Claim** is first made against an **Insured**. Further, from the date the **Claim** is first made against the **Insured** to the date when the **Insurer** accepts the tender of the defense of such **Claim**, the **Insureds** shall take no action, or fail to take any required action, that prejudices the rights of the **Insureds** or the **Insurer** with respect to such **Claim**. Provided that the **Insureds** have complied with the foregoing, the **Insurer** shall be obligated to assume the defense of the **Claim**, even if such **Claim** is groundless, false or fraudulent; provided, however, the **Insurer** shall not be obligated to defend such **Claim** after the **Aggregate Limit of Liability**, the Limit of Liability of the applicable **Coverage Part** or applicable Sub-Limit of Liability has been exhausted. The assumption of defense of the **Claim** shall be effective upon written confirmation sent by the **Insurer** to the **Policyholder**. Once the defense has been so tendered, the **Insured** shall have the right to effectively associate with the **Insurer** in the defense and negotiation of any settlement of any **Claim**, subject to the provisions of this Subsection 5.2.

   The Optional Duty to Defend afforded pursuant to this Subsection 5.2 shall not be afforded for any **Claim** alleging, in whole or in part, a **Wage and Hour Violation**.

28. The second paragraph of Subsection **5.4 <u>Claims Participation and Cooperation</u>** is deleted in its entirety and replaced with the following:

   In all events, each and every **Insured** shall give the **Insurer** full cooperation and such information as it may reasonably require. The **Insureds** shall do nothing that would in any way increase the **Insurer's** liability under this Policy or prejudice the **Insurer's** actual or potential rights of recovery. The failure of any **Insured** to provide the **Insurer** with full cooperation and such information as the **Insurer** may reasonably require shall not impair the rights of any other **Insured** under this Policy.

29. Subsection **5.5 <u>Consent to Settlement</u>** is deleted in its entirety.

30. Subsection **5.7 <u>Allocation</u>** is amended by adding the following to the end thereof:

   In the event the **Insureds** tender the defense of a **Claim** to the **Insurer** pursuant to Subsection **5.2 <u>Optional Duty to Defend</u>**, the **Insurer** shall allocate 100% of **Defense Costs** as covered **Loss**.

31. Subsection **6.2 <u>Sub-Limits of Liability</u>** is amended by adding the following to the end thereof:

   It is further understood that a Sub-Limit of Liability in the amount of $250,000 shall apply to all **Workplace Violence Expenses** made and reported during the **Policy Period** or **Discovery Period** (if applicable) combined (hereinafter the "**Workplace Violence Expenses Sub-Limit of Liability**"). Such **Workplace Violence Expenses Sub-Limit of Liability** is part of, and not in addition to, the Limit of Liability set forth in Item 7.a. of the Employment Practices Liability **Coverage Part** Schedule in the Declarations. This Sub-Limit of Liability shall in no way be deemed to increase the **Aggregate Limit of Liability** set forth in Item 3. of the Declarations.

   It is further understood that a Sub-Limit of Liability in the amount of $250,000 shall apply to all **Employee Privacy Violation Claims** made and reported during the **Policy Period** or **Discovery Period** (if applicable) combined (hereinafter the "**Employee Privacy Violation Claim Sub-Limit of Liability**"). Such **Employee Privacy Violation Claim Sub-Limit of Liability** is part of, and not in addition to, the Limit of Liability set forth in Item 7a. of the

© 2021 Allianz Global Risks US Insurance Company.
All rights reserved.



Employment Practices Liability **Coverage Part** Schedule in the Declarations. This Sub-Limit of Liability shall in no way be deemed to increase the **Aggregate Limit of Liability** set forth in Item 3. of the Declarations.

32. Subsection **6.5** <u>Additional Limits of Liability</u> is deleted in its entirety and replaced with the following:

**6.5** <u>Additional Limits of Liability</u>

The per **Executive Excess Limit of Liability** as stated in Item 7.c. of the Directors, Officers and Company Liability **Coverage Part** Schedule in the Declarations for each **Executive** and **Non-Executive Director** shall apply for all **Loss** of any one **Executive** or **Non-Executive Director**, subject to an aggregate **Executive Excess Limit of Liability** amount stated as in 7.c. of the Directors, Officers and Company Liability **Coverage Part** Schedule in the Declarations for all **Loss** of all **Executives** and **Non-Executive Directors**.

33. Subpart (A) of Subsection **6.7** <u>Application of Retention to All Coverage Parts</u> is deleted in its entirety and replaced with the following:

(A) The **Insurer** will only pay that amount of **Loss** in respect of each **Claim** or **Event** that is in excess of the applicable **Retention** amounts stated for the applicable **Liability Coverage Part** as shown in Item 7 of the Declarations. The **Retentions** shall apply to all **Loss** of: (1) **Insured Persons** other than **Non-Indemnifiable Loss**; and (2) the **Company** for all **Loss**.

With respect to the Employment Practices Liability **Coverage Part**, if purchased and subject to the above, the **Retention** amounts stated for the Employment Practices Liability **Coverage Part** Schedule as shown in Item 7 of the Declarations shall apply to any **Claim** and for each **Claim** for which class or collective action certification (five (5) or more parties) is sought pursuant to applicable law. The **Retention** stated in Item 7 of the Employment Practices Liability **Coverage Part** Schedule of the Declarations shall apply to any other **Claim** or **Event**.

The **Retention** set forth in Item 7 of the Fiduciary Liability **Coverage Part** Schedule of the Declarations shall apply to **Loss** resulting from a **Claim** in which a plaintiff alleges loss or seeks damages based upon a change in or challenge to the price or valuation of **Employer Securities**. The **Securities Retention** set forth in Item 7 of the Fiduciary Liability **Coverage Part** Schedule of the Declarations shall not apply to **Loss** resulting from a **Claim** in which plaintiffs allege a loss or seek damages as a result of a **Plan's** allegedly excessive fees or excessive cash holdings within an investment fund designed to hold **Employer Securities** as long as there is no allegation based on a drop in the price or decrease in the valuation of such **Employer Securities**.

**Retentions** shall not apply to:

(1) the first $25,000 of **Defense Costs** for **E-Discovery Consultant Services** under Subsection 1.1(E) (<u>E-Discovery Consultant Services</u>) in General Terms and Conditions;

(2) **Crisis Communication Expenses** under Subsection 1.1(C) (<u>Personal Crisis Event Supplemental Limit Coverage</u>) and Subsection 1.1(D) (<u>Company Crisis Event Supplemental Limit Coverage</u>) in General Terms and Conditions;

(3) **Kidnap Response Costs**, if the Directors, Officers, and Company Liability **Coverage Part** is purchased; or

(4) **Voluntary Compliance Program Loss**, **Section 502(c) Penalties**, **Pension Protection Act Penalties**, **HIPAA Penalties**, **Health Care Reform Penalties**, and **Section 4975 Penalties**, if Fiduciary Liability **Coverage Part** is purchased.

34. Subsection **6.7** <u>Application of Retention to All Coverage Parts</u> is amended by adding the following to the end thereof:

No **Retention** shall apply to **Class Certification Event Study Expenses**, **Derivative Demand Costs**, **Employee Privacy Violation Claims** or **Workplace Violence Expenses**.

Solely with respect to the Directors, Officers and Company Liability **Coverage Part**, the Employment Practices Liability **Coverage Part** and the Fiduciary Liability **Coverage Part**:

No **Retention** shall apply to **Defense Costs** incurred in connection with a **Claim**, and the **Insurer** shall reimburse the **Insureds** for any **Defense Costs** paid by the **Insureds** within the **Retention** otherwise applicable to such **Claim**, if a:

© 2021 Allianz Global Risks US Insurance Company.
All rights reserved.


(A)    final adjudication with prejudice pursuant to a trial, motion to dismiss or motion for summary judgment; or

(B)    complete and final settlement with prejudice;

establishes that none of the **Insureds** in such **Claim** are liable for any **Loss**.

35.    Section **7. Other Insurance for the Liability Coverage Parts** is amended by adding the following at the end thereof:

Provided, however, this Policy shall apply as primary to any personal umbrella excess liability insurance or personal director liability insurance purchased by or on behalf of an **Insured Person**.

36.    Subsection **8.1** <u>**Severability**</u> is deleted in its entirety and replaced with the following:

**8.1    <u>Severability</u>**

In granting coverage to the **Insureds** under this Policy, the **Insurer** has relied upon the **Application** for this Policy and any written statements, warranties and representations made in connection therewith. The **Application**, and such written statements, warranties and representations and any financial information of the **Company**, are the basis of the coverage under this Policy and shall be considered as incorporated in and constituting part of this Policy. The **Application** for coverage shall be construed as a separate **Application** for coverage by each **Insured Person**.

For the purposes of determining the availability of coverage under this Policy, including the application of any exclusion, no fact pertaining to, knowledge possessed by or conduct of one **Insured** shall be imputed to any other **Insured**.

With respect to the **Company** and **Plans**, the statements made by, information or knowledge possessed by and any conduct of any past, present or future Chief Executive Officer, Chief Financial Officer or General Counsel (or equivalent executive or management position) of the **Policyholder** shall be imputed to such **Company** and **Plans**, and the knowledge of the same officers of the **Policyholder** shall be imputed to all **Companies** and **Plans**.

37.    Subsection **8.2** <u>**Non-Rescindable/Avoidance**</u> is deleted in its entirety and replaced with the following:

**8.2    <u>Non-Rescindable/Avoidance</u>**

The **Insurer** shall not void or rescind, in whole or in part, the coverage provided by this Policy.

38.    Subsection **9.3** <u>**Conformance with State Statutes**</u> is deleted in its entirety and replaced with the following:

**9.3    <u>Conformance with State Statutes</u>**

In the event of any inconsistency between the state amendatory attached to this Policy and any term or condition of this Policy, the **Insurer** will resolve the inconsistency by applying the provision that is more favorable to the **Insured**, to the extent permitted by applicable law.

39.    Subpart (A) of Subsection **9.4** <u>**Cancellation or Non-Renewal**</u> is deleted in its entirety and replaced with the following:

(A)    **<u>Cancellation</u>**

This Policy may not be cancelled by the **Insurer**, except for non-payment of **Premium**. In such event, the **Insurer** shall mail by first class, certified mail or electronic mail notice of cancellation for non-payment of **Premium** to the **Company**, at the last address known to the **Insurer**, and to the **Company's** authorized representative. Such notice will state the effective date of cancellation, which will not be less than fifteen (15) days after mailing such notice. Proof of mailing will be sufficient proof of notice.

This Policy may be cancelled by the **Policyholder** on behalf of all **Insureds** at any time during the **Policy Period** stating the date thereafter that the cancellation shall be effective. If this Policy is cancelled by the **Policyholder**, the **Insurer** shall return the unearned **Premium** for the Policy which shall be calculated on a pro-rata basis.

This Policy may not be cancelled by the **Policyholder**: (1) during the **Discovery Period**, once elected; or (2) after the **Policyholder** undergoes a **Change of Control**.

40.    Subsection **9.6** <u>**Governing Law and Jurisdiction**</u> is deleted in its entirety and replaced with the following:

**9.6    <u>Governing Law and Jurisdiction</u>**

© 2021 Allianz Global Risks US Insurance Company.
All rights reserved.


This Policy shall be governed by the laws of the state of the principal address of the **Policyholder** as stated in Item 1 of the Declarations, except as provided by definition of **Loss** in the applicable **Coverage Part**. This Policy shall be subject to the exclusive jurisdiction of the Courts in the state of the **Policyholder's** Principal Address as stated in Item 1 of the Declarations.

41.    Subsection **9.14 <u>Alternative Dispute Resolution Proceeding</u>** is deleted in its entirety.

ALL OTHER TERMS, CONDITIONS AND LIMITATIONS REMAIN UNCHANGED.

© 2021 Allianz Global Risks US Insurance Company.
All rights reserved.



## Aon Amendatory Endorsement
**(Directors, Officers, and Company Liability Schedule and Coverage Part)**

| Policy Number | Effective Date |
|---|---|
| USF00981121 | August 18, 2021 |

**Policyholder: Entourage Commerce, LLC**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under:

**Private Company Protect**

It is agreed that:

I.    The Directors, Officers and Company Liability Coverage Part Schedule of the Declarations is amended as follows:

Item 7.c. Additional Limit of Liability of the Directors, Officers and Company Liability Coverage Part Schedule is deleted in its entirety and replaced with:

| c.   Additional Limit of Liability | |
|---|---|
| Additional **Limit of Liability** for **Non-Executive Director Excess Limit of Liability** per **Non-Executive Director:** | $1,000,000 |
| Aggregate additional **Non-Executive Director Excess Limit of Liability** for all **Claims** against all **Non-Executive Directors** combined | $1,000,000 |
| Additional **Limit of Liability** for -**Executive Director Excess Limit of Liability** per **Non-Executive Director:** | $1,000,000 |
| Aggregate additional **Executive Director Excess Limit of Liability** for all **Claims** against all **Non-Executive Directors** combined | $1,000,000 |

II.   The Directors, Officers and Company Liability Coverage Part is amended as follows:

1.    Section 1. Insuring Agreements is deleted in its entirety and replaced with:

**Insuring Agreements**

The coverage under this **Coverage Part** is afforded solely with respect to **Claims** or **Events** reported to the **Insurer** as required by Section 4. Notification of Claims, Events and Circumstances in the General Terms and Conditions of this Policy.

### 1.1    Directors and Officers Coverage

The **Insurer** shall pay or indemnify, on behalf of each **Insured Person**, **Non-Indemnifiable Loss** on account of any: (1) **Claims** alleging a **Wrongful Act** first made against an **Insured Person**; or (2) **Events** received, commenced or occurring during the **Policy Period** or, if exercised, the **Discovery Period**.

© 2021 Allianz Global Risks US Insurance Company.
All rights reserved.



**1.2  Company Reimbursement Coverage**

The **Insurer** shall pay or indemnify, on behalf of a **Company**, **Loss** for which such **Company** grants indemnification to an **Insured Person**, on account of any: (1) **Claims** alleging a **Wrongful Act** first made against an **Insured Person**; or (2) **Events** received, commenced or occurring during the **Policy Period** or, if exercised, the **Discovery Period**.

**1.3  Company Coverage**

The **Insurer** shall pay or indemnify, on behalf of a **Company**, **Loss** on account of any: (1) **Claims** alleging a **Wrongful Act** first made against an **Insured**; or (2) **Events** received, commenced or occurring during the **Policy Period** or, if exercised, the **Discovery Period**.

2.  Section 2. Coverage Extensions is amended by adding:

**2.8  Canadian Corporate Tax Extension**

Subject to the terms, conditions and limitations of this Policy, and where legally permissible, the **Insurer** shall pay **Non-Indemnifiable Loss** of an **Executive** of a **Subsidiary** incorporated or formed in Canada arising from a **Section 227.1 Claim** made against such **Executive**, provided that (i) any event identified in Section 2271(2) (a)-(c) of the Canadian Income Tax Act shall have occurred prior to the **Claim** made against the **Insured**; and (ii) the **Company** agrees to indemnify and hold the **Insurer** harmless from any payment made to or on behalf of any **Executive** pursuant to the coverage granted by this Subsection.

**2.9  Class Certification Event Study Expenses**

The **Insurer** shall pay **Class Certification Event Study Expenses** in response to a covered **Securities Claim** made against an **Insured**.

**2.10  Nominal Defendant Response Costs**

The **Insurer** shall pay **Nominal Defendant Response Costs** incurred by a **Company** as a nominal defendant.

3.  Subsection 3.3 (**Claim**) is deleted in its entirety and replaced with:

**Claim** means any:

(A)  written demand for monetary, non-monetary or injunctive relief alleging a **Wrongful Act**, or any request to toll or waive any statute of limitations, commenced by the receipt of such demand or request by an **Insured**;

(B)  civil, criminal, administrative or regulatory proceeding, including arbitration, mediation or any other alternative dispute resolution process or proceeding, for monetary, non-monetary or injunctive relief alleging a **Wrongful Act** which is commenced by: (a) service of a complaint or similar pleading; (b) return of an indictment, information or similar document (in the case of a criminal proceeding); or (c) receipt of filing of a notice of charges upon an **Insured**; or

(C)  civil, criminal, administrative or regulatory investigation of an **Insured Person** alleging a **Wrongful Act** by an **Official Body** which is commenced by: (1) a written statement from a regulator, government body, government agency, judicial agency or official trade body identifying such **Insured Person** as the subject of an investigation, including any target letter, Wells notice, subpoena or similar document; or (2) the arrest, detainment or incarceration for more than twenty-four (24) hours of an **Insured Person** by any law enforcement authority in an **International Jurisdiction**. An investigation shall be deemed to be first made when the **Insured Person** is first so identified, served, arrested or detained.

**Claim** shall include any **Securities Claim**, **Derivative Demand**, **Extradition Proceeding**, **Selling Shareholder Claim**, and **Section 227.1 Claim**. **Claim** shall not include an **Event**.

   © 2021 Allianz Global Risks US Insurance Company.
All rights reserved.



4.   Subsection 3.4 (**Company Crisis Event**) is deleted in its entirety and replaced with:

**Company Crisis Event** means: (1) a **Claim** made against the **Company** covered under this Policy that the General Counsel (or equivalent position) of the **Policyholder** reasonably believes will exceed the applicable **Retention**; (2) the Chief Executive Officer, Chief Financial Officer or General Counsel (or equivalent positions) of the **Policyholder** becoming aware of a **Wrongful Act** by the **Company** that he/she reasonably believes is likely to lead to a **Claim** being made against an **Insured** and covered under this Policy resulting in **Loss** in excess of applicable **Retention**; (3) the delisting of any securities of a **Company** or the restatement of financials of a **Company**; or (4) a **Cyber Event**, provided that: (a) such **Claim**, **Wrongful Act** or **Cyber Event** was first made, first known or first occurred (respectively) during the **Policy Period**; and (b) written notice is given of such **Claim** or matter in accordance with Section 4. Notification of Claims, Events and Circumstances of this Policy.

**Company Crisis Event** does not include an industry-wide event that affects a number of entities in that industry. A **Company Crisis Event** shall be deemed to be first made against an **Insured** when such **Company Crisis Event** first occurs. A **Company Crisis Event** shall conclude the earlier of: (1) the **Crisis Communication Consultant** advises the **Policyholder** that such **Company Crisis Event** no longer exists; (2) when the additional supplemental **Limit of Liability** as set forth in Item 5.b. the Declarations.has been exhausted; or (3) 12 months after the inception of the **Company Crisis Event**.

5.   Subsection 3.5 (**Cyber Event**) is deleted in its entirety and replaced with :

**Cyber Event** means a **Wrongful Act** of an **Insured Person** which results in a failure by the **Company** to prevent:

(A)   any actual or alleged unauthorized disclosure by the **Company** or an **Insured Person** of any Personal Information belonging to a natural person employee or customer of the **Company** or any unauthorized access or use of such natural person's Personal Information stored in a computer system which is owned and operated by the **Company** which causes harm to such natural person; or

(B)   any intrusion into the computer system owned and operated by the **Company**, or from such computer system to a third party´s computer system, that is designed to modify, alter, damage, destroy or delete information without authorization, or to cause the suspension or delay of network operations of such computer system, including any denial of service attack;

that is first discovered during the **Policy Period**.  "Personal Information" means information, the loss or theft of which, triggers notification requirements to such natural person pursuant to federal, state or foreign breach notification laws.

6.   Subsection 3.7 (**Derivative Demand Costs**) is amended by adding:

**Derivative Demand Costs** shall include **Books and Records Costs** and **Special Litigation Committee Costs**.

7.   Subsection 3.11 (**Expenses**) is deleted in its entirety and replaced with:

**Expenses**, for the purposes of the Directors, Officers and Company Liability **Coverage Part**, shall also mean **Pre-Claim Inquiry Costs**, **Asset and Liberty Protection Costs** and **UK Corporate Manslaughter Act Investigation Costs**.

8.   Subsection 3.13 (**Extradition Proceedings**) is deleted in its entirety and replaced with:

**Extradition Proceedings** means any formal process or proceeding first commenced against an **Insured Person** during the **Policy Period** by the service on such **Insured Person** by an **Official Body** of any written request for extradition pursuant to a treaty or any official notice following a request for extradition, or the execution of an arrest warrant (including an appeal or separate proceedings to overturn an extradition order) in order to surrender such **Insured Person** from one country to another to answer criminal allegations.

     © 2021 Allianz Global Risks US Insurance Company.
All rights reserved.



9. Subsection 3.14 (**Insured**) is amended by adding:

**Insured** shall include a Political Action Committee ("PAC") sponsored by the **Policyholder**; and a bankruptcy trustee, liquidator, conservator, rehabilitator, receiver or similar official or entity.

10. Subsection 3.15 (**Insured Person**) is amended by adding:

**Insured Person** shall include a **Selling Shareholder**, but only with respect to a **Selling Shareholder Claim**, and if such **Selling Shareholder Claim** is part of a **Claim** that is brought and maintained concurrently against an **Insured Person** as defined in paragraphs (A) through (F) above (other than such **Selling Shareholder** or any other **Selling Shareholder**) in such capacity.

11. Subsection 3.19 (**Loss**) is deleted in its entirety and replaced with:

**Loss** means:

(A) amounts which the **Insured** is legally liable to pay, including settlements, damages, judgments and pre- and post-judgment interest, on a covered judgment or award, as well as plaintiff's counsel fees and costs if awarded pursuant to a covered judgment or award against an **Insured** or consented to by the **Insurer** in any settlement;

(B) **Defense Costs**, **Derivative Demand Costs, Extradition Proceedings Costs** and **Class Certification Event Study Expenses**;

(C) **Expenses**;

(D) **SOX 304 and Dodd Frank 954 Clawback Costs**;

(E) taxes actually assessed against an **Executive** pursuant to **Section 227.1**, any related penalties and interest actually assessed against such **Executive** pursuant to **Section 227.1** and **Defense Costs** incurred in connection with a **Claim** brought against an **Executive** pursuant to **Section 227.1**; and

(F) civil:

(1) penalties assessed against any **Insured Person** pursuant to Section of the Foreign Corrupt Practices Act §2(g)(2)(b) (15 U.S.C. §S 78dd-2(g)(2)(b), 78ff(c)(2)(B)), Sarbanes-Oxley Act of 2002 §308 (15 U.S.C. 7246(a)), or United Kingdom's Bribery Act 2010 (2010 chapter 23), if insurable by law; or

(2) penalties, civil fines, and taxes that an **Insured Person** is obligated to pay if such fines, penalties or taxes are insurable by law and are imposed in connection with such **Insured Person**'s service with a **Company** that has entered **Financial Insolvency**.

With respect to judgments in which: (i) punitive, exemplary, or multiplied damages are awarded; (ii) include fines, penalties, or taxes described in Subsections (E) and (F) of this Definition; or (iii) any amounts to which paragraph (e) of this Definition may apply, coverage provided by this Policy shall be determined under the internal laws of any applicable jurisdiction most favorable to the **Insured**, including without limitation the jurisdiction in which the **Company**, the **Insured Person**, the **Insurer**, this Policy, or such **Claim** is located or has a substantial relationship.

**Loss**, other than **Defense Costs**, shall not include:

(a) fines, penalties, or taxes, other than those set described in Subsections (E) and (F) of this Definition;

(b) the price or consideration paid or proposed to be paid for the acquisition or completion of the acquisition of all or substantially all the ownership interest in or assets of an entity is inadequate. **Loss** with respect to such **Claim** shall not include any amount of any judgment or settlement representing the amount by which such price or consideration is effectively increased; provided, this shall not apply to any **Non-Indemnifiable Loss** in connection with such **Claim**;

© 2021 Allianz Global Risks US Insurance Company.
All rights reserved.



(c)     social security benefits; employment termination severance payments, other than any such payments negotiated with and consented to by the **Insurer** as part of a settlement; commissions or employment related benefits of any kind, including any contributions to an employee benefit plan;

(d)     costs incurred by an **Insured** to comply with an order for non-monetary relief, including declaratory and injunctive relief, or with any agreement to provide such relief; or

(e)     any amount which is uninsurable under the law pursuant to which this Policy is construed; provided that the **Insurer** will not assert that the portion of any settlement or judgment in a **Claim** arising from an initial or subsequent public offering of the **Company's** securities constitutes uninsurable loss due to the alleged violations of Sections 11, 12 or 15 of the Securities Act of 1933 as amended (including alleged violations of Sections 11 or 12 of the Securities Act of 1933 by a Controlling Person pursuant to Section 15 of the Securities Act of 1933); provided further that the **Insurer** will not assert that any amount attributable to violations of Section (c) of the JOBS Act constitutes uninsurable loss.

12.     The second paragraph of Subsection 3.20 (**Personal Crisis Event**) is deleted in its entirety and replaced with:

**Personal Crisis Event** does not include an industry-wide event that affects a number of entities in that industry, rather than the **Company** specifically. The **Personal Crisis Event** must first be received or commenced, or must first occur, during the **Policy Period**. A **Personal Crisis Event** shall be deemed to be first made, received, commenced, or occurring when such **Event** first occurs. A **Personal Crisis Event** shall conclude the earlier of: (1) once the **Crisis Communication Consultant** advises the **Executive** and **Insurer** that such **Personal Crisis Event** no longer exists; (2) when the supplemental **Limit of Liability** stated in the Item 5.a. of the Declarations has been exhausted; or (3) 12 months after the inception of the **Personal Crisis Event**.

13.     Subsection 3.21 (**Pre-Claim Inquiry**) is deleted in its entirety and replaced with :

**Pre-Claim Inquiry** means with respect to an **Insured Person**: (1) a raid on, or onsite visit to any **Company** or any **Outside Entity** by an **Official Body** that involves the production, review, copying or confiscation of documents or interviews of such **Insured Person**; (2) any formal written notification by an **Official Body** to a **Company**, an **Outside Entity** or an **Insured Person** of a suspected material breach of an **Insured Person's** legal or regulatory duty; or (3) the receipt by such **Insured Person** of a formal notice from an **Official Body** which legally compels such **Insured Person** to produce documents to, or answer questions by, or attend interviews with, that **Official Body**. A **Pre-Claim Inquiry** shall not include industry-wide or sector investigations, hearings, examinations or inquiries or any routine or regular regulatory audit, examination, inspection or review.

14.     Subsection 3.25 (**Securities Claim**) is amended by adding :

**Securities Claim** also means a **Claim** brought by any securityholder of an **Acquisition Target**, in their capacity as such, alleging that the **Insured** aided and abetted any:

(A)     breach of fiduciary duty owed to the **Acquisition Target's** shareholders; or

(B)     violation of securities law by the **Acquisition Target** regarding the **Company's** acquisition or proposed acquisition of the **Acquisition Target**;

provided that coverage for such **Claim** shall be limited to **Defense Costs** as incurred only. There shall be no coverage for any other **Loss** in connection with such **Claim**.

15.     Subsection 3.28 (**Wrongful Act**) is deleted in its entirety and replaced with :

**Wrongful Act** means any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty actually or allegedly committed or attempted by:

© 2021 Allianz Global Risks US Insurance Company.
All rights reserved.


(A)    an **Insured Person**, while acting in his or her scope and capacity as such; an **Executive** in his or her capacity as a **Control Person**; or any matter claimed against an **Insured Person** solely by reason of their serving in such capacity or as an **Outside Entity Executive**; or

(B)    the **Company**.

Solely with respect to a **Selling Shareholder**, **Wrongful Act** also means **Selling Shareholder Wrongful Act**.

16.    Section 3. Definitions is amended by adding:

**3.29  Acquisition Target** means any entity that the **Company** has acquired or proposed to acquire in a transaction that results in or would result in such entity becoming a **Subsidiary**.

**3.30  Books and Records Costs** means reasonable and necessary costs, charges, fees, and expenses consented to by the **Insurer** and incurred by the **Company** in response to a written demand by or on behalf of any shareholder of such **Company** to inspect the books and records of such **Company** pursuant to Section 220 of the Delaware General Corporation Law or any similar statute in any other jurisdiction.

**3.31  Class Certification Event Study Expenses** means reasonable and necessary fees, costs, charges and expenses incurred with the prior written consent of the **Insurer**, such consent not to be unreasonably withheld or delayed, by an **Insured** for an event study conducted by an expert witness to oppose a class certification in a **Securities Claim**, providing evidence for the court regarding the impact, if any, of an alleged misrepresentation by the **Insured** on the development of the market price of the **Company´s** securities. If obtaining such event study in a **Securities Claim** is recommended to the **Insured** by a lawyer already appointed or approved by the **Insurer** in connection with the **Securities Claim**, no prior written consent of the **Insurer** for the incurring of such fees, costs, charges and expenses is required.

**3.32  Compensation Clawback Event** means the receipt by an **Insured Person** of notice from an **Official Body** of its intent to seek the return or repayment of such **Insured Person's** incentive-based compensation solely as a result of the **Company's** or another **Insured Person's** actual or alleged violation of Section 304(a) of the Sarbanes-Oxley Act of 2002, Section 954(b) of the Dodd-Frank Act of 2010 or any equivalent foreign statute.

**3.33  Control Person** means any **Executive** that controls a **Company** within the meaning of Section 15 of the Securities Act of 1933 (as amended) or Section 20(a) of the Securities Exchange Act of 1934 (as amended) or any similar law.

**3.34  Nominal Defendant Response Costs** means the reasonable and necessary legal and related fees, costs, and expenses incurred with the **Insurer's** prior written consent that are incurred by a **Company** as a nominal defendant in any lawsuit against an **Insured** brought derivatively on behalf of the **Company** by a security holder of the **Company**. **Nominal Defendant Response Costs** shall not include **Derivative Demand Costs**.

**3.35  Offering** means any actual or proposed offering of securities of a **Company** described in a registration statement filed pursuant to the Securities Act of 1933 (as amended) or any similar state or foreign securities law in connection with a public offering.

**3.36  Section 227.1** means Section 227.1 of the Canadian Income Tax Act.

**3.37  Section 227.1 Claim** means any action, proceeding or investigation against an **Executive** commenced by Revenue Canada pursuant to **Section 227.1** that is commenced by a notice of investigation or similar document.

**3.38  Selling Shareholder** means any duly elected or appointed natural person director or officer of a **Company** serving in such capacity on or prior to the inception date of this Policy, who at the time of such service, originates or participates in an **Offering** within the meaning of Section 12(2) of the Securities Exchange Act of 1933 (as amended).

© 2021 Allianz Global Risks US Insurance Company.
All rights reserved.



**3.39** **Selling Shareholder Claim** means a **Claim** made against a **Selling Shareholder** for a **Selling Shareholder Wrongful Act**.

**3.40** **Selling Shareholder Wrongful Act** means any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty actually or allegedly committed or attempted by a **Selling Shareholder** in his or her capacity as such or any matter claimed against him or her by reason of his or her status as a **Selling Shareholder**.

**3.41** **SOX 304 and Dodd Frank 954 Clawback Costs** means reasonable and necessary fees, costs, charges and expenses (other than regular or overtime wages, salaries, bonuses, stock options, or fees or any other form of compensation of any **Insured Person** or the directors, officers or employees of the **Company**) consented to by the **Insurer** in writing (including the premium or origination fee for a loan or bond, provided the **Insurer** shall have no obligation to apply for or furnish such bonds) and incurred on account of a **Compensation Clawback Event** by:

(A) the chief executive officer or chief financial officer of the **Company**, solely to determine the amounts required to be returned or to be repaid by such **Insured Person** pursuant to Section 304(a) of the Sarbanes-Oxley Act of 2002 or any foreign equivalent statute; or

(B) an **Insured Person** of the **Company**, solely to determine the amounts required to be returned or to be repaid by such **Insured Person** pursuant to Section 954(b) of the Dodd-Frank Act of 2010 or any foreign equivalent statute;

provided, however, that **SOX 304 and Dodd Frank 954 Clawback Costs** do not include the payment, return, reimbursement, disgorgement or restitution of any amounts required to be repaid by such **Insured Persons**.

**3.42** **Special Litigation Committee Costs** means reasonable and necessary fees, costs, charges and expenses consented to in writing by the **Insurer**, such consent not to be unreasonably withheld or delayed, incurred by a special litigation committee formed by any **Company** solely to investigate a **Derivative Demand**.

17. Subsection 4.1 (Bodily Injury and Property Damage) is deleted in its entirety and replaced with:

**Bodily Injury and Property Damage**

(A) for bodily injury, sickness, disease, mental anguish or emotional distress, or death of any person howsoever caused; provided, however, that this Exclusion shall not apply to:

(1) **Non-Indemnifiable Loss**;

(2) **UK Corporate Manslaughter Act Investigation Costs**; or

(3) **Defense Costs** for any:

(a) proceeding against an **Insured** pursuant to Section 32 of the Ontario Occupational Health and Safety Act;

(b) criminal proceeding brought against an **Insured** alleging a violation of Section 217.1 of the Criminal Code, R.S.C. 1985, c. C-46 (Bill C-45); or

(c) proceeding brought against an **Insured** pursuant to any similar statutes, whether Canadian or foreign, as set forth in subparagraphs (a) and (b) above;

provided, however, such coverage is legally permissible;

(B) for damage to or loss of or destruction of any tangible property, including the loss of use thereof. Data and programs shall not be considered tangible property in the context of this Exclusion.

© 2021 Allianz Global Risks US Insurance Company.
All rights reserved.



18. Subsection 4.2 (Employment Related and Third Party Discrimination Claims) is deleted in its entirety and replaced with:

**Employment Related and Third Party Discrimination Claims**

for an employment-related discrimination or harassment claim, third party discrimination claim or third party harassment claim; provided, however, that this Exclusion shall not apply to a: (1) **Securities Claim**; or (2) **Derivative Demand**.

19. Subsection 4.3 (Entity v. Insured) is deleted in its entirety and replaced with:

**Insured v. Insured**

which is brought by or on behalf of an **Insured** against any other **Insured**, or by an **Outside Entity** against an **Outside Entity Executive**, provided that this Exclusion shall not apply:

(A) to **Defense Costs** that constitute **Non-Indemnifiable Loss** incurred by any **Insured Person** in defending any **Claim** against that **Insured Person**;

(B) to any **Claim** brought by or on behalf of a whistleblower pursuant to any domestic or foreign law against an **Insured Person**;

(C) to the extent a **Claim** is brought derivatively by or on behalf of a securityholder of the **Company** if such **Claim** is made and maintained independently and without the solicitation, assistance, participation, or intervention of: (i) an **Insured Person**; (ii) the **Company**; or (iii) an **Outside Entity**; provided whistleblower activity as defined in 18 U.S.C. 1514A(a) (the Sarbanes-Oxley Act of 2002), or any similar applicable domestic or foreign law, does not alone constitute solicitation, assistance, participation, or intervention;

(D) if the **Company** is the subject of a bankruptcy case (or the equivalent in a foreign jurisdiction);

(E) against an **Insured Person** (in his or her capacity as such), who has not been an **Insured Person** or consultant for at least 12 months prior to the date the **Claim** was first made;

(F) to any **Claim** brought by or on behalf of an **Employee**, other than an **Executive**, in his or her capacity as a shareholder of a **Company**;

(G) to any cross-claim or third-party claim for contribution or indemnity arising from another **Claim** otherwise covered under this Policy; or

(H) to any **Claim** brought outside the **United States of America**.

20. Subsection 4.5 (Securities) is deleted in its entirety and replaced with :

**Securities**

based upon or arising out of, or in any way involving, any public offering of securities or the purchase or sale of such securities subsequent to any public offering; provided, however, that this exclusion shall not apply to any **Claim**:

(A) for a **Wrongful Act** in an offering of securities of a **Company** in a transaction that is exempt from registration under the Securities Act of 1933 or any foreign equivalent;

(B) made by any securityholders of a **Company** for the failure of such **Company** to undertake or complete an initial public offering of securities of such **Company**; or

(C) for a misrepresentation during the preparation for an initial public offering of securities of any **Company** that does not occur, including any **Claim** alleging a **Wrongful Act** during a "road show".

    © 2021 Allianz Global Risks US Insurance Company.
All rights reserved.



21.   Subsection 4.6 (Exclusions Applicable to Subsection 1.3 (Company Coverage) Only) is deleted in its entirety and replaced with :

**Exclusions Applicable to Subsection 1.3 (Company Coverage) Only**

with respect to Subsection 1.3 (Company Coverage) only, which is alleging, arising out of, based upon, attributable to, involving, directly or indirectly, or as a consequence of:

(A)   any actual or alleged plagiarism, misappropriation, infringement or violation of any copyright, patent, trademark, trade secret, trade name, trade dress, service mark, title, slogan, domain, brand or any other intellectual property rights;

(B)   any false arrest, wrongful detention or imprisonment, malicious prosecution, defamation, including libel and slander, invasion of privacy or wrongful entry or eviction; or

(C)   any actual or alleged malfunction or recall of any product or failure of any product to perform in any manner as a result of any actual or alleged defect, deficiency, inadequacy or dangerous condition in such product or in its design or manufacturer.

Provided, however, that the foregoing Subsection 4.6 shall not apply to a **Securities Claim**.

22.   The following is added to Section 4, Exclusions:

**4.7   Contractual Liability**

with respect to Subsection 1.3 (Company Coverage) only, for any actual or alleged contractual liability of the **Company** or any other **Insured** under any express contract or agreement; provided, however, that this exclusion shall not apply: (1) to liability which would have attached in the absence of such express contract or agreement; or (2) to a **Securities Claim**.

**4.8   Professional Services**

with respect to Subsection 1.3 (Company Coverage) only, for the **Insured's** rendering of, or failure to render, any services for others for a fee or other consideration, or any act(s), error(s) or omission(s) relating thereto; provided, however, that this exclusion shall not apply to a **Securities Claim**.

No conduct, fact pertaining to, or knowledge possessed by any **Insured** shall be imputed to any other **Insured** for the purpose of determining the applicability of the foregoing Exclusions (Section 4).

ALL OTHER TERMS, CONDITIONS AND LIMITATIONS REMAIN UNCHANGED.

      © 2021 Allianz Global Risks US Insurance Company.
All rights reserved.



# Aon Amendatory Endorsement
## (Fiduciary Liability Coverage Part)

| Policy Number | Effective Date |
|---|---|
| USF00981121 | August 18, 2021 |

**Policyholder: Entourage Commerce, LLC**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

**Private Company Protect**

It is agreed that:

The Fiduciary Liability Coverage Part is amended as follows:

1. Section **2. Coverage Extensions** is amended by adding the following:

   **2.8 Extradition Proceedings Costs**

   The **Insurer** shall pay **Extradition Proceeding Costs** of an **Insured Person** as a result of an **Extradition Proceeding**.

2. Subsection **3.1 Administration** is deleted in its entirety and replaced with the following:

   **3.1 Administration** means one or more of the following administrative duties or activities, but only with respect to a **Plan**:

   (A) giving advice or counsel to employees, participants or beneficiaries, including advice related to health care exchanges under the Affordable Care Act;

   (B) providing interpretations;

   (C) handling records;

   (D) determining and calculating benefits;

   (E) preparing, distributing or filing required notices or documents; or

   (F) the enrollment of, termination of or cancellation of employees, participants or beneficiaries under the **Plan**.

3. Subsection **3.3 Claim** is deleted in its entirety and replaced with the following:

   **3.3 Claim** means:

   (A) a written demand for monetary, non-monetary or injunctive relief (including any request to toll or waive any statute of limitations) commenced by the receipt of such written demand by an **Insured**;

   (B) a civil, criminal, administrative, regulatory, arbitration, mediation or other alternative dispute resolution proceeding for monetary, non-monetary or injunctive relief which is commenced by: (1) service of a complaint or similar pleading; (2) return of an indictment, information or similar document (in the case of a criminal proceeding); or (3) receipt of filing of a notice of charges upon an **Insured**; or

   (C) any investigation of an **Insured Person**, solely in his or her capacity with respect to a **Plan**, commenced by the **Insured Person's** receipt of a written document from an **Official Body** identifying such **Insured Person** as the target of an investigation, including a Wells Notice, target letter or search warrant;

© 2021 Allianz Global Risks US Insurance Company.
All rights reserved.



alleging a **Wrongful Act**.

**Claim** shall not include an **Event**.

4.  Subpart (C) of Subsection **3.6 Employee Benefit Law** is deleted in its entirety and replaced with the following:

    (C)   solely with respect to paragraph (B) in the Definition of **Wrongful Act**, workers' compensation, unemployment insurance, Social Security, government-mandated disability benefits or similar law.

5.  Subsection **3.9 Event** is deleted in its entirety and replaced with the following:

    **3.9**   **Event** for the purposes of the Fiduciary Liability **Coverage Part** shall mean any **Fact Finding Investigation Event**, **Internal Appeal Event**, **Fiduciary Pre-Claim Inquiry**, **Company Crisis Event** or **Personal Crisis Event**.

6.  Subsection **3.10 Fact Finding Investigation Event** is deleted in its entirety and replaced with the following:

    **3.10**   **Fact Finding Investigation Event** means any investigation into a possible violation of **Employee Benefit Law** with respect to a **Plan** by any governmental authority in the **U.S.** or **International Jurisdiction**.

7.  Subsection **3.12 Insured** is deleted in its entirety and replaced with the following:

    **3.12**   **Insured**, for the purposes of the Fiduciary Liability **Coverage Part**, shall mean **Insured Persons**, any **Plan**, any **Plan Committee** and any **Company**. **Insured** shall also mean any corporate trustee formed and operating outside the **United States of America** and established by a **Company** and duly appointed to act as a trustee of any **Plan**.

8.  Subsection **3.13 Insured Person** is deleted in its entirety and replaced with the following:

    **3.13**   **Insured Person** means any natural person who was, is or during the **Policy Period** becomes:

    (A)   an **Executive**;

    (B)   a **Non-Executive Director**;

    (C)   any **Outside Entity Executive**;

    (D)   a prospective director or officer in any listing particulars, prospectus, circular or similar document issued by any **Company**;

    (E)   an employee, including full-time, part-time, seasonal, leased and temporary employees, volunteers and interns;

    (F)   a former **Executive** or employee, including full-time, part-time, seasonal, leased and temporary employees, volunteers and interns, serving in a consulting or an advisory capacity to any **Plan** if such person is indemnified by a **Company** in the same manner as is provided to other **Insured Persons**

    (G)   with regard to any **Insured Person** defined in (A) – (C) of this definition and only with respect to **Wrongful Acts** committed by such **Insured Persons**: (1) the lawful spouse or civil or domestic partner as defined in any applicable federal, state or foreign legislation of such **Insured Person** where recovery is sought solely because joint property is held or owned by or on behalf of the spouse or civil or domestic partner; and (2) the legal representatives, heirs, assigns or estates of such **Insured Persons** in the event of their death, incapacity, insolvency or bankruptcy;

    solely while acting in his or her capacity as a fiduciary, trustee or settlor of a **Plan**, or in the **Administration** of a **Plan** (including a position equivalent to the foregoing in an **International Jurisdiction**).

    **Insured Persons** shall also include any member of a **Plan Committee** in his or her capacity as a fiduciary or trustee of a **Plan** or the **Administration** of a **Plan**. With respect to a **Plan** in an **International Jurisdiction**, **Insured Persons** shall include the foreign equivalent members of a **Plan Committee** while performing the foreign equivalent tasks in the **Administration** of a **Plan**.

    **Insured Person** shall not include any individual in his or her capacity as an employee of any third party, other than an **Outside Entity Executive**, including, but not limited to, a service provider, unless scheduled by endorsement to this Policy.

© 2021 Allianz Global Risks US Insurance Company.
All rights reserved.



9.  The third paragraph of Subsection **3.15 Loss** is deleted in its entirety and replaced with the following:

With respect to judgments in which punitive, exemplary or multiplied damages are awarded or any amounts to which paragraph (D) of this Definition may apply, coverage provided by this Policy shall be determined under the internal laws of any applicable jurisdiction most favorable to the Insured, including, without limitation, the jurisdiction in which the **Insured** or the **Insurer** is domiciled; where this Policy is issued; or where such **Claim** is located or has a substantial relationship.

10. Subsection **3.17 Management Control** is deleted in its entirety.

11. Subsection **3.21 Plan Committee** is deleted in its entirety and replaced with the following:

**3.21 Plan Committee** means employee benefit committee including, but not limited to, any plan investment or administration committee that is established by a **Company** and that is comprised of at least one **Insured Person**, but only in its capacity as a fiduciary or trustee of a **Plan** or in its administration of a **Plan**.

12. Subsection **3.26 Wrongful Act** is amended to include the following at the end thereof:

(G) allegation made against an **Insured** for improper selection of, or inadequate monitoring of, third party service providers with respect to a **Plan**.

13. Section **3. Definitions** is amended to include the following:

**3.27 Extradition Proceeding** means any formal process or proceeding first commenced against an **Insured Person** during the **Policy Period** by the service on such **Insured Person** by an **Official Body** of any official notice following a request for extradition, a written request for extradition pursuant to a treaty or the execution of an arrest warrant (including an appeal or separate proceedings to overturn an extradition order) in order to surrender such **Insured Person** from one country to another to answer criminal allegations.

**3.28 Extradition Proceeding Costs** means reasonable and necessary fees, costs, charges and expenses incurred with the prior written consent of the **Insurer**, such consent not to be unreasonably withheld or delayed, by an **Insured Person** in lawfully opposing, challenging, resisting or defending an **Extradition Proceeding** against such **Insured Person**, including an appeal thereof.

**3.29 Fiduciary Pre-Claim Inquiry** means any written request upon an **Insured Person** for witness testimony or document production commenced by the service of a subpoena or other similar document compelling such testimony or production of documents; provided, however, that in such event the **Company** shall pay, on behalf of such **Insured Person**, **Defense Costs** incurred solely by such **Insured Person** in responding to such request.

**3.30 Fiduciary Pre-Claim Inquiry Costs** means reasonable and necessary fees, costs, charges and legal expenses incurred with the prior written consent of the **Insurer**, such consent not to be unreasonably withheld or delayed, incurred by the **Insured Person** solely in connection with their preparation for and response to a **Fiduciary Pre-Claim Inquiry**. **Fiduciary Pre-Claim Inquiry Costs**, however, shall not include: (a) any fees, costs, travel expenses or other compensation of an **Insured Person**; and (b) the administrative costs of producing, copying or searching for documents, records or electronic information.

14. The last paragraph of Section **4. Exclusions** is deleted in its entirety and replaced with the following:

No conduct, fact pertaining to or knowledge possessed by any **Insured** shall be imputed to any other **Insured** for the purpose of determining the applicability of the foregoing exclusions.

ALL OTHER TERMS, CONDITIONS AND LIMITATIONS REMAIN UNCHANGED.

© 2021 Allianz Global Risks US Insurance Company. All rights reserved.



# Named Co-Defendant Extension
## (Private Equity and Venture Capital Firms)

| Policy Number | Effective Date |
|---|---|
| USF00981121 | August 18, 2021 |

**Policyholder: Entourage Commerce, LLC**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

**Private Company Protect**

It is agreed that the General Terms and Conditions are amended as follows:

I.   The Coverage Extensions Section is amended to add the following:

   **Named Co-Defendant Extension**

   Coverage afforded under this Policy shall extend to a **Named Co-Defendant** for any **Claim** made against a **Named Co-Defendant**, provided that:

   A.   such **Claim** is for an actual or alleged **Wrongful Act** of an **Insured** and is jointly made and continuously maintained against both an **Insured** and a **Named Co-Defendant**;

   B.   a **Named Co-Defendant** becomes a co-defendant in such **Claim** by reason of its actual or alleged status as a controlling shareholder; and

   C.   an **Insured** and a **Named Co-Defendant** are represented by the same legal counsel.

II.   The Definitions Section is amended to add the following:

   **Named Co-Defendant** means the **Sponsor Organization** or any **Affiliated Entity** or any directors, officers, general partners, managing members or employees (or their functional equivalents) of any **Sponsor Organization** or **Affiliated Entity**.

   **Sponsor Organization** means The Carlyle Group

   **Affiliated Entity** means any entity that is:

   A.   a pooled investment vehicle created, managed or controlled by the **Sponsor Organization**;

   B.   an investment or management company controlled by the **Sponsor Organization** that renders services to a pooled investment vehicle in paragraph (A) above; or

   C.   a special purpose vehicle created, managed or controlled by the **Sponsor Organization** for the purpose of making an acquisition of the **Policyholder**.

ALL OTHER TERMS, CONDITIONS AND LIMITATIONS REMAIN UNCHANGED.

© 2016 Allianz Global Corporate & Specialty SE.
All rights reserved.

**Allianz (ll)**

# Other Insurance Provision Amended
## (Security Holder of the Policyholder)

| Policy Number | Effective Date |
|---|---|
| USF00981121 | August 18, 2021 |

**Policyholder: Entourage Commerce, LLC**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

**Private Company Protect**

It is agreed that:

The Other Insurance for the Liability Coverage Parts Section of the General Terms and Conditions is deleted in its entirety and replaced with the following:

### Other Insurance

This insurance shall be specifically excess over, and not contribute with, any other valid and collectible insurance, except such insurance that is specifically written as excess over this Policy.

However, with respect to a management and professional liability insurance policy issued to a security holder of the **Policyholder**, coverage under this Policy shall apply as primary insurance for **Loss** attributable to the **Wrongful Acts** of an **Executive**, without regard to any indemnification which may be owed to such **Executive** by such security holder.

Notwithstanding the above, in the event of a **Claim** against an **Outside Entity Executive** arising out of his or her service as a director, officer, trustee, governor or equivalent of an **Outside Entity**, this policy shall be specifically excess of any indemnification provided by such **Outside Entity** and any valid and collectible insurance provided to such **Outside Entity**.

ALL OTHER TERMS, CONDITIONS AND LIMITATIONS REMAIN UNCHANGED.

© 2016 Allianz Global Corporate & Specialty SE.
All rights reserved.



## Entity Anti-Trust Claim Defense Costs Sub-Limit of Liability
### (D&O Coverage Part)

| Policy Number | Effective Date |
|---|---|
| USF00981121 | August 18, 2021 |

**Policyholder: Entourage Commerce, LLC**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

**Private Company Protect**

It is agreed that solely with respect to coverage pursuant to the Directors, Officers and Company Liability **Coverage Part**:

I.   The Directors, Officers and Company Liability **Coverage Part** is amended as follows:

    A.   The following is added to the Insuring Agreement Section:

        The **Insurer** shall pay **Defense Costs** of a **Company** resulting from an **Anti-Trust Claim** alleging a **Wrongful Act** first made against a **Company** during the **Policy Period** or, if exercised, the **Discovery Period**.

    B.   The following is added to the Definitions Section:

        **Anti-Trust Claim** means any **Claim** made against a **Company** for any actual or alleged violation of any law, whether statutory, regulatory or common law, respecting any of the following activities: anti-trust, restraint of trade, unfair business competition, unfair trade practices or tortious interference in another's business or contractual relationships.

II.  The General Terms and Conditions is amended as follows:

    A.   The Sub-Limits of Liability Subsection is amended to add the following to the end thereof:

        It is further understood that a Sub-Limit of Liability in the amount of one million ($1,000,000) shall apply to all **Anti-Trust Claims** made and reported during the **Policy Period** or **Discovery Period** (if applicable) combined (hereinafter the "**Anti-Trust Claim Sub-Limit of Liability**"). Such **Anti-Trust Claim Sub-Limit of Liability** is part of, and not in addition to, the Limit of Liability set forth in Item 7a. of the Directors, Officers and Company Liability **Coverage Part** Schedule in the Declarations. This Sub-Limit of Liability shall in no way be deemed to increase the **Aggregate Limit of Liability** set forth in Item 3. of the Declarations.

    B.   The second paragraph in the Application of Retention to All Coverage Parts Subsection is amended to add the following to the end thereof:

        With respect to an **Anti-Trust Claim**, the **Insurer** shall be liable to pay only **Defense Costs** excess of the **Retention** of $500,000, up to the **Anti-Trust Claim Sub-Limit of Liability**. Such **Retention** shall be borne uninsured by the **Company** and at its own risk. If different parts of a single **Anti-Trust Claim** are subject to different applicable **Retentions** under the Directors, Officers and Company Liability **Coverage Part**, the applicable **Retentions** will be applied separately to each part of such **Loss** (including **Defense Costs**), but the sum of such **Retentions** shall not exceed the largest applicable **Retention**.

ALL OTHER TERMS, CONDITIONS AND LIMITATIONS REMAIN UNCHANGED.

 © 2016 Allianz Global Risks US Insurance Company. All rights reserved.



# Products Exclusion, Including False Advertising - Absolute
## (D&O Coverage Part)

| Policy Number | Effective Date |
|---|---|
| USF00981121 | August 18, 2021 |

**Policyholder: Entourage Commerce, LLC**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

**Private Company Protect**

It is agreed that the Directors, Officers and Company Liability Coverage Part is amended as follows:

Section **4. Exclusions** is amended as to add the following:

## Product

Under this **Coverage Part**, the **Insurer** shall not be liable for **Loss** on account of any **Claim** or **Event** alleging, arising out of, based upon, attributable to, involving, directly or indirectly, or as a consequence of:

A.  any actual or alleged malfunction or recall of any product or failure of any product to perform in any manner as a result of any actual or alleged defect, deficiency, inadequacy or dangerous condition in such product or in its design or manufacture; or

B.  any actual or alleged inadequate, inaccurate or incomplete description of the price of goods, products, services and cost guarantees, cost representations, cost estimates and the authenticity of any goods, products or services or the failure of any goods, products or services to conform with any representation regarding their quality or performance.

ALL OTHER TERMS, CONDITIONS AND LIMITATIONS REMAIN UNCHANGED.

© 2020 Allianz Global Risks US Insurance Company.
All rights reserved.

**About Allianz**

Your insurance company is part of the Allianz Group – an organization with a 125-year history of partnering with clients and delivering exceptional insurance products around the world.

Allianz is the world's largest property & casualty insurance company by revenue and has one of the strongest financial ratings of the leading global property & casualty insurers. The strength of its financial ratings and quality of its people make Allianz the insurer of choice for thousands of mid-size businesses and the majority of Global Fortune 500° companies.

Allianz is also ranked "one of the world's most admired companies" by Fortune and "one of the top 100 global brands" by Interbrand.



## Policyholder Amended Endorsement

| Policy Number | Effective Date | Producer |
|---|---|---|
| USF00981121 | November 12, 2021 | Aon |

**Policyholder: Entourage Commerce, LLC**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

**Private Company Protect**

It is agreed that:

Item 1 of the Declarations is deleted in its entirety and replaced with the following:

Item 1. **Policyholder**: Packable Holdings, LLC
Principal Address: 1516 Motor Parkway
Islandia, NY 11749

State of Formation: Delaware

ALL OTHER TERMS, CONDITIONS AND LIMITATIONS REMAIN UNCHANGED.

© 2015 Allianz Global Corporate & Specialty SE.
All rights reserved.



# Definition Amended Endorsement – Company
## Additional Entities (Separate P&P Date)

| Policy Number | Effective Date |
|---|---|
| USF00981121 | November 12, 2021 |

**Policyholder: Packable Holdings, LLC**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

**Private Company Protect**

It is agreed that:

I.  The term **Company** in the Definitions Section of the General Terms and Conditions is amended to include the entity(ies) listed in the SCHEDULE below.

| SCHEDULE | |
|---|---|
| Entity | **Pending and Prior Date** |
| Entourage Commerce, LLC | 12/27/2017 |

II.  Solely with respect to the entities listed in the SCHEDULE, Item 7. of the Declarations for the purchased **Coverage Parts** is amended with respect to each entity as set forth above.

III.  The **Insurer** shall not be liable for that portion of **Loss** on account of any **Claim** or **Event** against the entities listed in the SCHEDULE alleging arising out of, based upon, attributable to or as a consequence of any civil, criminal, administrative, regulatory, arbitration, mediation proceeding or **Claim** initiated or commencing prior to or pending as of such entity's respective **Pending and Prior Date** as set forth in the SCHEDULE; or alleging or deriving from the same or essentially the same facts as alleged in such action or claims or any **Related Claim** or **Related Event** thereto.

ALL OTHER TERMS, CONDITIONS AND LIMITATIONS REMAIN UNCHANGED.

© 2016 Allianz Global Corporate & Specialty SE.
All rights reserved.



# Declarations Amended Endorsement – Policy Period

| Policy Number | Effective Date |
|---|---|
| USF00981121 | August 18, 2022 |

**Policyholder:  Packable Holdings, LLC**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

**Private Company Protect**

In consideration of the payment of additional premium of $ 0, it is agreed that:

Item 2 of the Declarations is deleted in its entirety and replaced with the following:

Item 2.     **Policy Period**:       From:       August 18, 2021
                                       To:           August 18, 2023
                                       The **Policy Period** incepts and expires as of 12:01 AM at the
**Policyholder's** principal address.

ALL OTHER TERMS, CONDITIONS AND LIMITATIONS REMAIN UNCHANGED.

 © 2017 Allianz Global Risks US Insurance Company.
All rights reserved.



# Discovery Period Elected

| Policy Number | Effective Date | Producer |
|---|---|---|
| USF00981121 | August 18, 2022 | <producer> |

**Policyholder: Packable Holdings, LLC**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

**Private Company Protect**

It is agreed that:

In consideration of the additional premium of $420,000, it is agreed that:

1. Item 2 of Declarations is deleted in its entirety and replaced with the following:

   **Policy Period**: From: August 18, 2022
   To: August 18, 2029

   The **Policy Period** incepts and expires as of 12:01 AM at the **Policyholder's** principal address.

2. **Discovery Period** in **Coverage Extensions** is deleted in its entirety and replaced with the following:

   **Discovery Period**

   The **Policyholder** shall have the right to give written notice to the **Insurer** of **Claims** first made against an **Insured** during the **Elected Discovery Period** for any **Wrongful Act** occurring on or prior to the **Effective Time** and otherwise covered by this Policy.

   The premium for the **Elected Discovery Period** is fully earned as of the inception of the **Elected Discovery Period**.

Notwithstanding any other provision of this Policy, this Policy shall not provide coverage for any **Wrongful Acts** or **Events** occurring after the **Effective Time**.

Solely with respect to coverage afforded pursuant to this endorsement, the following is added to **Definitions**:

**Effective Time** means 12:01 am August 18, 2023

**Elected Discovery Period** means the period of Six (6) year(s) following the **Effective Time** which terminates with the expiry of the **Policy Period** as amended in Item 2.

ALL OTHER TERMS, CONDITIONS AND LIMITATIONS REMAIN UNCHANGED.

© 2015 Allianz Global Corporate & Specialty SE.
All rights reserved.



**STATE FRAUD STATEMENT**

**NEW YORK**

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.



**POLICYHOLDER NOTICE**

**ECONOMIC AND TRADE SANCTIONS**

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by the Office of Foreign Assets Control (OFAC).

**THE OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") OF THE US DEPARTMENT OF THE TREASURY ADMINISTERS AND ENFORCES ECONOMIC AND TRADE SANCTIONS BASED ON US FOREIGN POLICY AND NATIONAL SECURITY GOALS AGAINST TARGETED FOREIGN COUNTRIES AND REGIMES, TERRORISTS, INTERNATIONAL NARCOTICS TRAFFICKERS, THOSE ENGAGED IN ACTIVITIES RELATED TO THE PROLIFERATION OF WEAPONS OF MASS DESTRUCTION, AND OTHER THREATS TO THE NATIONAL SECURITY, FOREIGN POLICY OR ECONOMY OF THE UNITED STATES.**

**WHENEVER COVERAGE PROVIDED BY THIS POLICY WOULD BE IN VIOLATION OF ANY U.S. ECONOMIC OR TRADE SANCTIONS, SUCH COVERAGE SHALL BE NULL AND VOID.**

**FOR MORE INFORMATION, PLEASE REFER TO:**

***HTTPS://WWW.TREASURY.GOV/RESOURCE-CENTER/SANCTIONS/PAGES/DEFAULT.ASPX***



**POLICYHOLDER DISCLOSURE**

**NOTICE OF TERRORISM INSURANCE COVERAGE**

The Terrorism Risk Insurance Act established a program (Terrorism Risk Insurance Program) within the Department of the Treasury, under which the federal government shares, with the insurance industry, the risk of loss from future terrorist attacks.  You are hereby notified that an "act of terrorism", as defined in Section 102(1) of the Terrorism Risk Insurance Act , as amended  (the "Act"), means any act that is certified by the Secretary of the Treasury—in consultation with the Secretary of Homeland Security, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Under your coverage, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Terrorism Risk Insurance Act, as amended. However, your policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events. Under the formula, the United States Government generally reimburses 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019 and 80% beginning on January 1, 2020, of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The Terrorism Risk Insurance Act, as amended, contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

Please note that your policy includes the terrorism coverage required to be offered by the Act, and that no separate additional premium charge has been made for such terrorism coverage.  The policy premium does not include any charges for the portion of losses covered by the United States government under the Act.

**NOTICE TO BROKER**

**MANDATORY POLICYHOLDER DISCLOSURE**

**RE: TERRORISM INSURANCE COVERAGE**

We are required by the Terrorism Risk Insurance Act, as amended (the "Act"), to provide policyholders with clear and conspicuous disclosures. This notice must be provided at the time of offer and renewal of the policy.

*Includes copyrighted material 2015 National Association of Insurance Commissioners*

## DECLARATIONS

> **NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

THE LIMITS OF INSURANCE UNDER THIS POLICY MAY BE COMPLETELY EXHAUSTED BY LEGAL DEFENSE COSTS. THE INSURER SHALL NOT BE LIABLE FOR LEGAL DEFENSE COSTS, JUDGMENTS, SETTLEMENTS, OR ANY OTHER AMOUNTS AFTER EXHAUSTION OF THE APPLICABLE LIMIT OF INSURANCE.

SOLELY AS RESPECTS THE CLAIMS-MADE LIABILITY COVERAGES UNDER THIS POLICY:

THIS POLICY:

1. IS WRITTEN ON A CLAIMS-MADE BASIS;

2. PROVIDES NO COVERAGE FOR CLAIMS ARISING OUT OF INCIDENTS, OCCURRENCES OR ALLEGED WRONGFUL ACTS WHICH TOOK PLACE PRIOR TO THE RETROACTIVE DATE, IF ANY, STATED IN THE POLICY; AND

3. COVERS ONLY CLAIMS ACTUALLY MADE AGAINST THE INSURED WHILE THE POLICY REMAINS IN EFFECT (OR INCIDENTS REPORTED IF THE INSURER UTILIZES WRITTEN NOTICE OF INCIDENT AS THE TRIGGER OF COVERAGE UNDER THE POLICY) AND ALL COVERAGE UNDER THE POLICY CEASES UPON THE TERMINATION OF THE POLICY, EXCEPT FOR ANY AUTOMATIC EXTENDED REPORTING PERIOD COVERAGE, UNLESS THE INSURED PURCHASES ADDITIONAL EXTENDED REPORTING PERIOD COVERAGE.

UPON TERMINATION OF COVERAGE FOR ANY REASON, AN AUTOMATIC EXTENDED REPORTING PERIOD OF AT LEAST 60 DAYS WILL BE GRANTED AT NO ADDITIONAL CHARGE. THE NAMED INSURED WILL BE ABLE TO PURCHASE AN OPTIONAL EXTENDED REPORTING PERIOD STATED IN THE POLICY UNLESS, DURING THE FIRST YEAR OF COVERAGE, THIS POLICY IS TERMINATED FOR NON-PAYMENT OF PREMIUM. TO AVOID A GAP IN COVERAGE AFTER THE EXPIRATION OF THE OPTIONAL EXTENDED REPORTING PERIOD, THE RETROACTIVE DATE IN ANY REPLACEMENT POLICY SHOULD EXTEND AT LEAST AS FAR BACK AS ANY RETROACTIVE DATE IN THIS POLICY.

DURING THE FIRST SEVERAL YEARS OF THE CLAIMS-MADE RELATIONSHIP, CLAIMS-MADE RATES ARE COMPARATIVELY LOWER THAN OCCURRENCE RATES, AND INSUREDS CAN EXPECT SUBSTANTIAL ANNUAL PREMIUM INCREASES, INDEPENDENT OF OVERALL RATE LEVEL INCREASES, UNTIL THE CLAIMS-MADE RELATIONSHIP REACHES MATURITY.

| | |
|---|---|
| **NAMED INSURED AND ADDRESS** | Packable Holdings, LLC<br>1516 Motor Parkway<br>Islandia, NY 11749 |
| **BROKER OF RECORD** | Aon Risk Services Central, Inc. -Panel Only [Chicago]<br>200 East Randolph Street<br>Chicago, IL 60601 |

Class Code: 2-14177



| INSURER | AXIS Insurance Company (Admitted) |
|---|---|
| | 111 South Wacker Drive, Suite 3500 |
| | Chicago, IL 60606 |
| | (866) 259-5435 |
| | ***A Stock Insurer*** |
| **POLICY FORM** | AXIS SIDE A - DIRECTORS & OFFICERS AND DIFFERENCE-IN-CONDITIONS LIABILITY POLICY AXIS 1011251 0618 |
| **POLICY NUMBER** | P-001-000639420-01 |
| **POLICY PERIOD** | Effective Date:  08/18/2021 |
| | Expiration Date: 08/18/2022 |
| | *Both dates at 12:01 a.m. at the Named Insured's address stated herein.* |

| TOTAL POLICY PREMIUM | **$65,000.00** |
|---|---|
| **MINIMUM EARNED PREMIUM** *(percentage of Total Policy Premium)* | N/A |

| TERRORISM PREMIUM FOR CERTIFIED ACTS OF TERRORISM *(included in Total Policy Premium)* | Included for no additional premium |
|---|---|
| **SURCHARGE / TAX** *(included in Total Policy Premium)* | N/A |

*All Limits of Insurance below are aggregate amounts for the respective coverages unless otherwise noted.*

| POLICY LIMIT OF INSURANCE ||
|---|---|
| **Policy Limit** *(applicable to all coverages unless otherwise noted)* | **$5,000,000 Aggregate** |

| Claims-Made Coverages | Coverage Limit |
|---|---|
| Side A and Difference-in-Conditions | $5,000,000 |

Class Code: 2-14177



| SCHEDULE OF UNDERLYING INSURANCE |
| --- |

| PRIMARY | |
| --- | --- |
| **Coverage Description** | Private Company Project |
| **Insurer** | Allianz Global Risks US Insurance Company |
| **Policy Number** | USF00981121 |
| **Aggregate Limit of Insurance** | $5,000,000 |

| FIRST EXCESS | |
| --- | --- |
| **Insurer** | Everest National Insurance Company |
| **Policy Number** | PC5EX00424-211 |
| **Aggregate Limit of Insurance** | $5,000,000 excess of $5,000,000 |

Class Code: 2-14177





| EXTENDED REPORTING PERIOD OPTIONS *(applicable to claims made coverages)* | |
|---|---|
| **Year** | **Percentage of Annualized Claims Made Premium** |
| 1 Year | 100% |
| 6 Year | 200% |

| NOTICES TO INSURER | |
|---|---|
| *Send Notice of Claims To:* | *Send All Other Notices And Inquiries To:* |
| AXIS Insurance<br>Claims Department<br>P.O. Box 4470<br>Alpharetta, GA 30023-4470<br><br>Email: USFNOL@axiscapital.com<br>Phone (Toll-Free): (866) 259-5435<br>Phone: (678) 746- 9000<br>Fax: (866) 770-5629 | AXIS Insurance<br>10000 Avalon Blvd.<br>Suite 200<br>Alpharetta, GA 30009<br><br>Email: notices@axiscapital.com<br>Phone (Toll-Free): (866) 259-5435<br>Phone: (678) 746- 9000<br>Fax: (678) 746-9444 |

Class Code: 2-14177



| SCHEDULE OF FORMS & ENDORSEMENTS | | |
|---|---|---|
| **Policyholder Notices and Policy Forms** | | **Form Number and Edition Date** |
| State Fraud Statement | | AXIS 104 0415 |
| Policyholder Notice - Economic And Trade Sanctions | | AXIS 906 0316 |
| Policyholder Disclosure - Notice Of Terrorism Insurance Coverage | | TRIA DISCLOSURE 0115 |
| AXIS Side A - Directors & Officers and Difference-In-Conditions Liability Policy | | AXIS 1011251 0618 |
| Signature Page | | AXIS 102AIC 0615 |
| **Endorsements** | | **Form Number and Edition Date** |
| 1 | Prior Acts Exclusion Endorsement | AXIS 1010556 0919 |
| 2 | Cap on Losses from Certified Acts of Terrorism Endorsement | AXIS 1011040 0817 |
| 3 | New York Amendatory Endorsement | AXIS 1011255 1219 |

Class Code: 2-14177


Except for section and paragraph headings, all terms in bold have a special meaning as set forth in the **DEFINITIONS** section. Section and paragraph headings are provided for informational purposes only and do not have special meaning.

In consideration of payment of the premium, and subject to all provisions of this Policy and the DECLARATIONS and endorsements attached to this Policy, all of which are made a part of this Policy, the Insurer designated in the DECLARATIONS will provide the Coverages included in this Policy for which a Limit of Insurance is stated in the DECLARATIONS.

## CLAIMS-MADE LIABILITY COVERAGE

### Side A and Difference-in-Conditions Coverage

The Insurer will pay **Loss** that the **Insured Individual** becomes legally obligated to pay arising from a **Claim** first made against such **Insured Individual** during the **Policy Period** or the **Extended Reporting Period**, if applicable, for a **Wrongful Act** that takes place prior to the end of the **Policy Period**; provided that:

1. such **Claim** is reported to the Insurer accordance with the **REPORTING OF CLAIMS AND EVENTS** section; and

2. the **Entity**, any **Outside Entity**, and any one or more of the insurers of any **Underlying Insurance** have **Failed to Indemnify** such **Loss** to the **Insured Individual**.

## EXPENSE COVERAGES

If the **Entity** or any **Insured Individual** elects in their sole discretion to notify the Insurer in writing of an **Event** in accordance with the **REPORTING OF CLAIMS AND EVENTS** section, coverage with respect to such **Event** shall apply as follows:

A. **Claw Back Expense Coverage**

   The Insurer will pay **Claw Back Expense** arising from a **Claw Back Event** that first occurs during the **Policy Period**, provided that:

   1. such **Claw Back Expense** is incurred after the date notice of such **Claw Back Event** is given to the Insurer; and

   2. the **Entity**, any **Outside Entity**, and any one or more of the insurers of any **Underlying Insurance** have **Failed to Indemnify** such **Claw Back Expense** to the **Insured Individual**.

B. **Insured Inquiry Expense Coverage**

   The Insurer will pay **Insured Inquiry Expense** arising from an **Insured Inquiry Event** that first occurs during the **Policy Period**; provided that:

   1. such **Insured Inquiry Expense** is incurred after the date notice of such **Insured Inquiry Event** is given to the Insurer; and

   2. the **Entity**, any **Outside Entity**, and any one or more of the insurers of any **Underlying Insurance** have **Failed to Indemnify** such **Insured Inquiry Expense** to the **Insured Individual**.



## DEFINITIONS

Whether expressed in the singular or the plural, whenever appearing in bold in this Policy, the following terms have the meanings set forth below; provided that this Policy shall follow any similar terms contained in any **Underlying Insurance**, as of the inception date of the Policy, that result in more favorable coverage for the **Insured Individuals** than the following terms.

**Application** means the written application for this Policy, if any, and all written information and material attached thereto, incorporated therein, or submitted by or on behalf of the **Insured Individuals** to the Insurer in connection with the underwriting of this Policy.

**Claim** means:

1. a written demand for monetary relief or non-monetary or injunctive relief, including a written request to toll or waive a statute of limitations or engage in any alternative dispute resolution process;

2. a civil, criminal, or administrative or regulatory proceeding or arbitration or any appeal therefrom;

3. a subpoena, written order of investigation, or written notice of charges by a **Government Authority** identifying the **Insured Individual** as a person against whom a civil, criminal, or administrative or regulatory proceeding may be commenced, including a Wells Notice or other target letter; or

4. a request for the extradition of the **Insured Individual** or the arrest or confinement of the **Insured Individual** by a **Government Authority**.

**Claims-Made Liability Coverage** means any Coverage designated as such in this Policy.

**Claw Back Event** means a written demand by the **Entity**, pursuant to its written compensation recoupment policy or Section 304(a) of the Sarbanes-Oxley Act of 2002 or Section 954 of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, against an **Insured Individual** seeking recovery of compensation or other amounts paid to such **Insured Individual**.

**Claw Back Expense** means reasonable costs incurred by the **Insured Individual** with the prior written approval of the Insurer to defend or investigate a **Claw Back Event**, or to facilitate payment by the **Insured Individual** of amounts owed pursuant to a **Claw Back Event**, including the premium or origination fee for a bond or loan, and fees of any attorney or other professional hired to assist the **Insured Individual** in obtaining such bond or loan or other financing; provided, however, that **Claw Back Expense** does not mean or include any amounts for which the **Insured Individual** is or becomes liable under any compensation recoupment law or policy.

**Defense Costs** means reasonable expenses incurred by the **Insured Individuals** in investigating, opposing, defending, settling, or appealing covered **Claims**, including attorney and expert fees, court costs, alternative dispute resolution proceeding costs, the cost of appeal or release attachment bonds for amounts within the applicable Limit of Insurance, but the Insurer does not have to furnish these bonds; and expenses incurred by the **Insured Individual** at the Insurer's request, excluding loss of earnings, salaries, benefits, and other compensation paid to any **Insured Individual**.

**Entity** means, individually and collectively, the **Policyholder** or any **Subsidiary**, including any such entity as a debtor in possession within the meaning of the United States Bankruptcy Code or similar legal status under foreign law.

**Event** means a **Claw Back Event** or an **Insured Inquiry Event**.

**Expense Coverage** means any Coverage designated as such in this Policy.

**Extended Reporting Period** means a designated period of time after the cancellation or nonrenewal of the **Policy Period** for reporting **Claims** to the Insurer that are made against the **Insured Individuals** during such period of time, provided that such **Claims** arise out of **Wrongful Acts** that take place before the end of the **Policy Period**.



**Failed to Indemnify** means the **Entity**, any **Outside Entity**, and any one or more of the insurers of any **Underlying Insurance**:

1. have failed or refused, within 60 days after written notice of **Loss**, **Claw Back Expense**, or **Insured Inquiry Expense**, to indemnify or advance such **Loss**, **Claw Back Expense**, or **Insured Inquiry Expense** to the **Insured Individual**, for any or no reason;

2. are financially unable or legally prohibited to indemnify or advance **Loss**, **Claw Back Expense**, or **Insured Inquiry Expense** to the **Insured Individual**;

3. have rescinded, voided, or cancelled any **Underlying Insurance**; or

4. solely with respect to any **Underlying Insurance**, such insurer either is not liable for or is not obligated to indemnify or advance **Loss**, **Claw Back Expense**, or **Insured Inquiry Expense** to the **Insured Individual** because such **Loss** or **Covered Expense** exceed the limits of insurance of such **Underlying Insurance**.

**Government Authority** means any federal, state, local, or foreign government official or authority, including any court, regulator, administrator, or similar body.

**Independent Director** means one or more **Insured Individuals** described in item 1 in the definition of **Insured Individual** below, but only if such person is not and never has been an officer or employee of the **Entity**.

**Insured Executive** means any **Insured Individual** while serving as the **Policyholder's** chief executive officer, chief financial officer, in-house general counsel, or the functional equivalents of any of the foregoing.

**Insured Individual** means any natural person who was or is:

1. a duly elected or appointed director (including a de facto or shadow director), officer, or trustee (other than an insolvency or bankruptcy trustee) of any **Entity** that is a corporation; a manager or member of the board of managers of any **Entity** that is a limited liability company; or a general partner or managing partner of any **Entity** that is a partnership or joint venture;

2. the in-house general counsel, comptroller, controller, risk manager, head of investor relations, or head of human resources of the **Entity**, or a member of any duly constituted advisory board or advisory committee of the **Entity**; or

3. the functional equivalents of any of the foregoing.

**Insured Inquiry Event** means a subpoena, written demand, or other verifiable request that an **Insured Individual** appear for an interview or meeting, provide testimony, or produce the **Insured Individual's** documents in connection with:

1. the **Entity's** business or the **Insured Individual's** capacity as such, if such demand, subpoena, or other verifiable request is made by any **Government Authority**, including any such request pursuant to the United Kingdom's Corporate Manslaughter and Corporate Homicide Act, 2007; or

2. the **Entity's** investigation of a shareholder derivative demand, if such demand, subpoena, or other verifiable request is made by the **Entity** (including its Board of Directors or committee thereof) or its legal counsel;

provided such demand, subpoena, or other verifiable request is not part of a routine or regularly scheduled audit, inspection, or general oversight or compliance activity.

**Insured Inquiry Expense** means reasonable expenses incurred by the **Insured Individual** with the prior written approval of the Insurer to respond to an **Insured Inquiry Event**.



**Loss** means:

1. monetary judgments, awards, or settlements, including attorney's fees, costs, exemplary, multiplied, or punitive damages, pre-judgment interest, and post-judgment interest included as part of a judgment or award, and **Defense Costs**; and

2. fines or penalties, insurable under the law applicable to this Policy, imposed for any unintentional and non-willful violation of law, including such penalties imposed under 15 U.S.C. §§ 78dd-2(g)(2)(B) or 78ff(c)(2)(B) of the Foreign Corrupt Practices Act or Section 11(1)(a) of Chapter 23 of the U.K. Bribery Act 2010;

In determining the insurability of exemplary, multiplied, or punitive damages or any other **Loss** defined above, the law of the jurisdiction most favorable to the insurability of such amounts will apply; provided that such jurisdiction is (i) where such amounts were awarded or imposed; (ii) where the **Wrongful Act** underlying the **Claim** took place; or (iii) where either the Insurer, the **Policyholder**, or the **Insured Individual** is incorporated, has its principal place of business, or resides.

**Loss**, however, does not include:

1. amounts for which the **Insured Individuals** are legally or financially absolved from payment; or

2. amounts that are uninsurable under the law applicable to this Policy; provided the Insurer shall not assert that **Loss** is uninsurable due to an actual or alleged violation of Section 11, 12, or 15 of the Securities Act of 1933, as amended.

**Management Control** means the **Policyholder** directly or indirectly owns more than 50% of the issued and outstanding voting equity securities of an entity or controls voting rights representing the present right to elect or appoint more than 50% of the directors or trustees of an entity.

**Outside Entity** means any not-for-profit entity that is not an **Entity**.

**Outside Position** means the position of director, officer, trustee, or other equivalent executive position in an **Outside Entity** held by an **Insured Individual**, if service in such position is with the express consent and knowledge of the **Entity**.

**Policyholder** means the entity designated as such in the DECLARATIONS.

**Policy Period** means the period designated as such in the DECLARATIONS, subject to earlier termination, as set forth in the Policy.

**Related Claim** means all **Claims** arising out of a single **Wrongful Act** or **Related Wrongful Acts**.

**Related Claw Back Event** means all **Claw Back Events** that have as a common nexus any fact, circumstance, situation, event, transaction, cause, or series of causally or logically connected facts, circumstances, situations, events, transactions, or causes.

**Related Event** means all **Events** arising out of a single **Event** or **Related Claw Back Events** or **Related Insured Inquiry Events**.

**Related Insured Inquiry Events** means all **Insured Inquiry Events** that have as a common nexus any fact, circumstance, situation, event, transaction, cause, or series of causally or logically connected facts, circumstances, situations, events, transactions, or causes.

**Related Wrongful Act** means all **Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, transaction, cause, or series of causally or logically connected facts, circumstances, situations, events, transactions, or causes.

**Subsidiary** means any entity that is or was under **Management Control**, as of the effective date of this Policy, or after the effective date of this Policy, subject to the **New and Former Entities** condition below.



**Underlying Insurance** means the insurance policies identified as such in the Schedule of Underlying Insurance, if any, in the DECLARATIONS.

**Wrongful Act** means any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty by the **Insured Individual** in his or her capacity as such or in an **Outside Position**, or any matter claimed against the **Insured Individual** by reason of his or her status as an **Insured Individual** or in an **Outside Position**.

## EXCLUSIONS

The Policy does not apply to **Claims**:

**Illegal Profit or Conduct**

based upon or arising out of:

1. any financial personal profit, remuneration, or financial advantage to which the **Insured Individual** was not legally entitled; or

2. any willful violation of any statute or regulation or any deliberately fraudulent or criminal act, error, or omission committed by the **Insured Individual**;

provided that such conduct is evidenced by a final and non-appealable adjudication adverse to the **Insured Individual** in the underlying action other than an action brought for a violation of Section 11, 12, or 15 of the Securities Act of 1933. For the purpose of applying this exclusion, the acts, errors, or omissions of any **Entity** or **Insured Individual** will not be imputed to any other **Insured Individual**. This exclusion, however, shall not apply to **Independent Directors**.

## LIMITS OF INSURANCE

The Insurer's liability under this Policy will not exceed the Limits of Insurance stated in the DECLARATIONS no matter how many **Insured Individuals** are covered, **Claims** are made against the **Insured Individuals**, or **Wrongful Acts** or **Events** occur.

A. **Policy Limit of Insurance**

Except as otherwise set forth in this Policy, the Policy Limit of Insurance stated in the DECLARATIONS ("Policy Limit") is the most the Insurer will pay under this Policy.

B. **Aggregate Limit of Insurance**

Any Aggregate Limit of Insurance stated in the DECLARATIONS ("Aggregate Limit") shall be the most the Insurer will pay under this Policy for all **Loss** or other amounts that are subject to such Aggregate Limit.

C. **Coverage Limits of Insurance**

Subject to the Policy Limit and any applicable Aggregate Limit, the Limit of Insurance for each Coverage stated in the DECLARATIONS ("Coverage Limit") is the most the Insurer will pay under each respective **Claims-Made Liability Coverage** or **Expense Coverage**.

Any Sublimit of Insurance stated in the DECLARATIONS ("Sublimit") shall be part of, not in addition to, any applicable Coverage Limit and shall be the most the Insurer will pay under each respective **Claims-Made Liability Coverage** or **Expense Coverage** for all **Loss** or other amounts that are subject to such Sublimit.

**Defense Costs** are part of, not in addition to, the Coverage Limits for the **Claims-Made Liability Coverages** and payment of **Defense Costs** by the Insurer reduces and may totally exhaust such Coverage Limits.



D.  **Reinstated Limit of Insurance**

If a Reinstated Limit of Insurance is displayed in the DECLARATIONS ("Reinstated Limit"), then in the event the Policy Limit is exhausted, the Reinstated Limit shall apply to the **Side A and Difference-in-Conditions Coverage**; provided that the Reinstated Limit:

1.  shall not apply to:

    a.  **Loss** arising from any **Claim** or **Related Claim** for which **Loss** has been paid; or

    b.  any **Claim** based upon or arising out of essentially the same **Wrongful Act** underlying or alleged in any **Event** or **Related Event** for which **Claw Back Expense** or **Insured Inquiry Expense** has been paid; and

2.  shall be excess of all other insurance specifically excess of this Policy and all **Underlying Insurance** that provides a reinstated limit of insurance.

E.  **Additional Limit of Insurance for Independent Directors**

If an Additional Limit of Insurance for **Independent Directors** is displayed in the DECLARATIONS ("Additional Limit for Independent Directors"), then in the event the Reinstated Limit is exhausted or, if none, the Policy Limit is exhausted, the Additional Limit for Independent Directors shall apply to covered **Loss** of the **Independent Directors**; provided that such Additional Limit for Independent Directors shall be excess of all other insurance specifically excess of this Policy.

## DEFENSE AND SETTLEMENT OF CLAIMS

The Insurer has no duty to defend any **Claims** made against the **Insured Individuals**.

The **Insured Individuals** will not settle or offer to settle any **Claim**, pay any **Loss**, incur any **Defense Costs**, admit or assume any liability, stipulate to any judgment or award, or otherwise assume any contractual obligation with respect to a **Claim** without the Insurer's prior written consent, which shall not be unreasonably withheld. The Insurer shall not be liable for any settlement, assumed obligation, admission, stipulated judgment, or **Defense Costs** to which it has not consented.

The Insurer will have the right and will be given the opportunity to effectively associate with the **Insured Individuals** in the defense and settlement of any **Claim**.

The Insurer will advance **Defense Costs** on a current basis, but no later than 60 days after the Insurer receives itemized invoices for such **Defense Costs**; provided that to the extent it is finally established that any such **Defense Costs** are not covered under this Policy, the **Insured Individuals**, severally according to their interests, shall repay such **Defense Costs** to the Insurer.

## REPORTING OF CLAIMS AND EVENTS

A.  **When a Claim is Made or an Event Occurs**

1.  With respect to the **Claims-Made Liability Coverage**, a **Claim** will be deemed to be first made on the earlier of:

    a.  the date of any **Insured Individual's** receipt of notice of such written demand, if such **Claim** is a written demand for monetary relief or non-monetary or injunctive relief or a written request or to toll or waive a statute of limitations or engage in any alternative dispute resolution process;

    b.  the date of service upon or other receipt by any **Insured Individual** of a summons, complaint, indictment or information, warrant, or similar pleading or charging document in any such proceeding, if such **Claim** is a civil, criminal, extradition, or administrative or regulatory proceeding, an arbitration, or an appeal.



   c.   the date of any **Insured Individual's** receipt of notice of such investigation, if such **Claim** is a subpoena, written order of investigation, written notice of charges, or Wells Notice or other target letter from a **Government Authority**.

All **Related Claims**, whenever made, will be considered a single **Claim** and such **Claim** will be deemed to have been made on the date the first of those **Related Claims** was made against any **Insured Individual**.

2.   With respect to the **Expense Coverages**, an **Event** will be deemed to occur when the **Event** becomes known to any **Insured Individual**.

All **Related Events**, whenever occurring, will be considered a single **Event** and such **Event** will be deemed to have occurred on the date the first of those **Related Events** occurred.

B.  **Reporting of Claims or Events**

It is a condition precedent to coverage under:

1.   the **Claims-Made Liability Coverage** that as soon as any **Insured Individual** becomes aware of any **Claim** the **Entity** or the **Insured Individual** must notify the Insurer in writing as soon as practicable, but in no event later than 60 days after the end of the **Policy Period** or, with respect to a **Claim** made during the **Extended Reporting Period**, if applicable, no later than the expiration thereof.

2.   the **Expense Coverage** that the **Insured Individual** notify the Insurer in writing of any **Event** no later than 60 days after the end of the **Policy Period**. Such notice shall include full details of the **Event**.

Even if a **Claim** arises out of the same actual or alleged **Wrongful Act**, act, error, omission, fact, or circumstance in any **Event** previously reported to the Insurer, it is a condition precedent to coverage for such **Claim** that it be separately reported to the Insurer as set forth in item 1 above.

C.  **Reporting of Circumstances under Claims-Made Liability Coverages**

If during the **Policy Period** or the **Extended Reporting Period**, if applicable, the **Entity** or an **Insured Individual** gives the Insurer written notice of any **Wrongful Act**, **Event**, act, error, omission, fact, or circumstance that occurred before the end of the **Policy Period** and is reasonably likely to give rise to a **Claim** with full details of:

1.   such **Wrongful Act**, **Event**, act, error, omission, fact, or circumstance or **Event**, including any available information on persons or entities involved;

2.   the nature and extent of the potential damages and the names of the potential claimants; and

3.   the manner in which the **Insured** first became aware of such **Wrongful Act**, **Event**, act, error, omission, fact, or circumstance or **Event**;

then any such **Claim** subsequently arising out of such **Wrongful Act**, **Event**, act, error, omission, fact, or circumstance or **Event** will be deemed to have been made during the policy period in which such notice was given. In order for coverage to apply to any such **Claim**, the **Entity** or **Insured Individual** must provide notice to the Insurer of such **Claim** in accordance with paragraph B above. No coverage will be provided for any **Loss** incurred prior to the time such **Claim** is made unless otherwise authorized in writing by the Insurer.

## EXTENDED REPORTING PERIODS

If the **Policyholder** cancels or nonrenews this Policy or the Insurer nonrenews this Policy, the **Policyholder** or the **Insured Individuals** will have the right to purchase an optional **Extended Reporting Period** to immediately follow the effective date of cancellation or nonrenewal.



The optional **Extended Reporting Periods** and their respective additional premiums are stated in the DECLARATIONS. The Insurer must receive written notice of the optional **Extended Reporting Period** elected together with payment of the applicable additional premium, within 60 days after the end of the **Policy Period**. If the Insurer does not receive payment within such period, the Insurer will not be required to provide any optional **Extended Reporting Period**.

Premium for the optional **Extended Reporting Period** will be fully earned on the effective date thereof. Once in effect, the optional **Extended Reporting Period** may not be canceled.

No **Extended Reporting Period** will be construed to be a new policy and any **Claim** submitted during an **Extended Reporting Period** will be subject to the Policy's terms and conditions, except as specifically set forth below. All **Claims** made during an **Extended Reporting Period** must be reported in accordance with the **REPORTING OF CLAIMS AND EVENTS** section.

A **Claim** reported in writing to the Insurer during the **Extended Reporting Period** will be deemed to have been made on the last day of this **Policy Period**.

No **Extended Reporting Period** reinstates or increases the Limits of Insurance.

## CONDITIONS

### Action Against the Insurer

No action may be taken against the Insurer unless, as a condition precedent thereto, there has been full compliance with all of the terms of this Policy by the **Entity** and all **Insured Individuals**, nor until the amount of the **Insured Individuals'** obligations to pay have been fully determined either by judgment or award against the **Insured Individuals** after trial or arbitration or by written agreement among the **Insured Individuals**, the claimant and the Insurer.

No person or entity will have any right under this Policy to join the Insurer as a party to any action against the **Entity** or an **Insured Individual** to determine the **Insured Individual's** liability, nor will the Insurer be impleaded by the **Entity**, the **Insured Individuals**, or the **Insured Individuals'** legal representative.

### Allocation

If in any **Claim**, the **Insured Individuals** who are afforded coverage for such **Claim** incur **Loss** jointly with others who are not covered for such **Claim** or incur an amount consisting of both covered **Loss** and loss not covered by this Policy because such **Claim** includes both covered and uncovered allegations, the **Insured Individuals** and the Insurer agree to use their best efforts to determine a fair and reasonable allocation of such amounts as **Loss** to those **Insured Individuals** who are covered for such **Claim** and **Loss** incurred in connection with covered allegations included in such **Claim**. In all events, the **Insured Individuals** and the Insurer shall take into account the relative legal and financial exposures of the parties in making such determination. If the **Insured Individuals** and the Insurer cannot agree on an allocation of **Defense Costs**, the Insurer will pay **Defense Costs** that the Insurer believes to be covered until a different allocation is negotiated, arbitrated, or judicially determined. Any such allocation will be applied retroactively to all **Defense Costs** on account of such **Claim**, but will not apply to or create any presumption with respect to the allocation of other amounts arising from such **Claim** or any other **Claim**.

### Assignment

Assignment of any right or interest under this Policy will not bind the Insurer unless and until the Insurer's written consent is endorsed hereon.

### Assistance and Cooperation



The **Entity** and the **Insured Individuals** will provide the Insurer with all information, assistance, and cooperation that the Insurer reasonably requests and will do nothing that in any way increases the Insurer's exposure under this Policy or in any way prejudices the Insurer's potential or actual rights of recovery. No **Insured Individual** will, except at the **Insured Individual's** own cost, voluntarily make a payment, admit liability, assume any obligation, or incur any expense without the Insurer's prior written consent (such consent not to be unreasonably withheld).

For the purpose of applying this condition, the failure of the **Entity** or an **Insured Individual** to comply with this condition will not be imputed to another **Insured Individual**.

**Authorization of Policyholder**

The **Policyholder** is responsible for payment of the premium stated in the DECLARATIONS, and will have exclusive authority to act on behalf of the **Insured Individuals** with respect to accepting endorsements to this Policy, giving and receiving notices of cancellation or nonrenewal, and receiving any return premium.

**Bankruptcy**

The bankruptcy or insolvency of the **Entity** or an **Insured Individual** or of any **Insured Individual's** estate will not relieve the Insurer of the Insurer's obligation under this insurance.

**Cancellation and Nonrenewal**

1. **Cancellation**

    The **Policyholder** may cancel this Policy by mailing or delivering written notice of cancellation to the Insurer at its address stated in the DECLARATIONS. Such notice will state the effective date of cancellation or, if no effective date is stated, the effective date of cancellation will be 10 days after the Insurer's receipt of notice. The **Policy Period** will end on that date.

    The Insurer may cancel this Policy only for nonpayment of premium. In such event, the Insurer will mail or deliver written notice of cancellation for nonpayment of premium to the **Policyholder** at its address stated in the DECLARATIONS, at least 20 days before the effective date of cancellation.

    If this Policy is cancelled, the Insurer will return to the **Policyholder** any unearned premium, calculated pro rata, but the return of premium to the **Policyholder** is not a condition precedent to cancellation.

2. **Nonrenewal**

    The Insurer may elect not to renew this Policy by mailing or delivering written notice of nonrenewal to the **Policyholder** at its address stated in the DECLARATIONS, at least 60 days before the end of the **Policy Period**. If notice of nonrenewal is mailed, proof of mailing will be sufficient proof of notice. Delivery of the notice will be the same as mailing.

**Change in Control**

If during the **Policy Period** any person, entity, or group of persons or entities acting in concert acquires: (i) majority voting control of or the right to elect, appoint, or designate at least 50% of the directors or equivalent executives of the **Policyholder**; (ii) securities which result in such person, entity or group owning more than 50% of the issued and outstanding voting securities of the **Policyholder**; or (iii) all or substantially all of the assets of the **Policyholder**; (individually, a "Change in Control") coverage under this Policy will apply as follows:

1. Coverage will continue under the **Claims-Made Liability Coverage** to the end of the **Policy Period**, but only with respect to **Wrongful Acts** that occurred prior to the effective date of the Change in Control.

2. Coverage will cease under the **Expense Coverages** as of the effective date of the Change in Control with respect to **Events** first occurring on or after the effective date of the Change in Control.


The **Financial Impairment** of the **Policyholder** will not be deemed a Change in Control under this condition.

**Changes to the Policy**

Notice or knowledge possessed by any person will not effect a waiver or a change in any part of this Policy or estop the Insurer from asserting any rights under the terms of this Policy, nor will the terms of this Policy be waived or changed except by written endorsement issued to form a part of this Policy.

**Legal Representatives, Spouses, Domestic Partners, or Family Trusts**

The legal representatives, estate, heirs, spouse or domestic partner of any **Insured Individual** or the family trusts or other estate planning vehicle of any **Insured Individual** will be considered to be an **Insured Individual** under this Policy, but only for a **Claim** against such person or entity arising solely out of their status as such and, with respect to a spouse or domestic partner or family trust or other estate planning vehicle, only where such **Claim** seeks amounts from marital community property, jointly held property or property transferred from such **Insured Individual** to such spouse or domestic partner or family trust or other estate planning vehicle . No coverage is provided for any act, error, or omission committed by any legal representative, estate, heir, spouse, domestic partner, family trust, or other estate planning vehicle. The term "domestic partner" as used in this condition means any natural person recognized by law or by the **Entity** as a domestic partner or partner in a civil union.

**New and Former Entities**

1. If during the **Policy Period**, the **Policyholder** creates, acquires, or merges with an entity or obtains **Management Control** of any entity, then this Policy will provide coverage for the directors, officers, trustees, and employees of such entity who would otherwise become **Insured Individuals** pursuant to the provisions of this Policy, but only for **Wrongful Acts** or **Events** occurring on or after the effective date of such transaction; provided that the effective date of such transaction will be deemed to be the inception date of the **Policy Period** with respect to such coverage.

2. If before or during the **Policy Period** a **Subsidiary** ceases to be an **Entity**, the coverage afforded by this Policy will continue to the end of the **Policy Period** with respect to the directors, officers, trustees, and employees of such **Subsidiary** who were **Insured Individuals** pursuant to the provisions of this Policy, but only for **Wrongful Acts** or **Events** occurring before the date such entity ceased to be a **Subsidiary**.

3. In all events, there is no coverage under this Policy:

   a. for any **Wrongful Act** or **Related Wrongful Act** of, or any **Event** involving, any **Insured Individual** of any entity that occurred before the date the entity became an **Entity**;

   b. for any **Wrongful Act** of, or any **Event** involving, any **Insured Individual** of any entity that occurred after the date the entity ceases to be an **Entity**.

**Notices**

Except as otherwise provided in this Policy, all notices under this Policy must be in writing and delivered by prepaid express courier or certified mail, facsimile, or electronic mail to the appropriate party at the street address, fax number, or email address, as applicable, designated in the DECLARATIONS. Notices to the **Insured Individuals** will be given to the **Policyholder**. Notice will be deemed to be received and effective upon actual receipt by the addressee or one day following the date such notice is sent, whichever is earlier.

**Other Insurance**

All coverage under this Policy shall be specifically excess over and shall not contribute with any actual indemnification or advancement of **Loss**, **Claw Back Expense**, or **Insured Inquiry Expense** to or on behalf of the **Insured Individuals** from any source, including any **Entity**, any **Outside Entity**, or any insurer of any **Underlying Insurance**.

**Payments**



The Insurer will be entitled to pay **Loss**, **Claw Back Expense**, and **Insured Inquiry Expense** as they become due and payable under this Policy without consideration of other future payment obligations.

**Premium**

The **Policyholder** will pay the premium stated in the DECLARATIONS. As may be agreed upon by the **Policyholder** and the Insurer or as otherwise provided in this Policy, premiums may be adjusted at any time during the **Policy Period** or any extensions of the **Policy Period** based upon changes in the provisions of this Policy.

**Representations and Severability**

The Insurer has relied on the statements made and information in the **Application** and the accuracy and completeness of such statements and information. Such statements and information are the basis for the Insurer's issuance of this Policy, are incorporated in and constitute a part of this Policy, and have induced the Insurer to issue this Policy.

If the **Application** contains any misrepresentation that either was made with the intent to deceive or materially affected either the acceptance of the risk or the hazard assumed by the Insurer, then no coverage will be provided under this Policy for any **Claims** or **Events** based upon or arising out of the facts that were misrepresented with respect to any **Insured Individual** who knew, as of the inception of the **Policy Period**, of such facts, whether or not such **Insured Individual** knew the **Application** contained the misrepresentation. For purposes of applying this condition, the knowledge of the **Entity** or an **Insured Individual** will not be imputed to any other **Insured Individual**.

**Rescission**

The Insurer shall not seek to rescind this Policy for any reason.

**Subrogation and Recovery**

In the event of payment under this Policy, the Insurer shall be subrogated to the extent of such payment to all of the **Insured Individuals'** rights of recovery thereof, including, without limitation, the assertion of indemnification or contribution rights, and the **Insured Individuals** and the **Entity** will execute and deliver all instruments and papers required and do whatever else is necessary to secure such rights, including the execution of any and all documents necessary to enable the Insurer effectively to bring suit in the name of the **Insured Individuals**, and will do nothing to prejudice such rights. The Insurer, however, will not exercise its right of subrogation against any **Insured Individual** under this Policy.

If the Insurer recovers any amount it paid under this Policy, the Insurer shall reinstate the applicable Limit of Insurance to the extent of such recovery, less the Insurer's costs incurred in obtaining such recovery. The Insurer assumes no duty to seek a recovery of any amounts paid under this Policy.

**Territory, Valuation and Currency**

The coverage afforded under this Policy applies anywhere in the world, where legally permissible.

If a judgment is rendered, settlement is denominated or another element of loss under this Policy is stated in a currency other than United States dollars, payment under this Policy will be made in United States dollars at the rate of exchange published in *The Wall Street Journal* on the date the judgment becomes final or payment of the settlement or other element of loss is due, unless otherwise set forth in this Policy.

All monetary amounts under this Policy are expressed and payable in the currency of the United States.

*SIGNATURE PAGE FOLLOWS.*



**SIGNATURE PAGE**

IN WITNESS WHEREOF, the Insurer has caused this policy to be issued by affixing hereto the facsimile signatures of its President and Secretary.

Secretary

President

Andrew Weissert, Secretary

Carlton W. Maner, President



| Endorsement Number | Effective Date of Endorsement | Policy Number | Premium |
|---|---|---|---|
| 1 | 12:01 a.m. on 08/18/2021 | P-001-000639420-01 | N/A |

**PRIOR ACTS EXCLUSION ENDORSEMENT**

It is agreed that solely with respect to the following **Coverage Parts** or coverages:


The following is added to the **EXCLUSIONS** section:

**Prior Acts**

This Policy does not apply to **Claims** based upon or arising out of any actual or alleged act, error, or omission, including any **Wrongful Act**, occurring before 08/18/2021.

All other provisions of the Policy remain unchanged.



| Endorsement Number | Effective Date of Endorsement | Policy Number | Premium |
|---|---|---|---|
| 2 | 12:01 a.m. on 08/18/2021 | P-001-000639420-01 | N/A |

**CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM ENDORSEMENT**

It is agreed that:

I.  The following definition is added:

**Certified act of terrorism** means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a **certified act of terrorism** include the following:

1.  The act resulted in Insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2.  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Under your coverage, any losses resulting from a **certified act of terrorism** may be partially reimbursed by the United States Government under a formula established by the Terrorism Risk Insurance Act. Under the formula, the United States Government generally reimburses 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019 and 80% beginning on January 1, 2020, of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The Terrorism Risk Insurance Act, as amended, contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year.

If aggregate Insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case Insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

II. The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss or damage which would otherwise be excluded under this policy.

All other provisions of the policy remain unchanged.



AXIS SIDE A
DIRECTORS & OFFICERS AND DIFFERENCE-IN-CONDITIONS LIABILITY

| Endorsement Number | Effective Date of Endorsement | Policy Number | Premium |
|---|---|---|---|
| 3 | 12:01 a.m. on 08/18/2021 | P-001-000639420-01 | N/A |

**NEW YORK AMENDATORY ENDORSEMENT**

It is agreed that:

A. The **DEFINITIONS** section is amended by:

1. replacing the definition of **Extended Reporting Period** with the following:

   **Extended Reporting Period** means a designated period immediately following **Termination of Coverage**, during which **Claims** first made against the **Insured Individuals** will be deemed made during the **Policy Period**, but only for **Wrongful Acts** that take place prior to the effective date of **Termination of Coverage**.

2. amending the definition of **Loss** by:

   a. inserting "that are insurable under the law applicable to this Policy" after "punitive damages" in item 1.

   b. adding the following paragraph

      Notwithstanding the foregoing, New York public policy precludes insurance indemnification for punitive damages awards or intentional wrongdoing.

3. adding the following definition:

   **Termination of Coverage** means, whether made by the Insurer or the **Policyholder** at any time, the cancellation or nonrenewal of this Policy, or a decrease in limits, reduction of coverage, increased Retention, new exclusion, or any other change in coverage less favorable to the **Insured Individuals**.

B. The **LIMITS OF INSURANCE** section is amended by adding the following to paragraph C. **Coverage Limits of Insurance** in:

   With respect to any **Claim** for which this Policy may provide payment of defense-only costs, as described in 11 NYCRR 262.4(b), however, no more than 25% of the Policy Limit may be reduced by such payment.

C. The **REPORTING OF CLAIMS AND EVENTS** section is amended by replacing item 1 in paragraph B. **Reporting of Claims or Events** in the ed with the following:

1. It is a condition precedent to coverage under all **Claims-Made Liability Coverages** that as soon as any **Insured Individual** becomes aware of any **Claim**, the **Entity** or the **Insured Individual** must notify the Insurer thereof in writing as soon as reasonably practicable, but in no event later than the expiration of the **Policy Period**, any subsequent renewal, or any applicable **Extended Reporting Period**. Failure to give notice as soon as reasonably practicable, however, shall not invalidate any **Claim**, unless the failure to provide timely notice has prejudiced the Insurer or unless the notice is provided after the time prescribed. Failure to give notice within the time prescribed, however, shall not invalidate any **Claim** if it shall be shown not to have been reasonably possible to do so and that notice was given as soon as was reasonably possible thereafter. Notice given by or on behalf of the **Insured Individual** to the Insurer's agent shall be considered notice to the Insurer.



D.   The **EXTENDED REPORTING PERIODS** section is replaced with the following.

**EXTENDED REPORTING PERIODS**

A.  **Automatic Extended Reporting Period**

In the event of **Termination of Coverage**, the **Insured Individuals** will have an automatic, non-cancelable 60-day **Extended Reporting Period** at no charge; provided, however, that if this Policy is issued pursuant to 11 NYCRR 73.2(d)(1), no automatic **Extended Reporting Period** shall be available for any decrease in limits, reduction of coverage, increased deductible or self-insured retention, new exclusion, or any other change in coverage less favorable to the **Insured Individuals**. The automatic **Extended Reporting Period** will be included in the optional **Extended Reporting Period**, if purchased.

B.  **Optional Extended Reporting Period**

1.  In the event of **Termination of Coverage**, the Insurer will notify the **Policyholder** within 30 days thereof of the automatic **Extended Reporting Period** and the availability of, the premium for, and the importance of purchasing an optional **Extended Reporting Period**; provided, however:

    a.  If the Policy is issued pursuant to 11 NYCRR 73.2(d)(1), the Insurer will not provide such notice.

    b.  If the claims-made relationship between the Insurer and the **Policyholder** has been in effect for less than one year and the Policy is cancelled for non-payment of premium, the Insurer will not provide such notice and no optional **Extended Reporting Period** is available.

    c.  If the claims-made relationship between the Insurer and the **Policyholder** has been in effect for one year or more and this Policy is cancelled for non-payment of premium, the Insurer will not offer an optional **Extended Reporting Period** unless requested by the **Policyholder**.

    d.  If this Policy is issued pursuant to 11 NYCRR 73.2(d)(1), then no optional **Extended Reporting Period** shall be available for any decrease in limits, reduction of coverage, increased deductible or self-insured retention, new exclusion, or any other change in coverage less favorable to the **Insured Individuals**.

2.  The optional **Extended Reporting Periods** available and their respective additional premiums are stated in the DECLARATIONS. Subject to paragraph 1 above, the Insurer shall offer an optional **Extended Reporting Period** of at least one year. The additional premium will be adjusted for any return premium owed because of cancellation or any premium owed to the Insurer for this Policy. Once purchased, the optional **Extended Reporting Period** shall not be cancelable and the entire premium therefor shall be deemed earned.

3.  It is a condition precedent to the **Policyholder's** right to elect the optional **Extended Reporting Period** that:

    a.  All amounts due under this Policy must be been paid in full.

    b.  The **Policyholder** must notify the Insurer in writing of the optional **Extended Reporting Period** elected and pay the additional premium due no later than 60 days after **Termination of Coverage** or 30 days after the notice described in paragraph 1 above is sent by the Insurer, whichever is later.

    If such conditions are not satisfied, the **Policyholder** shall not at a later date be able to exercise such right.


4. If the **Policyholder** has been placed in receivership, liquidation, or bankruptcy, or permanently ceases operations and neither the **Policyholder** nor its agent has purchased an optional **Extended Reporting Period**, then any person covered under this Policy will have the right to request an optional **Extended Reporting Period** for the benefit of all **Insured Individuals**. This right shall lapse unless such person notifies the insurer in writing of the optional **Extended Reporting Period** elected and pays the additional premium due within 120 days of the **Termination of Coverage**. This paragraph 3, however, shall not apply if the Policy is issued pursuant to 11 NYCRR 73.2(d)(1).

C. **Extended Reporting Periods**

1. All **Claims** made during an **Extended Reporting Period** must be reported to the Insurer in accordance with the **REPORTING OF CLAIMS AND EVENTS** section. All such **Claims** will be subject to the Policy's terms and conditions, except as specifically set forth in paragraphs A and B above.

2. In the event similar insurance to that provided by this Policy is in force during any **Extended Reporting Period**, the coverage afforded during such **Extended Reporting Period** shall be excess over any such valid and collectible insurance.

3. If **Termination of Coverage** is pursuant to a decrease in limits, reduction of coverage, increased Retention, new exclusion, or any other change in coverage less favorable to the **Insured Individuals**, any applicable **Extended Reporting Period** shall apply only in regard to that coverage terminated.

4 The Limits of Insurance applicable to **Claims** made during the **Extended Reporting Period** shall be equal to the remaining Limits of Insurance set forth in the DECLARATIONS.

E. The **CONDITIONS** section is amended by:

1. adding the following to the **Action Against the Insurer** condition:

If the Insurer does not pay a judgment covered by the terms of this Policy within 30 days from the service of notice of the judgment upon the **Insured Individual** or his or her attorney and the Insurer, then an action may be brought against the Insurer under the terms of the Policy for the amount of the judgment not exceeding the applicable Limit of Insurance, except during a stay or limited stay of execution against the **Insured Individual** on such judgment.

With respect to **Claims** arising out of death or personal injury of any person, if the Insurer disclaims liability or denies coverage based upon the failure to provide timely notice, then the injured person or other claimant may maintain an action directly against the Insurer, in which the sole question is the Insurer's disclaimer or denial based on the failure to provide timely notice, unless within 60 days following such disclaimer or denial, the Insurer or the **Insured Individual** initiates an action to declare the rights of the parties under the insurance policy and names the injured person or other claimant as a party to the action.

2. adding the following to the **Other Insurance** condition: "This Policy will be excess over such other insurance in order to avoid duplication of payment."

All other provisions of the Policy remain unchanged.



| Endorsement Number | Effective Date of Endorsement | Policy Number | Premium |
|---|---|---|---|
| 5 | 12:01 a.m. on 08/18/2022 | P-001-000639420-01 | See Invoice |

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

**DECLARATIONS PAGE AMENDATORY ENDORSEMENT**

It is agreed that the indicated items of the Declarations are deleted in their entirety and replaced by the following:

| POLICY PERIOD | Effective Date: 08-18-2021<br>Expiration Date: 08-18-2023<br>*Both dates at 12:01 a.m. at the Named Insured's address stated herein.* |
|---|---|

All other provisions of the policy remain unchanged.

Class Code: 2-14177



AXIS SIDE A
DIRECTORS & OFFICERS AND DIFFERENCE-IN-CONDITIONS LIABILITY

| Endorsement Number | Effective Date of Endorsement | Policy Number | Premium |
|---|---|---|---|
| 6 | 12:01 a.m. on 08/18/2023 | P-001-000639420-01 | See Invoice |

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

**OPTIONAL EXTENDED REPORTING PERIOD ELECTION ENDORSEMENT**

It is agreed that the Policyholder or Named Insured first named on the Declarations has elected to purchase an optional extended reporting period in accordance with the terms of this policy and has paid the additional premium, if any. The extended reporting period shall begin on the termination of the policy and shall expire when the period of years stated below has elapsed.

**Extended Reporting Period:** 6 Years

All other provisions of the policy remain unchanged.

Class Code: 2-14177

AXIS 110 0615

# EVEREST EZ™ EXCESS POLICY



**THIS IS A CLAIMS MADE POLICY WHICH COVERS ONLY CLAIMS FIRST MADE DURING THE POLICY PERIOD OR EXTENDED REPORTING PERIOD, IF APPLICABLE. DEFENSE COSTS ARE INCLUDED AND SHALL REDUCE THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS.**

In consideration of the payment of the premium, in reliance on the Application (as defined in the Primary Policy), and subject to the terms, conditions and limitations of this policy, the Insurer and the **Named Insured** agree as follows:

Except as provided herein, this policy shall follow form to the terms and conditions of the Primary Policy. Coverage under this policy shall attach only after the Aggregate Limit of Liability of the Underlying Insurance set forth in **ITEM 4**, has been exhausted by the payment of Loss (as defined in the Primary Policy), by the insurers of the Primary Policy and all policies issued in excess of the Primary Policy which attach below this policy ("Underlying Insurance"), the Named Insured, any excess/DIC insurer, any policy that is tied into any Underlying Insurance, and/or any other source.

In the event of exhaustion of the Aggregate Limit of Liability of the Underlying Insurance, this policy shall continue in force as primary insurance for any subsequent Claim (as defined in the Primary Policy), but shall pay excess of the Primary Policy's retention, if applicable.

This policy shall recognize payment of any sublimit of liability by any Underlying Insurance toward the reduction or exhaustion of such insurance but shall not grant such sub-limited coverage unless added by endorsement to this policy.

No post inception alteration of the Primary Policy shall be recognized unless consented to (such consent not to be unreasonably withheld or delayed) by the Insurer in writing.

| NAMED INSURED AND ADDRESS | INSURER |
|---|---|
| **ITEM 1.**<br><br>Entourage Commerce, LLC<br>1516 Motor Parkway<br>Islandia, NY 11749<br>USA | (hereinafter, "Insurer")<br>Everest National Insurance Company<br>100 Everest Way<br>Warren, NJ 07059 |
| **POLICY NUMBER** | **PRODUCER** |
| PC5EX00424-211<br><br>**Renewal of:** N/A | AON RISK SERVICES NORTHEAST INC<br>One Liberty Plaza<br>New York, NY 10006 |

**ITEM 2.**   **POLICY PERIOD: FROM** 08/18/2021 **TO** 08/18/2022
POLICY INCEPTS AND EXPIRES AT 12:01 A.M. LOCAL TIME AT THE ADDRESS OF THE **NAMED INSURED** SHOWN ABOVE.

**ITEM 3.**   **AGGREGATE LIMIT OF LIABILITY:**   $5,000,000
(The maximum Aggregate amount the Insurer shall pay under this policy)

**ITEM 4.**   **AGGREGATE LIMIT OF LIABILITY OF THE UNDERLYING INSURANCE** (including Primary Policy):
$5,000,000

**ITEM 5.**   **PRIMARY POLICY:**

> **NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

**2-50003**

| Insurer | Policy No. | Policy Period | Retention | Limit of Liability |
|---|---|---|---|---|
| Allianz Global Risks US InsuranceCompany | USF00981121 | 08/18/2021 - 08/18/2022 | $500,000 | $5,000,000 |

**ITEM 6.**    **POLICY PREMIUM:** $75,000

**ITEM 7.**    **FORMS AND ENDORSEMENTS EFFECTIVE AT INCEPTION:** (See attached Endorsement)

**ITEM 8.**    **NOTICE TO THE INSURER:** (Notice to the Insurer shall be given to the Insurer at the address shown above or by Email to: everestnationalnjclaim@everestre.com)

**THE INSURER SHALL HAVE THE SAME RIGHTS, PRIVILEGES AND PROTECTIONS AFFORDED THE INSURER OF THE PRIMARY POLICY. THIS FORM, ANY ENDORSEMENT(S) AND THE APPLICATION SHALL CONSTITUTE THE ABOVE NUMBERED POLICY.**



# SCHEDULE OF FORMS/ENDORSEMENTS

| Named Insured | Policy Number | Policy Period | Writing Company | Endorsement Effective Date |
|---|---|---|---|---|
| Entourage Commerce, LLC | PC5EX00424-211 | 08/18/2021 - 08/18/2022 | Everest National Insurance Company | 08/18/2021 |

| Form Name | Form Number | Endorsement No. |
|---|---|---|
| Everest EZ Excess Policy | EZE-CWF300A-2 0517 | |
| Schedule of Forms & Endorsements | EIL-CWF002A-1 0319 | |
| Cap On Losses From Certified Acts Of Terrorism | EIN-CWF102A-1 0118 | 1 |
| ADVISORY NOTICE REGARDING TRADE OR ECONOMIC SANCTIONS | EIL-CWN010A-1 1020 | |
| Non-Follow Form Endorsement | EZE-CWF009D-1 0117 | 2 |
| Prior Litigation Follow-Form Exclusion Endorsement (Date) | EZE-CWF010C-2 0517 | 3 |
| Named Insured and Address Amended Endorsement | EZE CWF001A-1 0117 | 4 |
| Named Insured Amended Endorsement (Additional Entities) | EZE CWF001B-2 0117 | 5 |
| In Witness | EIL-CWF001A-1 0319 | |

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

Parent Company: Entourage Commerce, LLC      Endorsement No.: 1

Policy No.: PC5EX00424-211              Effective date of Endorsement: 08/18/2021

Issuing Company: Everest National Insurance Company

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**A.** If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a Calendar Year and the Insurer has met its insurer deductible under the Terrorism Risk Insurance Act, the Insurer shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**Certified Act of Terrorism** means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a **Certified Act of Terrorism** include the following:

   **1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

   **2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for **Loss** that is otherwise excluded under this policy.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

Date of Issue: 08/18/2021

# ADVISORY NOTICE REGARDING
# TRADE OR ECONOMIC SANCTIONS

No coverage is provided by this Notice nor can it be construed to replace any provisions of the policy. Please read the policy and review the Declarations page, if applicable, for complete information on the coverages provided.

This Notice provides information concerning possible impact on insurance coverage due to any applicable trade or economic sanctions law or regulation, including but not limited to, trade or economic sanctions laws or regulations of the United Nations, European Union, Switzerland, United Kingdom, Canada or the United States Treasury Department's Office of Foreign Assets Control.

**Please read this Notice carefully.**

If it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated any applicable trade or economic sanctions laws or regulations, including but not limited to those of the United Nations, European Union, Switzerland, United Kingdom, Canada or the United States Treasury Department's Office of Foreign Assets Control, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to restrictions. When an insurance policy is considered to be such a blocked or frozen contract, no payments or premium refunds may be made without authorization from the applicable regulator. Other limitations on the premiums and payments also apply.

# NON-FOLLOW FORM ENDORSEMENT
## (Specific Coverage Parts and/or Insuring Agreements)
## (Non-Recognition of Erosion)



| Named Insured | Policy Number | Policy Period | Writing Company | Endorsement Effective Date |
|---|---|---|---|---|
| Entourage Commerce, LLC | PC5EX00424-211 | 08/18/2021-08/18/2022 | Everest National Insurance Company | 08/18/2021 |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following policy:

**EVEREST EZ™ EXCESS POLICY**

In consideration of the premium paid, it is hereby understood and agreed that this policy shall not follow form to, apply to, or act in accordance with the Specified Coverage Parts and/or Insuring Agreements of the Primary Policy referenced in the SCHEDULE below, or provide any coverage for any loss, including defense costs, otherwise covered under the Primary Policy by reason of such Specified Coverage Parts and/or Insuring Agreements. The Insurer shall not recognize any payment under the Primary Policy or any other Underlying Insurance pursuant to the terms and conditions thereunder towards the exhaustion or reduction of the Aggregate Limit of Liability of the Underlying Insurance.

### SCHEDULE

| Specified Coverage Part(s) And/Or Insuring Agreements of The Primary Policy |
|---|
| |
| **Fiduciary Liablity** |
| |

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**



# PRIOR LITIGATION FOLLOW-FORM EXCLUSION ENDORSEMENT
## (DATE)

| Named Insured | Policy Number | Policy Period | Writing Company | Endorsement Effective Date |
|---|---|---|---|---|
| Entourage Commerce, LLC | PC5EX00424-211 | 08/18/2021 - 08/18/2022 | Everest National Insurance Company | 08/18/2021 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following policy:

**EVEREST EZ™ EXCESS POLICY**

In consideration of the premium paid, it is hereby understood and agreed that:

This policy shall follow form and apply to the terms and conditions of the specific Primary Policy exclusion regarding pending or prior litigation/matters (the "Exclusion"), provided that for purposes of coverage under this policy, the applicable date stated in such Exclusion shall be 08/18/2021.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

© Everest Reinsurance Company, 2017



## IN WITNESS

IN WITNESS WHEREOF, this policy is signed by officer of the Company shown on the declarations page of this policy.

For: Everest National Insurance Company

_____
President

_____
Secretary

©Everest Reinsurance Company, 2019

# NAMED INSURED AND ADDRESS AMENDED ENDORSEMENT



| Named Insured | Policy Number | Policy Period | Writing Company | Endorsement Effective Date |
|---|---|---|---|---|
| Entourage Commerce, LLC | PC5EX00424-211 | 08/18/2021-08/18/2022 | Everest National Insurance Company | 11/12/2021 |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following policy:

**EVEREST EZ™ EXCESS POLICY**

In consideration of the premium paid, it is hereby understood and agreed that **Item 1.** NAMED INSURED AND ADDRESS of the policy is replaced with the following:

| NAMED INSURED AND ADDRESS |
|---|
| **Item 1.**<br><br>**Packable Holdings, LLC**<br>**1516 Motor Parkway**<br>**Islandia, NY 11749** |

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

**Endorsement No. 5**



# NAMED INSURED AMENDED ENDORSEMENT
# (ADDITIONAL ENTITIES)

| Named Insured | Policy Number | Policy Period | Writing Company | Endorsement Effective Date |
|---|---|---|---|---|
| Packable Holdings, LLC | PC5EX00424-211 | 08/18/2021-08/18/2022 | Everest National Insurance Company | 11/12/2021 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following policy:

**EVEREST EZ™ EXCESS POLICY**

In consideration of the premium paid, it is hereby understood and agreed that the following Section is added to the policy:

DEFINITIONS

**Named Insured** means:

1. the entity referenced in ITEM 1 of the  policy; and

2. any subsidiaries, affiliates, additional entities and individual persons defined as Insureds or Insured Persons in the Primary Policy;

3. the following additional entities:

    Entourage Commerce, LLC

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

                    © Everest Reinsurance Company, 2017

**Endorsement No. 8**



# EXTENSION ENDORSEMENT

| Named Insured | Policy Number | Policy Period | Writing Company | Endorsement Effective Date |
|---|---|---|---|---|
| Packable Holdings, LLC | PC5EX00424-211 | 08/18/2021-08/18/2022 | Everest National Insurance Company | 08/18/2022 |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following policy:

**EVEREST EZ™ EXCESS POLICY**

It is agreed that **ITEM 2** of the policy is replaced with the following:

   **ITEM 2.  POLICY PERIOD**:    FROM   **08/18/2021**    TO: **08/18/2023**

   POLICY INCEPTS AND EXPIRES AT 12:01 LOCAL TIME AT THE ADDRESS OF THE **NAMED INSURED** SHOWN IN ITEM 1 ABOVE.


**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

<u>Authorized Representative</u>



# FOLLOW FORM ENDORSEMENT

| Named Insured | Policy Number | Policy Period | Writing Company | Endorsement Effective Date |
|---|---|---|---|---|
| Packable Holdings, LLC | PC5EX00424-211 | 08/18/2021 - 08/18/2023 | Everest National Insurance Company | 08/18/2023 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following policy:

**EVEREST EZ™ EXCESS POLICY**

In consideration of the premium paid, it is hereby understood and agreed that this policy shall follow form to, apply, and act in accordance with Endorsement No. 14, of the Primary Policy entitled Discovery Period Elected.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

_____
Authorized Representative